UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DMJ ASSOCIATES, L.L.C.,

                        Plaintiff,                  REPORT AND
                                                               RECOMMENDATION

    -against-
                                                                97 CV 7285 (DLI) (RML)

CARL A. CAPASSO, *et al.*,

                        Defendants.
----------------------------------------------------------X
EXXON MOBIL CORPORATION and
QUANTA RESOURCES CORPORATION,

          Defendants/Third-Party Plaintiffs,

    -against-

ACE WASTE OIL, INC., *et al.*,

          Third-Party Defendants.
----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Private third-party defendants Proctor & Gamble Hair Care L.L.C., *et al.* ("TPDs"), move to dismiss Count IV of third-party plaintiffs Exxon Mobil Corporation and Quanta Resources Corporation's ("TPPs") Third Amended Third-Party Complaint, pursuant to New York General Obligations Law § 15-108.[1] By order dated December 4, 2007, the Honorable Dora L. Irizarry, United States District Judge, referred the motion to me for a Report

---

[1] On January 28, 2008, TPPs stipulated to a dismissal with prejudice of Count IV as against the federal defendants United States Department of the Air Force, United States Department of the Army, United States Department of the Coast Guard, United States Department of Defense, United States Department of the Navy, and the United States of America. (Stipulation and Order of Dismissal of Count IV with Prejudice as Against Federal Defendants, dated Jan. 28, 2008.)

and Recommendation. Briefing was completed on February 15, 2008, and I heard oral argument on April 17, 2008. For the reasons stated below, I respectfully recommend that TPDs' motion be granted.

## BACKGROUND AND PROCEDURAL HISTORY

A. The Underlying Action and Settlement Agreement

DMJ Associates, LLC ("DMJ"), initiated the original action (the "Underlying Action") in 1997. In the Underlying Action, DMJ alleged that contamination at defendant Quanta Resources Corporation's Long Island City refining facility (the "Quanta Site") migrated or threatened to migrate to properties in which DMJ held defaulted mortgages taken out by the property owner, Carl Capasso (the "Capasso Properties"). (See generally Fourth Amended Complaint, filed June 16, 2005 ("Fourth Ad. Compl.").) DMJ asserted claims based on: (1) the Resource Conservation and Recovery Act, Id. § 6901 et seq. ("RCRA"), (2) the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), and (3) New York public nuisance law. (Fourth Ad. Compl. ¶¶ 231-65.) DMJ reached a settlement with most of the defendants (the "settling defendants") in mid-2005, and later they entered into a formal settlement agreement.

By its own terms, the purpose of entering into the settlement agreement was "to resolve all of the claims that DMJ made or could have made in the [l]itigation."[2] (Confidential Settlement Agreement and Mutual Release, dated June 27, 2006 (the "Settlement Agreement" or

---

[2] The Settlement Agreement is labeled confidential; however, TPDs filed a hard copy of it with their Memorandum. (Memorandum in Support of Motion to Dismiss, dated Nov. 30, 2007 ("TPDs' Mem."), 3 n.5.)

2

"Agreement"), § 4.) In exchange for "full settlement of the claims that DMJ made or could have made," the settling defendants agreed to pay DMJ $7.1 million dollars and to place another $1.025 million into an escrow account to be drawn on by the parties to pay certain expenses associated with the remediation of the sites at issue. (Agreement § 5.) The Agreement also imposed certain specific obligations on the parties, including the following: DMJ is to use "best efforts" to apply to the New York Department of Environmental Conservation ("NYDEC") for a cleanup of some of the properties under the Brownfield Program; DMJ will develop certain properties in accordance with terms set forth in the Agreement; DMJ will commence foreclosure and proceed to take title to certain other properties; and Quanta agrees to transfer ownership of its site to DMJ. (Agreement § 6.) The Agreement also required the settling defendants to "investigate and remediate the [relevant properties] pursuant to the terms of the Order on Consent[3] or as otherwise required by the NYDEC." (Agreement § 10.) The Settlement Agreement also provided for various other details, including liability for past and future real estate taxes, certain environmental easements, and the retention of a specified environmental contractor to assist in the redevelopment effort. (Agreement §§ 11-14.)

   The Agreement included a document labeled "General Release" ("the Release") which declares that "for good and valuable consideration, the Parties have agreed to mutually release each other." (Agreement App. K at 1.) The Release contains a provision stating that:

> DMJ and its members, parents, affiliates, subsidiaries,

---

[3] The Settlement Agreement defines "Order on Consent" as "the administrative Order on Consent with the NYDEC, signed by the NYDEC on May 1, 2002 . . . [u]nder Article 27, Title 13 and Article 71, Title 27 of the Environmental Conservation Law of the State of New York . . . regarding the Quanta Site." (Agreement § 1.23.)

> predecessors, partners, officers, directors, principals, agents, attorneys, successors and assigns hereby fully release Settling Defendants and their members, parents, affiliates, subsidiaries, predecessors, partners, officers, directors, principals, agents, attorneys, successors and assigns from all claims that have been or could have been asserted by DMJ against Settling Defendants in the Litigation and any and all future claims related to Quanta Site-Related Contamination, except for claims arising from any breach of the Settling Parties's obligations under the Settlement Agreement.

(Release 2.)

In light of the settlement and with the consent of all parties, on June 27, 2005 I ordered the dismissal with prejudice of "all claims brought by DMJ in this action against the Settling Defendants," as well as "all cross claims and counter claims asserted by and among the Settling Defendants (except to the extent rights are reserved in the Settlement Agreements)."[4] (Order Dismissing Case, dated June 27, 2005 ("Order"), at 5-6.) Additionally, I dismissed without prejudice all "claims and cross claims asserted in the within action as against all of the non-settling defendants." (Id. at 6.)

My Order also noted that the remedy provided to DMJ in the Settlement Agreement "constitutes one hundred percent (100%) of the legal and equitable relief that Plaintiff would have been entitled to under the claims and allegations pleaded in the complaint and accordingly Plaintiff has been made whole." (Id.) It also stated that, "[b]y virtue of the terms of the Settlement, the Settling Defendants are extinguishing any liability of the non-settling parties to the Plaintiff, and may seek contribution, indemnification, or cost recovery as

---

[4] At the time, this action was before me for all purposes, including entry of judgment, on consent of the parties. When TPPs joined a host of new third-party defendants, the case was reassigned to Judge Irizarry.

permitted by law, from any party." (Id.) The Order also explained that this court would retain continuing jurisdiction "for the limited purpose of enforcing the terms of the Settlement Agreements" and of "adjudicating any third-party action of the Settling Defendants." (Id. at 7.)

B. The Instant Action

In December 2005, not long after I dismissed the claims in the Underlying Action, TPPs filed an Amended Third-Party Complaint against TPDs.[5] The Third Amended Third-Party Complaint contains four counts: 1) cost recovery pursuant to section 107(a) of CERCLA; 2) contribution under section 113 of CERCLA; 3) declaratory judgment under § 113(g)(2) of CERCLA; and 4) contribution pursuant to New York Civil Practice Law and Rules § 1401 ("the § 1401 claim"). (Third Amended Third-Party Complaint, dated Nov. 8, 2007 ("Compl."), ¶¶ 18-39.) Section 1401 states, in relevant part:

> Except as provided in section 15-108 and 18-201 of the general obligations law . . . two or more persons who are subject to liability for damages for . . . injury to property . . . may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. C.P.L.R. § 1401 (McKinney 2008). On November 30, 2007, TPDs moved to dismiss the § 1401 claim as to all third-party defendants.

---

[5] According to TPPs, "[t]he Settling Defendants have assigned their rights to recover their response costs, their right to seek contribution arising from their payments to DMJ and their costs of fulfilling their commitment to DMJ to remediate the Quanta Facility and the Capasso Property to the Third-Party Plaintiffs." (Third Amended Third-Party Complaint, dated Nov. 8, 2007, ¶ 6.) Therefore, for the purposes of this Report and Recommendation, I use the terms "settling defendants" and "TPPs" interchangeably.

5

**DISCUSSION**

TPDs argue that TPPs' § 1401 contribution claim is barred by § 15-108(c) of the New York General Obligations Law because TPPs entered into an agreement with plaintiffs in the Underlying Action, which constituted a release from liability.[6] (Memorandum in Support of Motion to Dismiss, dated Nov. 30, 2007 ("TPDs' Mem."), 4.) In opposition, TPPs argue that the terms of the Settlement Agreement, "which impose significant continuing obligations upon both DMJ and the Settling Defendants with no set limit of the costs involved, while also providing that the court will maintain continuing jurisdiction in order to enforce those obligations, distinguish this action from those cases in which the GOL provision applies." (Third-Party Plaintiffs' Memorandum of Law in Opposition to Third-Party Defendants' Motion to Dismiss, dated Jan. 28, 2008 ("Opp'n"), 2.) Section § 15-108(c) states: "Waiver of Contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." N.Y. Gen. Oblig. L. § 15-108(c) (McKinney 2008). In general, § 15-108 "becomes operative '[w]hen a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury.'" Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., No. 93 Civ. 6876, 2001 WL 492356, at *1 (S.D.N.Y. May 9, 2001) (quoting § 15-108(a) (brackets in original)). According to the New York Court of Appeals, the purpose of § 15-108 is to encourage settlements by altering or eliminating prior existing rules of law which inhibited the settlement process. Rock v. Reed-

---

[6] TPDs present two arguments in favor of dismissing TPPs' § 1401 claim; the second argument for dismissal is that the § 1401 claim is preempted by CERCLA's § 113 contribution scheme. (Memorandum in Support of Motion to Dismiss, dated Nov. 30, 2007, 7.) Because I find TPDs' first argument dispositive, I need not address the merits of the second.

6

Prentice Div. of Package Mach. Co., 346 N.E.2d 520, 523 (N.Y. 1976). Although "[t]here is no indication what problem [subsection (c)] was intended to eliminate . . . . [a]pparently the Legislature felt that surrender of the right to contribution is a small price to ask of a defendant who is intent on avoiding litigation." Id. at 524. "Thus, the statute establishes a *quid pro quo* arrangement: the settlor limits its liability but in exchange forfeits any right to contribution." Gonzales v. Armac Indus. Ltd., 611 N.E.2d 261, 263 (N.Y. 1993).

The protection of § 15-108(c) may be waived when all of the named parties, including potential third-party defendants, voluntarily and explicitly stipulate to a preservation of the right to seek contribution. "There is nothing in the history or purpose of the legislation to indicate that the statute was intended to be nonwaivable." Mitchell v. N.Y. Hosp., 461 N.E.2d 285, 289 (N.Y. 1984); see LNC Invs., Inc. v. First Fidelity Bank, 935 F. Supp. 1333, 1349 (S.D.N.Y. 1996).

In Mitchell, the plaintiff sued a hospital where he was injured while working, and the hospital commenced a third-party action for indemnification and contribution against the plaintiff's employer and others. 461 N.E.2d at 287. Before trial, all the named parties appeared before the court and announced that they had reached a settlement. Id. With the consent of all parties, the agreement settled the plaintiff's claims and also stipulated that "no one waives any rights to contributions [sic] or indemnification by entering into this settlement." Id. (brackets in original) (emphasis removed) (quotation marks omitted). Despite this stipulation, the employer later argued that § 15-108(c) precluded the hospital from seeking contribution. Id. In rejecting this argument, the court found that the employer had waived the protection of § 15-108(c) as

7

"[t]he subject stipulation was freely, knowingly and openly agreed to by all of the named parties." Id. at 289. Since the employer was party to a settlement agreement that specifically preserved the parties' right to seek contribution, it could not rely on the protection of § 15-108(c). See id. at 287.

When determining the applicability of § 15-108(c), courts assess the practical effect of an agreement on the dispute between the original plaintiff and the defendant/third-party plaintiff. For § 15-108(c) to apply, the agreement at issue must extinguish the claims asserted in the underlying lawsuit. One court has observed that "New York courts have not been strictly literal in interpreting the phrase 'a release or covenant not to sue or not to enforce a judgment' as used in GOL 15-108." Bank Brussels Lambert, 2001 WL 492356, at *1 (citations omitted). Rather, § 15-108 is triggered when an agreement "effectively end[s] the dispute" between the original plaintiff and defendant by "effectively avoid[ing] further litigation of the claims" of the one against the other. Id. (quoting Gonzales, 611 N.E.2d at 263, 264) (quotation marks omitted). In other words, the agreement must "terminate" the defendant tortfeasor's "adversarial relationship" with the original plaintiff. Id. (quoting Perno v. For-Med. Med. Group, P.C., 673 N.Y.S.2d 849, 852 (Sup. Ct. 1998)) (quotation marks omitted).

The dispute between the parties on this issue boils down to the practical effect that the Settlement Agreement had on the relationship between the parties in the Underlying Action.[7] TPDs contend that the Agreement means what it says, and that it terminated the

---

[7] The parties did not raise other issues, such as waiver, relating to the applicability of § 15-108. Notwithstanding, as noted above, my dismissal Order of June 27, 2005 explicitly provides for the possibility of the settling defendants seeking "contribution, indemnification, or

(continued...)

8

adversarial relationship between DMJ and the settling defendants, while at the same time creating entirely new and legally distinct contractual obligations. (See Reply to Third-Party Plaintiffs' Opposition to Third-Party Defendants' Motion to Dismiss, dated Feb. 15, 2008 ("TPDs' Reply"), 2-4.) TPPs, on the other hand, maintain that the Settlement Agreement "neither ended the dispute between DMJ and the Settling Defendants nor effectively terminated further litigation of DMJ's claims against them." (Opp'n 2.) According to TPPs, the Settlement Agreement constitutes "a suspension of the litigation while the parties attempt . . . to resolve their issues . . . while still preserving their ability to come into court and become adversaries again and ask the Court to rule on matters as if there had never been a settlement." (Tr. of Oral Argument, dated Apr. 17, 2008, at 29.) The court respectfully disagrees.

Although neither the court nor the parties could locate precedent directly on point with the facts of this case, the meaning of § 15-108(c) is not in doubt. I find that the Settlement Agreement expressly extinguished the settling defendants' liability to DMJ for the claims that it asserted or could have asserted in the Underlying Action and thus "effectively ended the dispute" consistent with the cases interpreting § 15-108(c). Gonzales, 611 N.E.2d at 263. TPPs' assertion that the Release did not terminate litigation of DMJ's claims in the Underlying Action is not supported by the record. The Release explicitly states that DMJ agrees to "fully release Settling Defendants . . . from *all claims that have been or could have been asserted* by DMJ

---

⁷(...continued)
cost recovery *as permitted by law*, from any party." (Order at 6 (emphasis added).) However, TPDs were not party to the Settlement Agreement and thus, as a matter of law, they could not have waived the protection of § 15-108. See Mitchell, 461 N.E.2d at 289, 290 (explaining that waiver stipulation was valid in light of fact that it had been agreed to knowingly by all named parties).

9

against Settling Defendants in the Litigation and *any and all future claims* related to Quanta Site-Related Contamination." (Agreement App. K at 2 (emphasis added).)

TPPs attempt to distinguish the present case from the leading cases interpreting § 15-108(c) by arguing that "none of these cases involve the type of continuing liabilities and obligations found here, where the cost of the settlement has not been fixed and will not be determined for many years." (Opp'n 7.) According to TPPs, the "continued existence of these obligations, coupled with the Court's ongoing jurisdiction, keeps the adversarial relationship alive and subjects the Settling Defendants and DMJ to substantial continued liability." (Opp'n 7.) However, what TPPs refer to as "continuing obligations and liabilities" are merely the terms of the Settlement Agreement. (See Opp'n 3; Agreement §§ 4-15.) These "obligations" constitute part of the consideration the settling defendants provided DMJ in order "to resolve all of the claims that DMJ made or could have made" in the Underlying Action. (Agreement at § 4.)

The cases examining the effect of a release on the relationship between the original parties are not concerned with the terms of the settlement agreement which gave rise to the release. Rather, these cases look to whether the party seeking contribution extinguished the claims asserted against it in the underlying action. For example, in Gonzalez the court found that the defendant/third-party plaintiff "effectively avoided any further litigation of the claims against it" because in the underlying case, it entered into a pretrial agreement that capped the amount of damages that could be enforced against it. 611 N.E.2d at 264. As a result of this agreement, the defendant/third-party plaintiff "stopped defending the [underlying] action" and "inform[ed] the

court prior to trial that it had abandoned all its defenses and counterclaims." Id. Similarly, in Perno the defendant/third-party plaintiff made an agreement that limited the plaintiff's "right to enforcement to 0% of any judgment" rendered against it. 673 N.Y.S.2d at 852. Thus, the defendant/third-party plaintiff in Perno faced no liability to the plaintiff "despite the pendency of suit against it." Id. Relying on Gonzales, the court found that § 15-108(c) barred the third-party plaintiff from seeking contribution because it "effectively[] terminated its adversarial relationship with plaintiffs." Id. In both Gonzales and Perno, the court found that § 15-108(c) barred a contribution claim by the third-party plaintiff because the release/settlement agreement in question extinguished the underlying claims, despite the fact that the underlying lawsuit continued to be litigated after the agreement was reached. Here, as my Order makes explicit, the Settlement Agreement resulted in the dismissal with prejudice of DMJ's claims against the settling defendants. Thus, the claims at issue in the Underlying Action were extinguished in an even more pronounced way than those at issue in either Gonzales or Perno. (Order at 5.) There is nothing in the terms of the Settlement Agreement that alters this analysis.

I find that the "obligations and liabilities" that TPPs have assumed vis à vis DMJ are the result of a binding contract – the Settlement Agreement – pursuant to which the settling defendants voluntarily agreed to make payments and undertake remediation in exchange for release from "all claims that have been or could have been asserted by DMJ" in the Underlying Action. (Agreement App. K at § 5.) Thus, "any post-settlement obligations borne by the Settling Defendants arise solely from the Settlement Agreement and, therefore, are in the nature of executory contract commitments that are legally distinct from the adversarial relationship that

11

existed in the Underlying Action with DMJ."[8] (TPDs' Reply 4 (internal quotation marks omitted).)

In short, the General Release that was executed in favor of the settling defendants pursuant to the Settlement Agreement constitutes a "release from liability" within the meaning of § 15-108(c) because it "effectively ended the dispute" between the parties by "effectively [avoiding] further litigation of the claims" of the one against the other in the Underlying Action. Gonzales, 611 N.E.2d at 264. Therefore, TPPs' § 1401 claim is barred by § 15-108 and should be dismissed.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Count IV of the Third Amended Third-Party Complaint be dismissed pursuant to G.O.L. § 15-108. Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Irizarry and to my chambers, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: Brooklyn, New York
       June 25, 2008

Respectfully submitted,

_____/s/_____

---

[8] As TPDs correctly note, "[s]ettlement agreements are contracts and therefore the same legal principles governing cases involving general contract disputes apply." (TPDs' Reply 4 (quoting White v. Brookhaven Nat'l Lab., 407 F. Supp. 2d 404 (E.D.N.Y. 2006) (quotation marks omitted).)

ROBERT M. LEVY
United States Magistrate Judge