UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DMJ ASSOCIATES, L.L.C.,

                Plaintiff,

    -  vs.-

CARL A. CAPASSO, et al.,

              Defendants.


--------------------------------------------------------X

EXXON MOBIL CORPORATION and
QUANTA RESOURCES COPORATION,

              Defendants/
              Third-Party Plaintiffs,

    -  vs. –

ACE WASTE OIL, INC., et al.,

              Third-Party Defendants.

--------------------------------------------------------X

CV-97-7285
(Irizarry, J.)
(Levy, M.J.)
**ORAL ARGUMENT REQUESTED**
Date of Service:   August 7, 2013

Redacted Pursuant to Stipulation and Order of Confidentiality Entered December 13, 2006 (Docket No. 1067), and Order granting motion for leave to file under seal dated October 17, 2013


MEMORANDUM OF LAW IN SUPPORT OF FEDERAL TPDs'
MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P 12(B)(1),
THE PURPORTEDLY-ASSIGNED CLAIMS SET FORTH IN THE
THIRD AMENDED THIRD-PARTY COMPLAINT


LORETTA E. LYNCH
United States Attorney for the
  Eastern District of New York
271 Cadman Plaza East, 7th Floor
 Brooklyn, New York 11201
(718) 254-6014
*Attorneys for the Federal Third-Party Defendants*


Of Counsel:
SANDRA L. LEVY
Assistant United States Attorney

## <u>PRELIMINARY STATEMENT</u>

The Federal Third-Party Defendants ("TPDs")[1] respectfully move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), part of the claims that Third-Party Plaintiffs ("TPPs") have asserted against the Federal TPDs in the Third Amended Third-Party Complaint ("Third-Party Complaint" or "3d Pty. Complt.") for lack of subject matter jurisdiction.[2]   In this environmental case, the TPPs claim that certain non-parties to the instant third-party action assigned to the TPPs their purported rights to seek contribution from the Federal TPDs and the other TPDs in the action for costs, payments and commitments that the non-parties allegedly incurred to investigate and remediate a state Superfund site.   These purported assignments are void as against the Federal TPDs pursuant to the Assignment of Claims Act, 31 U.S.C. § 3727.

With limited exceptions not relevant to this case, the Assignment of Claims Act generally prohibits assignments of claims against the United States.   The TPPs therefore lack Article III standing to maintain the action against the Federal TPDs on behalf of the purported assignor non-parties to the extent that the costs, payments and commitments that the TPPs seek to recover from the Federal TPDs have allegedly been incurred by the purported assignor non-parties, and not by the TPPs themselves.   For these reasons and the reasons set forth herein, the part of the TPPs' claim against the Federal TPDs that represents costs, payments and commitments allegedly incurred by the non-parties should be dismissed.

---

[1]  The "Federal Third-Party Defendants" are the United States Department of the Air Force, the United States Department of the Army, the United States Department of the Coast Guard, the United States Department of Defense, and the United States Department of the Navy.

[2]  All references to the Third Amended Third-Party Complaint are to Docket No. 1149.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Relevant Procedural History

In 2004, Third-Party Plaintiffs Quanta Resources Corporation ("Quanta") and ExxonMobil Corporation ("Exxon") brought the instant third-party action against the Federal TPDs and several other TPDs under, *inter alia*, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601 *et seq*. See Docket No. 754. The third-party action followed the settlement of an underlying first-party action, which was commenced in 1997 by DMJ Associates, L.L.C. ("DMJ") against certain defendants, including the Third-Party Plaintiffs ("TPPs") and certain other parties. See 3d Pty. Complt. ¶¶ 1 & 2, and Ex. A thereto.

In the underlying first-party action, DMJ had sought payment of past and future costs incurred in response to the alleged presence of hazardous substances on certain property in Queens, New York described as the "Capasso Property" pursuant to, *inter alia*, CERCLA. Id. ¶ 1, and Exhibit ("Ex.") A thereto. The complaint in the underlying first-party action had alleged that the hazardous substances on the Capasso Property were released, in part, from the facility formerly owned and operated by TPP Quanta Resources Corporation ("Quanta Facility"). Id. ¶ 2, and Ex. A thereto. In 2005, TPPs Quanta and Exxon, as well as certain other defendants in the underlying first-party action, entered into a settlement agreement with DMJ pursuant to which they agreed to pay, and allegedly have paid, certain amounts to DMJ, and pursuant to which they made certain commitments to DMJ to remediate the contaminated conditions at the Quanta Facility and Capasso Property. Id. ¶ 4. These commitments were incorporated into the Order that dismissed the underlying DMJ action on June 27, 2005. See Stipulation and Order of Dismissal (Docket No. 798) ("2005 Dismissal Order").

TPPs Quanta and Exxon commenced the instant third-party action in November 2004 before the settlement of the underlying first-party action. See Docket No. 754.  In December 2005, after the settlement of the underlying first-party action and before service of the original third-party complaint, the TPPs amended their third-party complaint, and added allegations about the settlement of the underlying first-party action.   See Docket No. 808.   In the amended third-party complaint, the TPPs asserted that the Settling Defendants in the underlying first-party action ("SDs") had assigned to the TPPs their rights to recover response costs.   See Docket No. 808 ¶ 6.

The Federal TPDs answered the amended complaint on March 13, 2006.   See Docket No. 946.  In their Answer, the Federal TPDs asserted, among other things, a defense in which they stated that "Third-Party Plaintiffs' claims are barred to the extent that the Settling Defendants in the underlying complaint did not validly assign their claims to Third-Party Plaintiffs." See id., Twentieth Defense.

The TPPs filed a second amended complaint in May 2007.   See Docket No. 1100.   In the second amended complaint The TPPs again asserted that the SDS had assigned to the TPPs their rights to recover response costs.   See Docket No. 1100 (¶ 6).   The TPPs filed a third amended complaint in November 2007, in which they asserted an additional claim against the TPDs pursuant to a separate section of CERCLA, 42 U.S.C. § 9607.   See Docket No. 1149.  In the third amended third-party complaint, the TPPs asserted that the SDs had assigned to the TPPs "their rights to recover response costs, their right to seek contribution arising from their payments to DMJ and their costs of fulfilling their commitment to DMJ to remediate the Quanta Facility and the Capasso Property."  See Docket No. 1149 (¶ 6).

The Federal TPDs answered the Third Amended Third-Party Complaint on December 21, 2007.  See Docket No. 1181.   In their Answer, the Federal TPDs re-asserted a defense in which they stated that "Third-Party Plaintiffs' claims are barred to the extent that the Settling Defendants in the underlying complaint did not validly assign their claims to Third-Party Plaintiffs."  See id., Twenty-Sixth Defense.  In response to the additional claim against the TPDs pursuant to a separate section of CERCLA, 42 U.S.C. § 9607 that had been asserted in the third-party complaint, the Federal TPDs asserted a counterclaim against the TPPs for contribution under CERCLA pursuant to 42 U.S.C. § 9613(f)(1).   See id., Counterclaim.   In their counterclaim, the Federal TPDs expressly noted that they had "challenge[d] the validity of the purported assignment, as set forth in the Twenty-Sixth Defense."  Id.  The Federal TPDs further asserted that "*[s]olely for purposes of this counterclaim*, . . . the United States assumes that by virtue of the purported assignment from the Settling Defendants . . . , [TPPs] assumed the rights and liabilities of the Settling Defendants that may be raised in th[e] action, including the counterclaims asserted by the United States."  Id. (emphasis added).  The Federal TPDs then reserved the right to assert a fourth-party or separate action against the Settling Defendants if it was found that the purported assignments did not allow the Federal TPDs to assert a counterclaim against the SDs through the TPPs.  Id.

In the course of discovery in the third-party action, the TPPs asked in interrogatories about the grounds for the TPDs' asserted defenses.  See Declaration of Sandra L. Levy, dated August 7, 2013, Ex. A (Federal TPDs' Supplemental Responses and Objections to TPPs' First Set of Interrogatories, dated February 27, 2009), Interrogatory No. 22.  In relevant part of the Federal TPDs' supplemental responses dated February 27, 2009, the Federal TPDs responded that "the Settling Defendants did not validly assign their claims to the [TPPs] in accordance with

the requirements of the Assignment of Claims Act, 31 U.S.C. § 3727, and that [the TPPs] are therefore limited to the damages that they may validly recover on their own behalf."  See  id.

Relevant Allegations of the Third-Party Complaint

        The Third-Party Complaint alleges that "a number of the defendants" -- presumably referring to certain, albeit unidentified, defendants in the underlying DMJ action -- have expended costs in responding to contamination ("response costs") in connection with the Quanta Facility and the Capasso Property, and that they will expend additional response costs in the future.  3d Pty. Complt. ¶ 3; see also id. ¶ 9.  The Third-Party Complaint further alleges that this unnamed group of defendants "that expended most of the response costs" -- whom the Third-Party Complaint defines as "the Settling Defendants" -- entered into a settlement agreement with first-party plaintiff DMJ pursuant to which they agreed to pay, and have paid, certain amounts to DMJ and made certain commitments to DMJ to remediate the contaminated conditions at the Quanta Facility and Capasso Property.  Id. ¶ 4.  As noted, the Order that dismissed the underlying DMJ action incorporated these commitments.  See 2005 Dismissal Order.

        The Third-Party Complaint describes the payments and commitments that the SDs made in the settlement agreement with DMJ as "represent[ing] 100 percent of the claims that were made and that could have been made by DMJ in this action."  3d Pty. Complt. ¶ 4; see also id. ¶¶ 10, 32 (same); 2005 Dismissal Order ¶ 5 (same).  The Third-Party Complaint then sets forth the claim against the TPDs in the instant action in collective terms, i.e., that by collectively paying 100% of DMJ's claims in the underlying action, "the [SDs] have paid or will pay more than their fair share of the claims that DMJ made or could have made in this action."  Id. ¶ 5; see also id. ¶¶ 11, 32 (same).

The only named plaintiffs in the instant third-party action are Exxon and Quanta; none of the other Settling Defendants are named as third-party plaintiffs or even identified at all in the Third-Party Complaint. The Third-Party Complaint alleges that the TPPs and the unnamed non-party SDs collectively have paid "more than their fair share," without reciting any individual shares of the payments, or otherwise distinguishing or itemizing the individual payments of the TPPs and the payments of the unnamed non-party SDs. See id. ¶¶ 3-5, 9-11, 13, 32.

The TPPs claim that the SDs assigned to the TPPs their alleged rights to recover their response costs, to seek contribution arising from their payments to DMJ, and their costs of fulfilling their commitment to DMJ to remediate the Quanta Facility and the Capasso Property. Id. ¶ 6. The Third-Party Complaint does not include any allegation at all about whether the requirements of the Assignment of Claims Act, 31 U.S.C. § 3727, were met for the purported assignments of the SDs' claims against the Federal TPDs.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(1), a court "must accept as true all material allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted). A court must not draw inferences from the pleadings favorable to the party asserting jurisdiction, id., and may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff has the burden of proving subject matter jurisdiction by the preponderance of the evidence. Id.

# ARGUMENT

### THIRD-PARTY PLAINTIFFS LACK STANDING TO PURSUE THE PURPORTEDLY-ASSIGNED CLAIMS AGAINST THE FEDERAL THIRD-PARTY DEFENDANTS.

The Third-Party Complaint should be dismissed on the ground that the TPPs have not met their burden of demonstrating that they have standing under Article III of the Constitution to assert the claims that the SDs purportedly assigned to them.  See Summers v. Earth Island Instit., 555 U.S. 488, 493 (2009) (plaintiff has burden of demonstrating standing).  "Article III standing [is] . . . a limitation on the authority of a federal court to exercise jurisdiction."  Alliance for Env'tl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 6 (2d Cir. 2006).  As such, "the proper procedural route" for a challenge to Article III standing "is a motion under Rule 12(b)(1)."  Id.  To meet their burden of establishing standing, the TPPs must demonstrate that they have suffered an "injury in fact" that is fairly traceable to an action of the Federal TPDs, and that is likely to be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

### A. The Claims that the Settling Defendants Purportedly Assigned to the Third-Party Plaintiffs Are Void Pursuant to the Assignment of Claims Act.

Two anti-assignment statutes restrict the manner in which private entities may voluntarily assign claims against, and contracts with, the government.  Referred to collectively as the "Anti–Assignment Act," these enactments are found at 41 U.S.C. § 15 ("Assignment of Contracts Act")[3] and 31 U.S.C. § 3727 ("Assignment of Claims Act"), respectively.  See Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002).  Taken together, these statutes "broadly prohibit (with narrow exceptions discussed below) transfers of contracts involving the

---

[3] The Assignment of Contracts Act is now codified at 41 U.S.C. § 6305.  See Pub. L. 111-350 § 3, 124 Stat. 3804 (Jan. 4, 2011).

United States or interests therein, and assignment of claims against the United States." Id.; Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 214 (2007), aff'd, 542 F.3d 889 (Fed. Cir. 2008).   "Such contracts (or interests therein) may not be transferred and such claims may be assigned '*only after*' they have been allowed in a specific amount and provisions made for their payment." Fireman's Fund, 313 F.3d at 1349 (emphasis added).  The Anti-Assignment Act applies to claims against the United States as well as its agencies. See Saint John Marine Co. v. United States, 92 F.3d 39, 50 (2d Cir. 1996).

The part of the Anti-Assignment Act that is applicable to the instant third-party action is the Assignment of Claims Act because the TPPs allege that they are assignees of the SDs' claims against the Federal TPDs.   See 3d Pty. Complt. ¶ 6.  The Assignment of Claims Act provides that an assignment of a claim against the United States may be made only after the assignment satisfies the following requirements: (1) the claim must be allowed; (2) the amount must be decided; (3) a warrant for payment of the claim must be issued; (4) the assignment must specify the warrant; (5) the assignment must be made freely; (6) the assignment must be attested by two witnesses; (7) the person making the assignment must acknowledge it before an official who may acknowledge a deed; (8) that official must certify the assignment; and (9) the certificate must state that the official explained the assignment when it was acknowledged.    31 U.S.C. § 3727(b).[4]  By its terms, for an assignment of a claim against the United States to be valid, these

---

[4]  31 U.S.C. § 3727(a) defines "assignment" to mean "a transfer or assignment of a claim against the United States Government or of an interest in the claim; or the authorization to receive payment for any part of the claim."

31 U.S.C. § 3727(b) provides:

An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment has been issued.   The assignment shall specify the

requirements must be met before the assignment is made.  See 31 U.S.C. § 3727(b) ("assignment may be made *only after*" requirements of the provision are satisfied); Fireman's Fund, 313 F.3d at 1349.

   With only limited exceptions described further below, the Assignment of Claims Act "renders 'absolutely null and void' all transfers of any claim against the United States unless[,] among other conditions[,] the claim has been allowed and the amount ascertained."  See Segal v. Rochelle, 382 U.S. 375, 382 (1966)(citation omitted); [5] Atlas Hotels, Inc. v. United States, 140 F.3d 1245, 1247 (9th Cir. 1998); see also In re Freeman, 489 F.2d 431, 432-433 (9th Cir. 1973) ("failure to comply with the Assignment of Claims Act renders the assignment null and void so far as the United States is concerned").

   As described further below, the Assignment of Claims Act applies to "voluntary" assignments such as the SDs' purported assignments to the TPPs of claims against the Federal TPDs that are asserted in the Third-Party Complaint.  See United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 373-7 (1949); California-Amer. Water Co. v. United States, No. Civ. S-052295, 2006 WL 1686139, at *6 (E.D. Cal. June 16, 2006)("Cal-Am.").  The claim that is the subject of the purported assignment herein is similar to the claim that is the subject of the purported assignment that the Supreme Court found to be void pursuant to the Assignment of Claims Act in United States v. Shannon, 342 U.S. 288 (1952).  Specifically, in Shannon, the

_____

   warrant, must be made freely, and must be attested to by 2 witnesses.   The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment.   The certificate shall state that the official completely explained the assignment when it was acknowledged.   An assignment under this section is valid for any purpose.

[5]  The Assignment of Claims Act was formerly codified at 31 U.S.C. § 203.  In 1982, the United States Code was substantially reorganized, Pub. L. No. 97-258, 96 Stat. 877 (1982).  This statute was codified at 31 U.S.C. § 3727 without substantive change.   Cases adjudicated before 1982 generally refer to 31 U.S.C. § 203.

Supreme Court held that an assignment of a Federal Tort Claims Act ("FTCA") property damage claim as part of a voluntary property conveyance was a "voluntary" assignment within the scope of the Assignment of Claims Act.  Id. at 292.  Because the requirements of the Assignment of Claims Act had not been met for the purported assignment, the Supreme Court held that the assignment of the FTCA claim was prohibited by the Act.  Shannon, 342 U.S. at 290-294.   The Ninth Circuit held similarly with respect to a FTCA claim that was transferred as part of a voluntary property conveyance in Cadwalder v. United States, 45 F.3d 297, 299-302 (9th Cir. 1995).  See also Cal-Am, 2006 WL 1686139, at *6 (same); Diamond v. FEMA, 689 F.Supp. 163, 167 (E.D.N.Y. 1988) (purported assignment of flood insurance policy and proceeds therefrom as part of voluntary property conveyance was void under Assignment of Claims Act); Garden Dist. Condominiums, L.L.C. v. Fidelity Nat'l Ins. Co., Civil Action No. 07-6398, 2009 WL 140523, at *1 (E.D. La. Jan. 20, 2009) (same); cf. Westinghouse Elec. Co. v. United States, 56 Fed. Cl. 564, 568-70 (2003) (purported assignment of contract claim that was part of voluntary sale of assets of business was void under Assignment of Contracts Act), aff'd mem., 97 Fed. Appx. 931 (Fed. Cir. May 6, 2004).

In the instant third-party litigation, the purported assignments of claims against the United States were part of a voluntary settlement-related agreement and, as such, were subject to the requirements of the Assignment of Claims Act.[6]  The Court of Claims held similarly in the

context of a purported assignment through a settlement agreement in Pan Arctic Corp. v. United States, 8 Cl. Ct. 546 (Cl. Ct. 1985). Specifically, in Pan Arctic, the Court of Claims held that an assignment of a claim that was part of a settlement agreement was within the scope of the Assignment of Claims Act. Id. at 547-48. Non-party Worthington Service Corporation ("Worthington") had entered into a contract with the United States. Id. at 547. Worthington in turn entered into a subcontract with Pan Arctic Corporation. Id. In order to resolve other litigation between Worthington and Pan Arctic, the parties entered into a settlement agreement wherein Worthington purported to assign all of its claims against the United States to Pan Arctic. Id. The Court of Claims held that the Assignment of Claims Act rendered the assignment null and void because the assignment did not satisfy the requirements of the Act. Id. at 547-48.

The Supreme Court has recognized a limited exception to the prohibition of the Anti-Assignment Act for transfers by "operation of law," as distinguished from transfers that are part of voluntary conveyances, generally referred to as "voluntary assignments" of demands against the United States. See, e.g., Aetna, 338 U.S. at 373-76. Pursuant to this "operation of law" exception, courts have excepted transfers from the Act's prohibition that are by operation of law, as well as transfers that were found to be analogous to such transfers. See Shannon, 342 U.S. at 292. This has included transfers by intestate succession or testamentary disposition, by consolidation or merger to the successor of a claimant corporation, by judicial sale, by subrogation to an insurer, by statutory provision to a trustee in bankruptcy, and by voluntary assignment of all of the assets of an insolvent debtor for the benefit of creditors. See Patterson v. U.S., 354 F.2d 327, 329-30 (Ct. Cl. 1965) (collecting cases). A purported assignment of a claim

within the context of a settlement agreement such as the alleged assignment by the SDs to the TPPs is a voluntary assignment that does not fall within this limited exception to the Anti-Assignment Act for transfers by "operation of law," and is not in any way analogous thereto. See, e.g., "voluntary assignment" cases cited at pages 9 to 11, above; see also United States v. Dow, 357 U.S. 17, 20 (1958) (assignment of takings claim as part of voluntary property conveyance does not fall within narrow exception to Assignment of Claims Act for transfers by "operation of law").

The primary purpose of the Anti-Assignment Act was "to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government." Aetna, 338 U.S. at 373. Other purposes were "to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." Id. On the latter point, courts have recognized that Act was intended to ensure that suits and judgments against the United States would be in the names of original claimants, so that United States would be able to avail itself of its rights and defenses, such as counterclaim and offset against the original claimants. See Shannon, 342 U.S. at 292.

Here, the United States may not be able to avail itself of counterclaims it has against the purported assignors/SDs, or otherwise defend itself directly and individually against the claims of the SDs. Among other things, in discovery, the SDs are third parties to whom party discovery rules would not be applicable; as the tools available for party discovery are more expansive than third-party discovery, this hinders the Federal TPDs' rights to obtain discovery about, and further defend against, each of the SDs' purported claims. Further, the collective manner in which the TPPs have alleged their claim against the TPDs – whereby the TPPs are contending that the

amount that the TPDs and SDs paid collectively is more than their collective fair share, rather than alleging that each individual TPP and SD paid more than its individual fair share[7] – may prevent the Federal TPDs from being able to defend separately against each SD's potential claim.

In addition, the Federal TPDs may have to investigate the validity of the purported assignments, as reflected in the motion to be filed by TPD Revere Copper Products, Inc. herein, which raises questions about the validity of the purported assignments as a matter of law. [8] See, e.g., Cadwalder, 45 F.3d at 302 (government had to investigate validity of alleged assignment). In the meantime, the Federal TPDs do not address herein, and expressly reserve the right to challenge, the scope and nature of the purported assignments themselves, including, but not limited to, whether the purported assignments are invalid for reasons other than their nullity under the Assignment of Claims Act.

In sum, to give effect to the purported voluntary assignments at issue in this action would violate the terms of the Assignment of Claims Act as well as the Supreme Court authority pursuant to which only limited exceptions for transfers by "operation of law" (or transfers found to be analogous thereto) have been recognized.  As such, the Court should find that the SDs' purported assignment to the TPPs of claims against the Federal TPDs is void.

**B.  The Third-Party Plaintiffs Lack Standing to Pursue the Purportedly-Assigned Claims.**

When a plaintiff is seeking to recover from the United States on a claim purportedly assigned to it, to the extent the claim is voided by the Assignment of Claims Act, the claim is subject to

---

[7]  See relevant allegations of Third-Party Complaint, summarized at pages 5 to 6 above.

[8]  TPD Revere Copper Products, Inc. intends to file a motion on behalf of one or more private TPDs that challenges the validity of the purported assignments.

dismissal for lack of standing.  See Cal-Am., 2006 WL 1686139, at *4l Atlas Hotels, 140 F.3d at

1246-47.  "Put simply, if the injury for which the assignee seeks recovery is not [its] own injury

but that which was purportedly assigned to [it], and th[e] purported assignment is void, the

assignee has no injury in fact, and thus lacks standing." Cal-Am., 2006 WL 1686139, at *4.

Here, the TPPs do not assert – and no evidence exists – that the purportedly-assigned claims

against the United States met the requirements of the Assignment of Claims Act, 31 U.S.C. §

3727.  The purported assignments are therefore void as against the Federal TPDs.  The TPPs

have thus not suffered an injury in fact for the part of their claim against the Federal TPDs that

represents SDs' claims for the SDs' alleged response costs, payments and commitments because

the TPPs have not themselves incurred those costs, payments or commitments.  "Put simply, the

[SDs'] injury for which the [TPPs] seek[] recovery is not [the TPPs'] own injury but that which

was purportedly assigned to [them]." See Cal-Am, 2006 WL 1686139, at *4.  The only possible

alleged "injury" for which the TPPs may have standing is for alleged response costs, payments

and commitments that each of the TPPs allegedly has itself incurred.  As such, TPPs lack

standing to pursue the part of the TPPs' claims that represents response costs that the SDs

allegedly incurred, payments that the SDs allegedly made to DMJ, and/or the SDs' alleged costs

of fulfilling their commitment to DMJ to remediate the Quanta Facility and the Capasso

Property.

## CONCLUSION

For the reasons stated herein, the Federal TPDs respectfully request that the Court dismiss the part of TPPs' claim against the Federal TPDs that represents the response costs that the SDs allegedly incurred, payments that the SDs allegedly made to DMJ, and/or the SDs' alleged costs of fulfilling their commitment to DMJ to remediate the Quanta Facility and the Capasso Property, and enter judgment accordingly.


Dated: Brooklyn, New York           LORETTA E. LYNCH
      August 7, 2013           United States Attorney for the
                                      Eastern District of New York
                              271 Cadman Plaza East, 7th Floor
                              Brooklyn, New York 11201


SANDRA L. LEVY
Assistant United States Attorney
  (Of Counsel)