ARENT FOX LLP
Allen G. Reiter
Jennifer L. Bougher
1675 Broadway
New York, New York 10019
*Attorneys for Third-Party Plaintiff*
  *Quanta Resources Corporation*

Andrew E. Anselmi
Maura W. Sommer
MCCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
210 Park Avenue
Suite 301
Florham Park, New Jersey 07932
*Attorneys for Third-Party Plaintiff*
  *ExxonMobil Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DMJ ASSOCIATES, L.L.C.,

               Plaintiff,

   -against-

CARL A. CAPASSO, et al.,

               Defendants.

EXXON MOBIL CORP., and
QUANTA RESOURCES CORP.,

          Defendants/Third-Party Plaintiffs,

   -against-

ACE WASTE OIL, INC., et al.,

            Third-Party Defendants.

Civil Action No. 97-CV-7285 (DLI) (RML)

Redacted Pursuant to Stipulation and Order of Confidentiality Entered on December 13, 2006 (Docket No. 1067), and Order of Court granting leave to file under seal, dated October 17, 2013

**MEMORANDUM OF LAW OF THIRD-PARTY PLAINTIFFS EXXON MOBIL CORPORATION AND QUANTA RESOURCES CORPORATION IN OPPOSITION TO THE FEDERAL THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT: THE ASSIGNMENTS ARE VALID AGAINST THE FEDERAL
DEFENDANTS ........................................................................................................ 4

    I.    The Act Does Not Apply to the Assignments Herein Because They Fall
        Squarely Within Its Long-Established Exceptions ................................. 4

    II.    The Express Terms of the Act Combined with the Procedure for
        Implementing the Act Demonstrate That It is Designed to Apply to the
        Assignment of Contracts for Goods and Services ............................... 10

    III.    The Federal Defendants Consented to the Assignment ....................... 14

    IV.    Assuming the Act Applies and the Federal Defendants Have Not
        Consented to the Assignment, the Federal Defendants Can Still Consent to
        the Assignment ..................................................................................... 17

    CONCLUSION ................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012)................................................................................4

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
  106 F.3d 11 (2d Cir. 1997)..............................................................................17

*Am. Nat'l Ins. Co. v. Gilroy, Sims & Assocs. Ltd.*,
  874 F. Supp. 971 (E.D. Mo. 1995)..............................................................14, 16

*Audio-Visual Mktg. Corp. v. Omni Corp.*,
  545 F.2d 715 (10th Cir. 1976) .......................................................................16

*Banking & Trading Corp. v. Reconstr. Finance Corp.*,
  15 F.R.D. 360 (S.D.N.Y. 1954) ......................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................4

*Cadwalder v. U.S.*,
  45 F.3d 297 (9th Cir. 1995) ...........................................................................10

*Cal.-Am. Water Co. v. U.S. Dep't of Air Force*,
  No. CIV S-052295, 2006 WL 1686139 (E.D. Cal. Jun. 16, 2006)........................8

*City of New York v. Exxon Corp.*,
  766 F. Supp. 177 (S.D.N.Y. 1991) .................................................................12

*Commander Oil Corp. v. Barlo Equip. Corp.*,
  215 F.3d 321 (2d Cir. 2000)...........................................................................11

*Consumers Ice Co. v. U.S.*,
  475 F.2d 1161 (Ct. Cl. 1973) ...........................................................................5

*Danielson v. U.S.*,
  416 F.2d 408 (9th Cir. 1969) ...........................................................................5

*Davis v. Monroe County Bd. of Educ.*,
  526 U.S. 629 (1999).......................................................................................4

*Delmarva Power & Light Co. v. U.S.*,
  79 Fed. Cl. 205 (Fed. Cl. 2007) ................................................................14, 17

*Diamond v. FEMA*,
  689 F. Supp. 163 (E.D.N.Y. 1988) .................................................................10

*Erwin v. U.S.*,
    97 U.S. 392 (1878)..................................................................................................4, 5

*Garden Dist. Condos., L.L.C. v. Fid. Nat'l Ins. Co.*,
    No. Civ. A. 07-6398, 2009 WL 140523 (E.D. La. Jan. 20, 2009)..........................................10

*Keydata Corp. v. U.S.*,
    504 F.2d 1115 (Ct. Cl. 1974) ............................................................................5, 6, 8

*Lambrinos v. Exxon Mobil Corp.*,
    349 Fed. App'x 613 (2d Cir. 2009)......................................................................17

*Motta v. Res. Shipping & Enters. Co.*,
    499 F. Supp. 1365 (S.D.N.Y. 1980)......................................................................17

*New Rawson Corp. v. U.S.*,
    55 F. Supp. 291 (D. Mass. 1943) ............................................................................5

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
    596 F.3d 112 (2d Cir. 2010)..........................................................................12

*Pan Arctic Corp. v. U.S.*,
    8 Cl. Ct. 546 (Cl. Ct. 1985)..........................................................................9, 10

*Pecou v. Forensic Comm. Pers.*,
    No. 06 CV 3714, 2010 WL 2787588 (E.D.N.Y. May 14, 2010)......................................4

*Price v. Forrest*,
    173 U.S. 410 (1899)..........................................................................5

*Segal v. Rochelle*,
    336 F.2d 298 (5th Cir. 1964), *aff'd*, 382 U.S. 375 (1966) ....................................5

*St. John Marine Co. v. U.S.*,
    92 F.3d 39 (2d Cir. 1996)..........................................................................5, 6, 8

*Tuftco Corp. v. U.S.*,
    614 F.2d 740 (Ct. Cl. 1980) ........................................................................14, 16

*U.S. v. Aetna Cas. & Sur. Co.*,
    338 U.S. 366 (1949)..........................................................................4, 5

*U.S. v. Kramer*,
    757 F. Supp. 397 (D.N.J. 1991) ............................................................................12

*U.S. v. Shannon*,
    342 U.S. 288 (1952)..........................................................................7, 8, 10

*United Pac. Ins. Co. v. U.S.*,
358 F.2d 966 (Ct. Cl. 1966) ................................................................................17

*Westinghouse Elec. Co. v. U.S.*,
56 Fed. Cl. 564 (Fed. Cl. 2003), *aff'd*, 97 Fed. App'x 931 (Fed. Cir. 2004).........................10

*Zaldivar v. Anna Bella's Cafe, LLC*,
No. 11-CV-1198, 2012 WL 642828 (E.D.N.Y. Feb. 28, 2012) ................................................4

**STATUTES, RULES AND REGULATIONS**

31 U.S.C. § 3727, Assignment of Claims Act .................................................... passim

48 C.F.R. Ch. 1, Federal Acquisition Regulation ............................................... passim

FAR Section 2.101 ...........................................................................................12

FAR Section 32.8 .........................................................................................1, 13

Fed. R. Civ. P. 17 .......................................................................................16, 17

## PRELIMINARY STATEMENT

Third Party Plaintiffs Exxon Mobil Corporation and Quanta Resources Corporation (collectively, the "Third-Party Plaintiffs") respectfully submit this memorandum of law in opposition to the motion made by the Federal Third-Party Defendants (the "Federal Defendants") to dismiss for lack of subject matter jurisdiction.

The Federal Defendants' motion is based on their assertion that the assignment of claims to the Third-Party Plaintiffs by a group of settling defendants in the underlying litigation herein (the "Settling Defendants") is void under the Assignment of Claims Act, 31 U.S.C. § 3727 (the "Act").

Their motion fails for three independent reasons.  First, notwithstanding the broad and seemingly conclusive language of the Act, courts have developed and permitted numerous exceptions to its terms, and the assignments at issue herein fall squarely within those exceptions. Second, the Federal Defendants' motion is undone by the promulgation of the Federal Acquisition Regulation, 48 C.F.R. Ch. 1 (the "FAR"), in 1984 and the text of the Act itself. Section 32.8 of the FAR, consistent with the Act, creates an elaborate and detailed procedure for the assignment of claims that has no possible application to the CERCLA claims at issue in this action.  Thus, the FAR demonstrates the recognition by the Government that the Act is designed to address the assignment of claims under a contract with the Government, not the assignment of claims under the federal environmental laws.  Finally, by failing to raise the Act in a pleading for seven years after their initial answer in this litigation, coupled with their active participation in the litigation without seeking judicial relief under the Act, the Federal Defendants have consented to the assignments they now belatedly challenge.

## STATEMENT OF FACTS

In their moving papers, the Federal Defendants recount the history of the underlying action brought by DMJ Associates, L.L.C. ("DMJ").  In conjunction with the settlement of that litigation, in June 2005, the Settling Defendants assigned their claims to Quanta and Exxon (█████████████████████████████████████████████████████████████████████.  Notably, the assigned claims were not limited to those that could be brought against the Government or any of its departments, but rather those that could be brought against anyone not participating in the settlement with DMJ.  The amended third-party complaint filed by Quanta and Exxon in December 2005 (Docket Entry 808, and annexed to the September 18, 2013 Declaration of Allen G. Reiter (the "Reiter Dec.") as Exhibit 1), which was the first pleading served upon any party, recounts the assignment (*id.*, ¶ 6).

The Federal Defendants answered that complaint on March 13, 2006 and answered the third amended complaint on December 21, 2007 (Docket Entries 946 and 1181, Reiter Dec. Exhibits 2 and 3).  Neither of the answers they filed raises a defense based on the Act.  In each of their answers, the Federal Defendants merely asserted that the "Third-Party Plaintiffs' claims are barred to the extent that the Settling Defendants in the underlying complaint did not validly assign their claims to Third-Party Plaintiffs." *See* Docket Entries 946, Reiter Dec. Exhibit 2, Twentieth Defense, and 1181, Reiter Dec. Exhibit 3, Twenty-Sixth Defense.

The Federal Defendants concede that this affirmative defense broadly challenges the validity of the assignments themselves, not whether the assignments comply with the Act.  In their Memorandum of Law, the Federal Defendants draw a distinction between challenging the validity of the assignments and compliance with the Act, as they "do not address herein, and expressly reserve the right to challenge, the scope and nature of the purported assignments themselves, including, but not limited to, whether the purported assignments are invalid for

reasons other than their nullity under the Assignment of Claims Act" (Memorandum of Law at 13). This conclusion is further supported by the assertion of the same affirmative defense, using similar language, by other third-party defendants.[1] In addition, in their 2007 answer, the Federal Defendants asserted a CERCLA counterclaim (Docket Entry 1181, Reiter Dec. Exhibit 3 at 15-22).

By their actions, the Federal Defendants have consented to the assignments they now challenge. While the Federal Defendants did mention the Act for the first time in their Supplemental Responses and Objections to the First Set of Interrogatories in February 2009 (Exhibit A to the Declaration of Sandra L. Levy, dated August 7, 2013, Int. No. 22), they did not refer to the Act in their initial responses and objections (Reiter Dec. Exhibit 6), nor have they ever sought leave to amend their answer and counterclaim to assert it. Moreover, among other things, the Federal Defendants have fully participated in all aspects of this action, producing in excess of 35,000 pages of documents (Reiter Dec. ¶ 9), successfully moving to dismiss the fourth cause of action of the third-amended complaint (Docket Entries 1177, 1178 and 1193, Reiter Dec. Exhibits 7 and 8), participating in more than 25 conferences with the Court during the course of this litigation and being integrally involved in the preparation of the most recent Case Management Order (Reiter Dec. ¶ 12).

---

[1]  Third-party defendant Sunoco, Inc. asserts as its Twenty-Third Defense (Docket Entry 1161, Reiter Dec. Exhibit 4) that:  "Third-Party Plaintiffs' claims are barred to the extent that the Settling Defendants did not validly assign to Third-Party Plaintiffs their right to recover response costs."  Third-party defendant Peabody International Corp. asserts as its Nineteenth Affirmative Defense (Docket Entry 1236, Reiter Dec. Exhibit 5) that:  "Third-Party Plaintiffs' claims are barred to the extent that the Settling Defendants did not validly assign to Third-Party Plaintiffs their right to recover response costs."

**ARGUMENT**

**THE ASSIGNMENTS ARE VALID AGAINST THE FEDERAL DEFENDANTS**

A complaint should not be dismissed unless plaintiffs do not have sufficient facts to raise a right to relief beyond the speculative level to make their claims plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). This rule is also applied when deciding whether subject matter jurisdiction exists. *Pecou v. Forensic Comm. Pers.*, No. 06 CV 3714, 2010 WL 2787588, at *3 (E.D.N.Y. May 14, 2010) (citation omitted); *see also Zaldivar v. Anna Bella's Cafe, LLC*, No. 11-CV-1198, 2012 WL 642828, at *2 (E.D.N.Y. Feb. 28, 2012) (citations omitted). The court must draw all reasonable inferences in the plaintiffs' favor and deny the motion if the undisputed facts reveal any basis on which the non-moving party might prevail. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999) ("[I]n reviewing the legal sufficiency of [plaintiff's] cause of action, we must assume the truth of the material facts as alleged in the complaint.") (citation omitted); *Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 37 (2d Cir. 2012) (stating that in reviewing a motion to dismiss, court will "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in favor of [the non-moving party]") (citation omitted).

**I.     The Act Does Not Apply to the Assignments Herein Because They Fall Squarely Within Its Long-Established Exceptions**

As described in Point II below, the Act and the FAR require the parties to an assignment of claims against the Government to comply strictly with an elaborate and detailed series of steps designed to protect the Government from certain abuses. As a product of the barrier created by the Act, courts have created common law exceptions to it, upholding assignments that do not implicate the risks that it is designed to prevent. *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373-74 (1949); *Erwin v. U.S.*, 97 U.S. 392, 397 (1878). The Act serves two primary purposes:

4

(1) "to prevent persons of influence from buying claims against the United States, which might then be improperly [used against] officers of the Government," and (2) "to avoid the proliferation of claims and claimants, which would increase the Government's risks and burdens in the handling and payment of claims." *Aetna*, 338 U.S. at 373; *St. John Marine Co. v. U.S.*, 92 F.3d 39, 48 (2d Cir. 1996).  When these risks are not present, courts have not required litigants to comply with the Act, stating that these are "cases which were thought not to be productive of the evils which the statute was designed to obviate." *Aetna*, 338 U.S. at 373; *see also Keydata Corp. v. U.S.*, 504 F.2d 1115, 1119 (Ct. Cl. 1974) ("When an assignment, or class of assignments, has been found not to pose those risks, the Act has ordinarily been held inapplicable.").

One of the first types of assignments the Supreme Court declined to impose the Act upon were assignments made through the passage of claims to heirs and devisees.  *Erwin*, 97 U.S. at 397 ("The passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed . . . .").  A long line of cases continues this approach, finding that the following assignments do not contain the risks envisioned by the Act, thus precluding its application: transfers made incident to proceedings in bankruptcy or receivership (*Segal v. Rochelle*, 336 F.2d 298, 302 (5th Cir. 1964), *aff'd*, 382 U.S. 375 (1966); *Danielson v. U.S.*, 416 F.2d 408, 410 (9th Cir. 1969); *New Rawson Corp. v. U.S.*, 55 F. Supp. 291, 293 (D. Mass. 1943)); transfers by the succession of one business entity for another (*Consumers Ice Co. v. U.S.*, 475 F.2d 1161, 1163 (Ct. Cl. 1973)); assignments made by judicial sale or order (*Price v. Forrest*, 173 U.S. 410, 419-25 (1899)); and assignments produced by operation of the law of subrogation (*Aetna*, 338 U.S. at 376).  In rejecting challenges to these classes of assignments based upon their failure to comply with the Act, courts have ruled that they are outside the statute's scope because none of them create the dangers Congress sought to avoid.

Courts, including the Second Circuit, constantly add different assignments to this list.  In *St. John Marine Co.*, the court declined to apply the Act to the assignment in question for two reasons:  the assignment was effected by operation of law and the assignment did "not implicate the dominant policy objectives of the Anti-Assignment Act."  *Id.* at 48.  The Court of Appeals explained why there is an increasing trend of certain types of assignments being exempt from the Anti-Assignment Act: "The obvious reason of this is that there can be no purpose in such cases to harass the government by multiplying the number of persons with whom it has to deal, nor any danger of enlisting improper influences in advocacy of the claim, and that the exigencies of the party who held it justified and required the transfer that was made." *Id.* at 49 (citations omitted). Such is the case here.

The challenged assignments here do not "harass the government by multiplying the number of persons with whom it has to deal, nor [is there] any danger of enlisting improper influences in advocacy of the claim." *Id.*  The risks the Act is designed to protect against are simply not present.  The assignments from the Settling Defendants to the Third-Party Plaintiffs will not enlist the improper influences of government officials, nor will they multiply the number of persons with whom it has to deal.  Instead, the assignments will minimize the number of claims.  By virtue of the assignments of the Settling Defendants' claims to the Third-Party Plaintiffs, the Federal Defendants will not need to deal with a multitude of successive litigations regarding the same claim; instead, the assignments allow the Court to consolidate the multiple and identical claims into the single present matter.  Additionally, the Federal Defendants need not fear the risk of double liability that some courts discuss because the Settling Defendants assigned 100% of their claims to the Third-Party Plaintiffs ██ ████████████████████████ ██. *See Keydata*, 504 F.2d at 1119.

6

In relying upon *U.S. v. Shannon*, 342 U.S. 288 (1952), the Federal Defendants acknowledge that, as stated in that case: "One of Congress' basic purposes in passing the Act was 'that that Government might not be harassed by multiplying the number of persons with whom it head to deal.'"  *Id.* at 293 (citations omitted).  *Shannon*, however, does not support the Federal Defendants' motion.  First, as explained above, the risk of multiplying litigation is not implicated in the present case, and to that extent *Shannon* undermines the Federal Defendants' motion.  Second, *Shannon* is wholly distinguishable from the present case.  In *Shannon*, the court dismissed the claims because the assignment was premised on the purchase of a claim against the Government, and exposed the United States to the potential of multiple litigations, the precise evils the Act is intended to prevent.  *Id.* at 293-94.  The respondents purchased a tract of land from a seller that had been leased to, and allegedly damaged by, the United States.  *Id.* at 290-91.  At closing, the sellers released "'any claim, reparation or other cause of action against the United States Government for any damage caused the property.'"  *Id.* at 290.  One of the respondents testified that he was aware that he was "'*buying a claim against the Governmen*t.'"  *Id.* at 292 (emphasis added).  Further, the record reflected that the sellers did not have any knowledge of property damage and would not prosecute or assist in a claim against the Government.  *Id.* at 290.  The Court held that the assignment was invalid because the matter presented "the very evils which Congress intended to prevent," namely the purchase of a claim against the United States in order to commence an action against it brought by "persons who were strangers to the damage and are seeking to enforce a claim which their assignors have forsworn," and citing the risk of multiplying litigation.  *Id.* at 293 (citations omitted).  By contrast, here, no claim was purchased and the assignments permitted Quanta and Exxon to assert claims against any responsible party, not just against the Federal Defendants or any other governmental department.

*Cal.-Am. Water Co. v. U.S. Dep't of Air Force*, No. CIV S-052295, 2006 WL 1686139 (E.D. Cal. Jun. 16, 2006), relied upon by the Federal Defendants, is similarly distinguishable.  In that matter, plaintiffs brought suit against the Government for costs arising out of its contamination of drinking water from a well that plaintiff had purchased from a third party, CUCC, in 2002.  At the time the complaint was filed, counsel for the United States told counsel for the plaintiff that CUCC had already asserted a claim against the United States in 2000 for the very same damages.  *Id.* at *2 n.3.  In an effort to maintain his duplicate claim, the plaintiff amended his complaint and omitted all references to the assignment.  The court dismissed the claims because, as in *Shannon*, the claims asserted by the plaintiff exposed the Government to successive litigations with multiple parties on the same claim.  *See id.* at *6-8.  While the Federal Defendants are correct that the *Shannon* and *California American* courts dismissed the assigned claims for failure to comply with the Act, they ignore the undeniable facts that the assignments in those matters contravened the primary objectives of the Act.  The assignment in this matter does not.

The Federal Defendants' argument that the assignments at issue are not exempt from the Act because they were "voluntary" is also unavailing.  The Supreme Court has stated that voluntary assignments may be exempted from the Act as well: "[t]hat an assignment is voluntary is not an end to the matter . . . ."  *Shannon*, 342 U.S. at 292.  The Second Circuit agrees, stating that "some transfers are valid under the Anti-Assignment Act even though they are intentional and volitional . . . ." *St. John Marine Co.*, 92 F.3d at 48; *see also Keydata*, 504 F.2d at 1119 ("It is said that the exception should be applied only where the assignment is involuntary . . . . The case law does not bear out [this] distinction.").  The assignments between the Settling Defendants and the Third-Party Plaintiffs, although voluntary, hold no chance of implicating the

risks that Congress intended the Act to protect against.  Because the assignments will not harm the Federal Defendants, and will actually benefit them through consolidation of a group of claims, the assignments should be upheld.

The Federal Defendants make no mention of the Act's exceptions which apply here, but instead rely upon cases that do little more than set forth the black letter law of the Act.  They ignore the readily apparent, critical distinctions in each of the cases that are fatal to their motion, namely that the assignments there involved arise out of contract (as contemplated by the Act and the FAR) and pose the very risks that the Act is designed to protect against, even though the same risks and circumstances are not present here.

For example, the Federal Defendants rely on *Pan Arctic Corp. v. U.S.*, 8 Cl. Ct. 546 (Cl. Ct. 1985) for the blanket proposition that an assignment of a claim in the context of a settlement agreement is subject to the Act.  Wholly unlike this matter, however, *Pan Arctic* involved a subcontractor's effort to enforce a contract for the payment of goods and services against the Government.  The court there held that the subcontractor could not bring a direct suit against the Government because there was no privity of contract between the subcontractor and the United States and that the subcontractor could not assert the claims pursuant to an assignment without complying with the Act because it was not a qualifying financial institution.  *Id.* at 547-48. Although both this matter and *Pan Arctic* involve the assignment of a claim arising out of a settlement agreement, the similarities, insofar as the Act is concerned, end there.  The assignment in *Pan Arctic,* unlike the assignment here, is precisely the type of assignment addressed by the Act and the FAR.  The FAR expressly prescribes the method of assigning a contract claim and is wholly silent as to assigning a CERCLA claim.  Moreover, absent compliance with the Act in

9

*Pan Arctic*, the Government could have been subject to multiple claims for payment by both the subcontractor and the contractor, a risk that is simply not present in this matter.

Similarly, the Federal Defendants' reliance upon *Cadwalder v. U.S.*, 45 F.3d 297, 299-302 (9th Cir. 1995), *Diamond v. FEMA*, 689 F. Supp. 163, 167 (E.D.N.Y. 1988), *Garden Dist. Condos., L.L.C. v. Fid. Nat'l Ins. Co.*, No. Civ. A. 07-6398, 2009 WL 140523, at *1 (E.D. La. Jan. 20, 2009) and *Westinghouse Elec. Co. v. U.S.*, 56 Fed. Cl. 564, 568-70 (Fed. Cl. 2003), *aff'd*, 97 Fed. App'x 931 (Fed. Cir. 2004) is misplaced.  In each of these cases, as in *Shannon*, the assigning party was assigning claims that could be brought only against the Government.  Such an assignment implicates all of the evils the Act is designed to prevent.  In contrast, here the assigned CERCLA claims lie against any party that did not participate in the settlement with DMJ.

## II.   The Express Terms of the Act Combined with the Procedure for Implementing the Act Demonstrate That It is Designed to Apply to the Assignment of Contracts for Goods and Services

The entirety of the Federal Defendants' motion is premised on the Third-Party Plaintiffs' alleged failure to comply with the express terms of the Act.  The technical provisions of the Act provide that an assignment of claims may be made only where 1) the amount of the claim is allowed and decided; and 2) a warrant for payment of the claim has been issued.  31 U.S.C. § 3727.  The assignment itself must specify the warrant, be freely made and be attested to by two witnesses.  *Id.*  The Act further provides that the "person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment.  The certificate shall state that the official completely explained the assignment when it was acknowledged." *Id.*

The Federal Defendants assert, "By its terms, for an assignment of a claim against the United States to be valid, these requirements must be met before the assignment is made"

10

(Memorandum of Law at 8-9).  They argue that the claims assigned by the Settling Defendants to the Third-Party Plaintiffs should be denied because the Third-Party Plaintiffs and the Settling Defendants did not have their claims allowed and issued via a warrant.  Further, the Federal Defendants argue that the Settling Defendants did not bring their assignment before a government official to examine, explain and certify the assignment.  Notably absent from their moving papers is any reference as to how they contend the Third-Party Plaintiffs could comply with the express terms of the Act to have their claim allowed and decided, or have a warrant issued and witnessed.  The Federal Defendants cannot address or cite to any precedent on the issue because the facts of this matter clearly fall outside the ambit of the Act.

Thus, although they base their motion upon the Settling Defendants' and the Third-Party Plaintiffs' purported failure to comply with the Act, the Federal Defendants nowhere explain how the Settling Defendants and the Third-Party Plaintiffs could possibly comply with its requirements, which are plainly designed to address the assignment of contractual claims, not claims arising under CERCLA.  This absence of explanation and precedent is particularly important here, where the Federal Defendants seek to use the Act as a shield to limit their liability for the environmental clean-up claims asserted against them, an outcome that directly contravenes the intended purpose of CERCLA § 113, which gives parties that performed remediation the right to contribution.  By enacting CERCLA, Congress created "a regime of broad-ranging liability . . . authorizing private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats." *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 326 (2d Cir. 2000) (citations omitted).  Congress explicitly gave property owners "an avenue of reprieve" through the enactment of CERCLA Section 113(f), which allows the defendant to pursue potentially

responsible parties.  *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc*., 596 F.3d 112, 120

(2d Cir. 2010).  Courts have stated that as a potentially responsible party, the government is no

different than any other entity.  *See U.S. v. Kramer*, 757 F. Supp. 397, 414 (D.N.J. 1991).  "Thus,

a Section 113 proceeding for contribution would be the appropriate forum to consider the

government's liability for response costs."  *City of New York v. Exxon Corp.*, 766 F. Supp. 177,

198 (S.D.N.Y. 1991) (citing *Kramer*, 757 F. Supp. at 415).  The strict application of 31 U.S.C. §

3727(b) to CERCLA claims would not allow a party to have a contribution claim approved for

assignment because it would be impossible to comply strictly with all requirements.  Denying the

CERCLA contribution claims against the government on the basis of the Act would run afoul of

the explicit purpose of CERCLA.

Similarly, a review of the relevant sections of the FAR demonstrates that the Act

contemplates the assignment of rights to collect money due pursuant to a contract between the

United States and a party providing goods or services.  For example, "Claim" is defined as "a

written demand or written assertion by one of the *contracting parties* seeking, as a matter of law,

the payment of money in sum certain, the adjustment or interpretation of contract terms, or other

*relief arising under or relating to the contract*."[2]  FAR 2.101(b) (emphasis added).  "Assignment

of Claims" is defined as "the transfer or making over *by the contractor* to a bank, trust company,

or other financing institution, as security for a loan *to the contractor*, of its right to be paid by the

Government for *contract performance*."  FAR 2.101(b) (emphasis added).

---

[2] FAR 2.101(b) further provides "[h]owever, a written demand or written assertion by the contractor
seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of
1978 until certified as required by the Act. A voucher, invoice, or other routine request for payment that is
not in dispute when submitted is not a claim. The submission may be converted to a claim, by written
notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or
is not acted upon in a reasonable time."

Moreover, the series of required steps is codified by § 32.802 of the FAR, which provides that:

> Under the Assignment of Claims Act, a contractor may assign moneys due or to become due under a contract if all the following conditions are met:
>
> (a) The contract specifies payments aggregating $1,000 or more.
>
> (b) The assignment is made to a bank, trust company, or other financing institution, including any Federal lending agency.
>
> (c) The contract does not prohibit the assignment.
>
> (d) Unless otherwise expressly permitted in the contract, the assignment—
>
>> (1) Covers all unpaid amounts payable under the contract;
>>
>> (2) Is made only to one party, except that any assignment may be made to one party as agent or trustee for two or more parties participating in the financing of the contract; and
>>
>> (3) Is not subject to further assignment.
>
> (e) The assignee sends a written notice of assignment together with a true copy of the assignment instrument to the—
>
>> (1) Contracting officer or the agency head;
>>
>> (2) Surety on any bond applicable to the contract; and
>>
>> (3) Disbursing officer designated in the contract to make payment.

Notwithstanding the obvious inapplicability of these statutory and regulatory requirements to the assignment of a CERCLA claim, the Federal Defendants maintain that failing to comply strictly with these requirements requires the dismissal of the assigned claims.

Plainly, the definitions underlying the Act contemplate assignments premised upon a contract for goods and services. The FAR does not prescribe a mechanism for the assignment of rights to pursue claims arising out of an environmental remediation or any other claim that does

13

not arise out of contract.  The Federal Defendants' effort to deem the above criteria – which are premised on the existence of a contract for goods and services – applicable to this matter is insupportable.

### III.   The Federal Defendants Consented to the Assignment

Not only do the Federal Defendants ignore the intent of the Act, they also ignore the well-settled law that an assignment will be deemed valid, even absent absolute compliance with the Act, where the Government consents to the assignment.  *Delmarva Power & Light Co. v. U.S.*, 79 Fed. Cl. 205, 216 (Fed. Cl. 2007) (the Government expressly accepted assignment of a claim even though it did not comport with the express terms of the Act).  "Because the general prohibition on assignment of contracts and claims is intended for the protection of the Government, courts also have held that the Government may, by word or deed, recognize and accept an assignment, even where such an assignment otherwise did not comply with" the Act. *Id.* at 215 (citations omitted).  An assignment will be upheld where the Government is "aware of, assented to and recognized an assignment." *Tuftco Corp. v. U.S.*, 614 F.2d 740, 745-46 (Ct. Cl. 1980).  There is no one particular act that constitutes recognition of an assignment; rather, consent will be determined based on the totality of circumstances.  *Id.* (on-going communications with assignee, payments to assignee and knowledge of assignment supported conclusion that the Government was aware of, assented to and recognized the assignments); *see also Am. Nat'l Ins. Co. v. Gilroy, Sims & Assocs. Ltd.*, 874 F. Supp. 971, 976 (E.D. Mo. 1995) (declining to address argument that assignment is void under the Act because of United States' interpleader in action).

The Federal Defendants failed to challenge the assignments based upon the Act in a timely manner.  In their answers to the complaints (Docket Entries 946 and 1181, Reiter Dec. Exhibits 2 and 3), motion to dismiss for lack of subject matter jurisdiction in December 2007

14

(Docket Entries 1177 and 1178, Reiter Dec. Exhibit 7), and initial response to Third-Party

Plaintiffs' First Set of Interrogatories in August 2007 (Reiter Dec. Exhibit 6), the Federal

Defendants never mention the Assignment of Claims Act, nor do they otherwise assert the

argument that the assignments should be considered null and void against them.  While the

Federal Defendants generally assert that the assignment is invalid, that assertion is different from

asserting that the assignment is void under the Assignment of Claims Act.  Whereas the former

involves an analysis of the assignment itself and whether the assignment between the Settling

Defendants and the Third-Party Plaintiffs was valid, the latter involves determining whether the

assignment is null and void as applied to the Federal Defendants.  In the present motion, the

Federal Defendants are only arguing the latter: that the assignments are void as applied to them;

they explicitly admit that in the present motion, they are not inquiring into whether the

assignments themselves are valid but rather only in its application to them:  "the Federal TPDs

do not address herein . . . the scope and nature of the purported assignments themselves . . ."

(Memorandum of Law at 13).  However, it is the former analysis – whether an assignment in

itself is valid or not – that the Federal Defendants addressed throughout their answers, motion

and response (Reiter Dec. Exhibits 2, 3, 6 and 7).

     The Federal Defendants raised the issue of the Act for the first time only in a single

sentence of a supplemental interrogatory response in 2009, yet failed to amend their answer and

counterclaim to include it as an affirmative defense.  Between their first answer in 2006 and

raising this issue before the Court, the Federal Defendants have sought affirmative relief in a

counterclaim, actively participated in years of paper discovery, extensive motion practice, and

have fully participated in numerous court conferences and proceedings.  Only now, more than

seven years after their initial pleading, do the Federal Defendants argue that the assignments are

null and void against them.  The totality of the circumstances supports the conclusion that the

Federal Defendants were aware of, recognized and assented to the assignment.  *See Tuftco*, 614

F.2d at 745-46; *Am. Nat'l Ins. Co.*, 874 F. Supp. at 976.

In an effort to avoid the consequences of their acquiescence to the assignments they now

challenge, the Federal Defendants assert that they may not be able to avail themselves of party

discovery or counterclaims against the Settling Defendants.  This assertion should be brushed

aside.  The Federal Defendants' ability or inability to conduct party or non-party discovery (and

assert cross claims, fourth-party claims or counterclaims) is the same regardless of the Act.  The

Government is not able to avail itself of one set of discovery rules when an assignment is made

under the Act and another set of rules when the assignment is on consent.

Further, the Federal Defendants' reservation of rights "to challenge, the scope and nature

of the purported assignments themselves, including, but not limited to, whether the purported

assignments are invalid for reasons other than their nullity under the [Act]," (Memorandum of

Law at 13) is also meritless.  Aside from being inappropriately raised in this motion, the Federal

Defendants' purported reservation contravenes Rule 17 of the Federal Rules.  An objection as to

standing raised under Rule 17 must be timely raised or it is deemed waived, so as to avoid

prejudice to the plaintiff.  *Audio-Visual Mktg. Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir.

1976).  The defense will be deemed waived where raised several years after the commencement

of the action.  *Banking & Trading Corp. v. Reconstr. Finance Corp.*, 15 F.R.D. 360, 361

(S.D.N.Y. 1954) (defense deemed waived when raised three years after commencement of the

action).  The Federal Defendants have had more than seven years to "investigate the validity of

the purported assignments" and apparently still have not done so.  They should not be rewarded

for their lengthy and unexcused delay.

**IV.    Assuming the Act Applies and the Federal Defendants Have Not Consented to the Assignment, the Federal Defendants Can Still Consent to the Assignment**

There is no reason why the Federal Defendants cannot now consent to the assignment, and they should do so because, as set forth above, the assignment does not involve either of the two evils that the Act was designed to protect against.  *See Delmarva Power & Light Co.*, 79 Fed. Cl. at 215 (government withdrew objections to the validity of assignments because it deemed the assignment valid as between the assignee and the assignor) (citing *United Pac. Ins. Co. v. U.S.*, 358 F.2d 966, 970 (Ct. Cl. 1966)).  The Federal Defendants cannot offer a reason for any refusal to consent.

Further, even if the assignment is deemed void and the Federal Defendants refuse to consent, the Third-Party Plaintiffs and the Settling Defendants should be given an opportunity to cure any purported defect.  Rule 17(a)(3) is instructive on this issue.  It provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3); *see also Lambrinos v. Exxon Mobil Corp.*, 349 Fed. App'x 613, 614 (2d Cir. 2009) ("the preferable course is to cure any Rule 17 defects by granting leave to amend, rather than to dismiss the affected claims") (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)); *Motta v. Res. Shipping & Enters. Co.*, 499 F. Supp. 1365, 1371 (S.D.N.Y. 1980) (holding that a letter ratifying the commencement and continuation of the action was sufficient to cure any real party in interest defect in the suit where the executing party agreed to be bound by the judgment) (citations omitted).  At worst, the Settling Defendants should be permitted to join in the action with the benefit of the relation-back doctrine.

17

**CONCLUSION**

Both the terms of the Act and the FAR make clear that the Act is designed to be used in matters involving contracts between the United States and private parties for the payment of goods and services.  This matter does not involve such a contract.  Further, the Act has historically been relaxed and held inapplicable where, as here, there is no risk of fraud or multiple litigations.  Neither such risk is present here.  Moreover, the Federal Defendants have consented to the assignment by their own deeds, and they should now formalize such consent or an opportunity to cure should be granted.

Dated:     New York, New York
           September 18, 2013

ARENT FOX LLP

By:  /s/ Allen G. Reiter
        Allen G. Reiter
        Jennifer L. Bougher
1675 Broadway
New York, New York  10019
Phone:  212-484-3900
Fax:  212-484-3990
Email: allen.reiter@arentfox.com
        jennifer.bougher@arentfox.com
*Attorneys for Third-Party Plaintiff Quanta
Resources Corporation*
McCUSKER, ANSELMI, ROSEN &
CARVELLI, P.C.

By:  /s/ Andrew E. Anselmi
        Andrew E. Anselmi
        Maura W. Sommer
210 Park Avenue
Suite 301
Florham Park, New Jersey  07932
Phone:  973-635-6300
Fax:  973-635-6363
Email: aanselmi@marc-law.com
        msommer@marc-law.com
*Attorneys for Third-Party Plaintiff Exxon
Mobil Corporation*

18