UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DMJ ASSOCIATES, L.L.C.,

        Plaintiff,

- vs.-

CARL A. CAPASSO, et al.,

        Defendants.

CV-97-7285
(Irizarry, J.)
(Levy, M.J.)
**ORAL ARGUMENT REQUESTED**
Date of Service:  October 15, 2013

------------------------------------------------------------X

EXXON MOBIL CORPORATION and
QUANTA RESOURCES COPORATION,

        Defendants/
        Third-Party Plaintiffs,

- vs. –

ACE WASTE OIL, INC., et al.,

        Third-Party Defendants.

------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
FEDERAL TPDs' MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P 12(B)(1),
THE PURPORTEDLY-ASSIGNED CLAIMS SET FORTH IN THE
THIRD AMENDED THIRD-PARTY COMPLAINT**

LORETTA E. LYNCH
United States Attorney for the
  Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
(718) 254-6014
*Attorneys for the Federal Third-Party Defendants*

Of Counsel:
SANDRA L. LEVY
Assistant United States Attorney

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ......................................................................................................................1

    I.  THE ASSIGNMENT OF CLAIMS ACT BARS THE PURPORTEDLY-ASSIGNED CLAIMS AGAINST THE FEDERAL THIRD-PARTY DEFENDANTS. .............1

        A.  The Act Applies to the Purported Assignments in this Case. ............................1

        B.  The Purportedly-Assigned Claims Are Not Excepted From the Act. ................3

        D.  The Purported Assignments Were Voluntary Transfers that are Subject to the Act. ..................................................................................................4

        E.  The Purported Assignments are Null and Void as Against the United States....5

    II.  THE FEDERAL TPDs DID NOT WAIVE THE PROTECTION OF THE ACT.........7

        A.  The Federal TPDs Did Not Waive their Assignment of Claims Act Defense...7

        B.  The Federal TPDs Did Not Waive the Protections of the Act. .........................7

        C.  The Federal TPDs Cannot be Ordered to Accept the Purportedly-Assigned Claims. ...............................................................................................8

    III.  TPPs' REQUEST TO AMEND SHOULD BE DENIED. ...........................................9

CONCLUSION.................................................................................................................11

**PRELIMINARY STATEMENT**

The Federal TPDs[1] write respectfully in further support of their motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), part of the claims that TPPs have asserted against the Federal TPDs in the Third Amended Third-Party Complaint for lack of subject matter jurisdiction. The TPPs' opposition reflects a fundamental misunderstanding of the nature and scope of the prohibition against assignments of claims against the United States pursuant to the Assignment of Claims Act, 31 U.S.C. § 3727 (the "Act"). As demonstrated in the opening brief and herein, the Act applies to bar the non-party Settling Defendants' purported assignment of CERCLA contribution claims to the TPPs. Further, the Federal TPDs did not waive the Act's protection from voluntary assignments of claims. Finally, it would be inappropriate for the Court to entertain a request by TPPs to amend the complaint without the benefit of a motion to join by the SDs -- not the TPPs -- and a full briefing of the issues.

**ARGUMENT**

**I. THE ASSIGNMENT OF CLAIMS ACT BARS THE PURPORTEDLY-ASSIGNED CLAIMS AGAINST THE FEDERAL THIRD-PARTY DEFENDANTS.**
   **A. The Act Applies to the Purported Assignments in this Case.**

TPPs' opposition is based on the fundamentally flawed premise that the Assignment of Claims Act, 31 U.S.C. § 3727, is applicable only to "the assignment of rights to collect money due pursuant to a contract between the United States and a party providing goods and services." See Opp. at 12. As the Supreme Court has recognized, with limited exceptions, the Act is "broad" and "all-inclusive." See U.S. v. Shannon, 342 U.S. 288, 292, 293 (1952). In fact, in Shannon, the Supreme Court applied the Act to hold that a voluntary assignment of a claim

---

[1] The Federal TPDs use the same defined terms in this reply memorandum as in their opening brief.

1

under the Federal Tort Claims Act – i.e., a claim that had nothing to do with a contract with the United States -- was barred by the Act. See 342 U.S. 288; see also cases cited in Federal TPDs' Opening Brief at pp. 9-11, applying the Act to bar non-contract claims. This alone is enough to refute TPPs' contention.

Moreover, TPPs' reliance on the Federal Acquisition Regulations ("FAR") in support of their contention that the Act applies only to claims arising out of government contracts, Opp. at 1, 4, 9, 12-14, is misplaced. As a threshold matter, the FAR applies only to federal acquisition and has no other purpose or authority. See 48 C.F.R. § 1.101 (FAR "is established for the codification and publication of uniform policies and procedures for acquisition by all executive agencies").[2]

Following from this point, the FAR section on which TPPs rely, 48 C.F.R. §§ 32.800-32.806, Opp. at 1, 13, is not applicable to all claims against the United States to which the Act applies. Rather, the section of the FAR on which TPPs rely is applicable only to a subset of claims against the United States concerning financing of government contracts. Specifically, by its terms, the section of the FAR on which TPPs rely, Opp. at 13, directly tracks a subsection of the Act that provides that the Act does not apply to an assignment to a financing institution of money due or to become due under a contract with United States if certain conditions are met. Compare 48 C.F.R. § 32.802 with 31 U.S.C. § 3727(c). This subsection of the FAR says nothing at all about the assignment of any type of claim other than a claim for "moneys due or to become due under a contract." For these reasons, TPPs' contention that the Act applies only to claims arising

---

[2] "Acquisition means the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, and evaluated." 48 C.F.R. § 2.101(b).

out of government contracts, and not to the purportedly-assigned CERCLA contribution claims herein, is wrong.

### B. The Purportedly-Assigned Claims Are Not Excepted From the Act.

TPPs' efforts to establish that the purportedly-assigned claims are excepted from the Act, Opp. at 4-10, are similarly misguided. As set forth in the Federal TPDs' opening brief, the Supreme Court and its progeny have recognized limited exceptions to the Act for certain categories of assignments that occurred by operation of law, or in situations closely analogous to assignments by operation of law, "as distinguished from voluntary assignments." See Shannon, 342 U.S. at 292; Opening Brief at 11-12.

TPPs do not claim herein that the purported assignments in this case occurred by operation of law or circumstances analogous thereto. They nevertheless contend, without citing to any authority whatsoever, that the purported assignments in this case are excepted from the Act on the sole ground that, according to TPPs, the purported assignments do not implicate the purposes of the Act. See Opp. at 4-10.

The purported assignments in this case do, in fact, implicate certain purposes of the Act because the absence of the SDs as third-party plaintiffs deprives the Federal TPDs of the right to defend themselves directly against the SDs' individual contribution claims, and the Federal TPDs may have to investigate the validity of the purported assignments. See Opening Brief at pp. 12-13, and Section I(E) at pg. 6, below. The Court need not reach that issue, however, because there is no viable authority to support TPPs' contention that an assignment that does not implicate the purposes of the Act is alone enough to except the assignment from the application of the Act. Indeed, in every one of the cases that TPPs cite, Opp. at 5-6, the reason that the assignments were excepted from the Act was because they had occurred by operation of law or

3

in circumstances analogous thereto. Even though the decisions also discussed the purposes of the Act, none of the cases based their holding on this ground alone. To do so here would be an impermissible expansion of the limited "operation of law" exceptions to the Act.

**D. The Purported Assignments Were Voluntary Transfers that are Subject to the Act.**

Here, the purported assignments did not occur by operation of law or in circumstances analogous thereto. Rather, they were "voluntary transfers" of a similar type to those that have been recognized by the Supreme Court and its progeny as barred by the Act. See Shannon; see also cases cited in Federal TPDs' Opening Brief at 9-11.

All of the cases that the Federal TPDs cited in their opening brief and herein stand for the proposition that if the assignment of the claim was voluntary – like here, in the context of a settlement agreement – then the Act is applicable. TPPs have offered absolutely no valid reason to distinguish the cases that bar voluntary transfers of claims against the United States from the purported voluntary transfer herein. See Opp. at 9-10.

For example, TPPs cite no authority – and there is none -- for their contention, id. at 10, that the Act does not apply if the assignor has claims against both private parties and the United States. Regardless of whether an assignment was legally valid as against a private party, the Act provides protections to the United States from voluntary assignments of claims where it has not consented to or recognized the assignment. See Delmarva Power & Light Co. v. U.S., 29 Fed. Cl. 205, 216 (Fed. Cl. 2007), aff'd, 542 F.3d 889 (Fed. Cir. 2008). There is no basis for stripping the United States of the protection of the Act simply because a plaintiff may also have claims against a private party in the same matter. Indeed, there are various circumstances where the United States and a private party are co-defendants, and specific laws apply solely to the claims against the United States. One example occurred in this very case, where the Federal TPDs

4

moved to dismiss the state law claims against them on the basis of the Federal Tort Claims Act, which provides specific protections as to the claims against the United States. See Docket Nos. 1177 and 1178.

Contrary to TPPs' contention, Opp. at 9-10, the fact that one of the cases cited by the Federal TPDs related to a transfer of a claim that related to a government contract is not relevant either. Rather, Pan Arctic v. U.S., 8 Cl. Ct. 546 (1985), illustrates the point that if, like here, an assignment of a claim against the United States is voluntary and not an assignment by operation of law or analogous thereto, and the requirements of the Act are not met, then the assignment is barred by the Act.

**E. The Purported Assignments are Null and Void as Against the United States.**

TPPs also misunderstand the fundamental point that if the requirements of the Act cannot be met for a particular claim, then the transfer of the claim is "'absolutely null and void' . . . against the United States." See Segal v. Rochelle, 382 U.S. 375, 382 (1966)(citation omitted). Indeed, by its terms, the requirements of the Act must be met before an assignment of a claim against the United States may be made. See 31 U.S.C. § 3727(b) (assignment may be made "*only after*" the requirements of the statute are satisfied).

The requirements of the Act were not met in this case where, among other things, the CERCLA contribution claim has not been allowed, the amount of the claim is undecided, and no warrant for payment of the claim has been issued. See 31 U.S.C. § 3727(b). Here, the amounts of the purportedly-assigned contribution claims against the United States were not ascertainable at the time of the settlement agreement between the TPPs and the SDs. Rather, the amounts, if any, due to the purported assignors were dependent on the litigation to be brought against the

5

United States. As such, the Act's requirement that the amount of the claim be determined could not be met for the purportedly-assigned claims.

In fact, TPPs do not dispute that the requirements of the Act were not met here, in conceding that "[t]he strict application of [the Act] to CERCLA claims would not allow a party to have a contribution claim approved for assignment because it would be impossible to comply strictly with all requirements." Opp. at 12. This is precisely correct – because the requirements could not be met, the Act barred the voluntary assignment of the SDs' potential CERCLA contribution claims as against the United States.

TPPs mistakenly go on to claim, however, that to prohibit assignment of CERCLA contribution claims in this circumstance would "run afoul of the explicit purpose of CERCLA." See Opp. at 12. Application of Act to bar the purported assignments at issue here would not, as TPPs suggest, id., prohibit CERCLA contribution claims against the United States. Rather, all that it would mean is that a party with a potential contribution claim against the United States would be prohibited from assigning that claim to others and, instead, would have to assert the claim in its own right. Far from prohibiting a contribution claim against the United States, barring the purported assignments in this case merely fulfills one of the purposes of the Act in assuring that the United States is able to defend itself directly and individually against contribution claims asserted in a CERCLA action. See Shannon, 342 U.S. at 291-92. In this case, for example, this would permit the United States to defend itself against each SD's claim that it had paid more than its particularized fair share of the alleged response costs, instead of attempting to defend itself against an assertion by the TPPs that the TPPs, together with the SDs, have collectively paid more than their fair share of response costs. For these reasons, the SDs'

6

purported assignments of CERCLA contribution claims against the United States are null and void under the Act.

## II. THE FEDERAL TPDs DID NOT WAIVE THE PROTECTION OF THE ACT.
### A. The Federal TPDs Did Not Waive their Assignment of Claims Act Defense.

TPPs claim that the Federal TPDs have waived their Assignment of Claims Act defense. Opp. at 14. As a threshold matter, a jurisdictional defense under Federal Rule of Civil Procedure 12(b)(1) is never waived. See Fed. R. Civ. P. 12(h)(3). Even if the defense could be waived, however, the Federal TPDs asserted, in their very first pleading in the action, among other things, a defense in which they stated that "[TPPs'] claims are barred to the extent that the [SDs] in the underlying complaint did not validly assign their claims to [TPPs]." See Docket No. 946, Twentieth Defense. TPPs suggest, without citing to any authority whatsoever, that the Federal TPDs were somehow required to specifically cite to the Act in this defense. Opp. at 15-16. The Federal TPDs' Answer complied with the requirement of the Federal Rules of Civil Procedure that they "state in short and plain terms its defenses to each claim asserted against [them]." See Fed. R. Civ. P. 8(b)(1)(A). TPPs have cited to no requirement – because there is none -- that they plead the defense with greater specificity than the Federal TPDs' Answer.[3]  For these reasons, the Federal TPDs did not waive their Assignment of Claims Act defense.

### B. The Federal TPDs Did Not Waive the Protections of the Act.

TPPs contend that the Federal TPDs waived the protection of the Act. Opp. at 14-16. To determine whether the United States has waived the protection of the Act, courts have examined whether "the totality of the circumstances presented to the court establish[] the Government's

---

[3] TPPs' efforts to distinguish between challenging the validity of the purported assignments and asserting that they are null and void, Opp. at 15, are without any basis in law or fact. Indeed, among other things, "invalid," "null" and "void" are synonyms. See *American Heritage Dictionary* ("invalid" is "null, legally ineffective," "null" is "invalid, having no legal force," and "void" is "having no legal force or validity, null.").

7

recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments." See Tuftco Corp. v. U.S., 614 F.2d 740, 746 (Ct. Cl. 1980).

TPPs argue that the Federal TPDs waived the protection of the Act by virtue of the participation of the United States Attorney's Office in the instant litigation. Opp. at 15-16. As one court held in response to a similar allegation in a case arising under the Act, TPPs "ha[ve] not cited a single case where the actions of the United States attorney . . . were deemed to waive any of its defenses, much less one which, in effect, waives sovereign immunity." See MMR Corp. v. U.S., No. Civ. 98-357, 2000 WL 1819443, at *5 (M.D. La. Oct. 27, 2000).

TPPs have not asserted any valid evidence – because there is none – that the United States knew of the purported assignments prior to being served with the third-party complaint, or that it assented to the purported assignments, or took "action[s] consistent with [them]" at any time. For these reasons, there is no basis whatsoever for concluding that the Federal TPDs waived the protection of the Act.

**C. The Federal TPDs Cannot be Ordered to Accept the Purportedly-Assigned Claims.**

The TPPs further argue that the Court should require the Federal TPDs to accept the purportedly-assigned claims. See Opp. at 17. In a misguided effort to support this contention, the TPPs cite to Delmarva, 542 F.3d at 889, where the court noted that the United States *may choose* to accept purportedly-assigned claims.

In Delmarva, the trial court directed the Government to state whether it had waived its rights under the Act, and the Government responded by indicating that it was exercising its sole discretion to accept the assignments of the claims at issue. Id. at 891. The court thus held that "if . . . the government concludes that it is appropriate and in its best interest to accept the assignment of a claim, it may do so." Id. at 894. Here, the United States has not exercised its

8

discretion to waive its rights under the Act in this case. As it is a solely discretionary act, the Court cannot order the Federal TPDs to accept the purportedly-assigned claims.

### III.  TPPs' REQUEST TO AMEND SHOULD BE DENIED.

TPPs contend that if the Court determines that the purported assignments as against the Federal TPDs are void, the SDs "should be permitted to join the action with the benefit of the relation-back doctrine." See Opp. at 17. As a threshold matter, a motion, with full briefing of the issues, must be made to obtain this relief, and the request should be denied for this reason.

In any event, among other things, in the event of a motion under Rule 17(a), the proper procedure is for the SDs, as the purported real parties in interest, to move the Court to join the action. See Fed. R. Civ. P. 17(a)(3)(reasonable time to be allowed after objection for the "real party in interest" to seek to join the action). The SDs have not, however, moved to join the action to date, and the TPPs do not represent them in this action.

Moreover, joinder is not automatic under Rule 17(a). Rather, the Court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party." See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997). This is not a situation like Advanced Magnetics, where "a purported assignment of action was rendered ineffective by a technical defect in the assignment agreement," Stichting, et al. v. Schreiber, et al., 407 F.3d 34, 49 (2d Cir. 2005), and where, as such, "the Second Circuit specifically applied the 'honest mistake' test and found that one had indeed occurred." Metal Forming Technol., Inc. v. Marsh & McLennan Co., 224 F.R.D. 431, 436 (S.D. Ind. 2004) ("Metal"); see Levy v. U.S. Gen. Acctg. Office, 175 F.3d 254 (2d Cir.) (affirming district court's application of mistake requirement to addition of a plaintiff), cert. denied, 528 U.S. 876 (1999). Here, the decision to rely on the settlement agreement's assignment provision in not naming the SDs as third-party plaintiffs "does not support an honest

mistake. Instead, . . . [the] decision to sue in [TPPs'] names was a strategic and tactical decision in contravention of Rule 17(a)." See Metal, 224 F.R.D. at 437. [4]

Nor would ignorance of the Act constitute an honest mistake. To so hold "would reward those who are ignorant of a statute which has been on the books for [more than] a century. The all-inclusive language of the [Assignment of Claims] Act permits no such easy escape from its prohibition." Shannon, 342 U.S. at 293.[5]

Further, among other things, the Court should determine whether any new claims against the Federal TPDs by the SDs should relate back under Rule 15(c)(1) only after a full briefing as well. This issue is especially relevant where, here, a contribution claim against the Federal TPDs would be time-barred as it is more than three years after the 2005 Stipulation of Dismissal. See 42 U.S.C. § 9613(g)(3). Such briefing would show that the purportedly-assigned claims should not relate back due to, among other things, the absence of an honest mistake in failing to join the SDs as third-party plaintiffs, and the prejudice to the Federal TPDs in losing a statute of limitations defense. See, e.g., Lee, 765 F. Supp. 2d at 454-456; Asher v. Unarco, 596 F.3d 313, 317-20 (6th Cir. 2010).

For these reasons among others that the Federal TPDs would set forth in the event of a motion to join the SDs as third-party plaintiffs, the Court should find that "justice would not be served if TPPs were rewarded for their failures [and] oversights . . . by permitting an amendment of their pleadings." See Automated Info. Processing, Inc. v. Genesys Solns. Grp, Inc., 164 F.R.D. 1, 3-4 (E.D.N.Y. 1995).

---

[4] See Lee v. Marvel Enter., Inc., 765 F. Supp. 2d 440, 454-55 (S.D.N.Y. 2011) (court noted disagreement among courts as to whether failure originally to name newly added plaintiff required showing of mistake), aff'd on other grounds, 471 Fed. Appx. 14 (2d Cir. 2012).

[5] Nor could any unwilling SDs be joined as defendants or involuntary plaintiffs because "the [Assignment of Claims] Act cannot be by-passed by the use of any such procedural contrivance." See Shannon, 342 U.S. at 294; cf. Stichting, 407 F.3d at 49 (same under Rule 17(a)).

10

**CONCLUSION**

For the reasons stated in the Federal TPDs' opening brief and herein, the Federal TPDs respectfully request that the Court dismiss the part of TPPs' claim against the Federal TPDs that represents the response costs that the SDs allegedly incurred, payments that the SDs allegedly made to DMJ, and/or the SDs' alleged costs of fulfilling their commitment to DMJ to remediate the Quanta Facility and the Capasso Property, and enter judgment accordingly.

Dated: Brooklyn, New York
      October 15, 2013

LORETTA E. LYNCH
United States Attorney for the
  Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

SANDRA L. LEVY
Assistant United States Attorney
  (Of Counsel)