# Arent Fox

Arent Fox LLP / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

October 29, 2013

**Allen G. Reiter**
Partner
212.484.3915 DIRECT
212.484.3990 FAX
allen.reiter@arentfox.com

VIA ECF
Honorable Robert M. Levy
United States Magistrate Judge
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *DMJ v. Capasso*, CV 97 7285 (DLI) (RML)

Dear Judge Levy:

In accordance with Your Honor's directive at the October 2, 2013 Case Management Conference, Third-Party Plaintiffs Quanta Resources Corp. and Exxon Mobil Corporation (the "TPPs") respectfully submit this letter brief in opposition to the October 15, 2013 letter [Docket Entry 1462] filed by certain Third-Party Defendants (the "TPDs"). The bifurcation established by the Case Management Order ("CMO") [Docket Entry 1126], ¶ 1, will be undone if issues relating to the National Contingency Plan ("NCP") are advanced to the liability phase of this case, and this case would become an outlier among the myriad federal courts that have consistently confirmed that NCP issues belong in the damages phase when a case has been bifurcated. There is no reason why this case should be deemed any different from the many cases that have come before or why the CMO's bifurcation should be modified at this point.

Applicable law confirms that in a bifurcated structure as here, NCP compliance is *not* a liability issue – and need not even be considered on a summary judgment motion relating to liability – but is reserved for the damages phase of the litigation. As one treatise explained, citing to law from this Circuit, "courts, usually, bifurcate the issues of liability and damages, enabling a plaintiff to obtain summary judgment on the liability issue while reserving for trial the issue of which damages are recoverable – *which includes questions of necessity and consistency with the NCP*." Envtl. Liability Allocation L. & Prac. § 10:10 (2013) (emphasis added) (citing *Buffalo Color Corp. v. AlliedSignal, Inc.*, 139 F. Supp. 2d 409, 416 (W.D.N.Y. 2001) (confirming that NCP is a damages issue for discovery and summary judgment purposes; dismissing NCP-related affirmative defense "in the liability phase…[it] may be considered in apportionment phase")).

TPDs do not mention this authority but instead misrepresent the law by arguing that TPPs' "wrongful[] claim[] that they need only show some 'nominal' amount of NCP compliant costs" at this phase is "both unworkable and unsupported by the relevant jurisprudence . . ." (TPD Ltr. p. 1). There is more law supporting the TPPs' position than can fit within a 3-page letter, and there is none supporting the TPDs' position – not even the cases to which TPDs cite. The private TPDs' misrepresentation of the law is particularly egregious given that earlier in this case counsel for the federal TPDs explained to this Court, "In order to establish liability in a bifurcated CERCLA case, the plaintiff need only show some response costs. The Court evaluates the recoverability of costs at the second phase of such a

# Arent Fox

case." 2/5/08 Letter [Docket Entry 1228], p. 2 (citations to Second Circuit and other authority omitted).

"Whether a plaintiff was justified in incurring certain response costs is determined at the damages phase and has no bearing on a defendant's CERCLA liability." *Tex Tin Settling Defendants Steering Comm. v. Great Lakes Carbon Corp.*, No. CIV.A. G-96-0247, 2008 WL 4376363, at *12 (S.D. Tex. Sept. 22, 2008) (citation omitted). "[T]here is no requirement that [plaintiffs' response costs] reach some threshold level of expenses." *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 476 (D.N.J. 1992), *aff'd*, 19 F.3d 642 (3d Cir. 1994). As stated in the *Manual For Complex Litigation, Fourth* § 34.12, "Indeed, the plaintiff need only prove that some amount of response cost has been incurred in response to a release or threatened release of a hazardous substance." (Citations omitted). And as the Second Circuit explained in *NiMo* – a case on which the TPDs rely heavily in connection with their § 107 motion but which makes no appearance in their letter now: "That a party seeking contribution can only demonstrate a minimal amount of hazardous discharge from a particular PRP, or that the exact origin proportions are unknown, are the types of equitable factors a court should consider in the apportionment process." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 131-32 (2d Cir. 2010) ("During Phase I, courts have engaged in a very limited liability inquiry;" for a TPD to prevail at the liability phase, it must establish that "it is not liable at all under CERCLA—namely, it is not a PRP under the statute, there is no plausible evidence that it discharged hazardous materials, or it is eligible for one of the three affirmative defenses available under § 107").

Addressing the NCP issue directly, one court explained: "[Defendant] maintains that [Plaintiff] must establish consistency with the NCP before obtaining partial summary judgment as to liability. The court disagrees. *See Amoco Oil* [*Co. v. Borden, Inc.*], 889 F.2d [664,] 672 [(5th Cir. 1989)] (first granting partial summary judgment on liability issue before evaluating NCP compliance). . . . Notably, every other decision that the court has located agrees with this court's reading of *Amoco Oil*." *Aviall Servs., Inc. v. Cooper Indus., LLC*, 572 F. Supp. 2d 676, 700 (N.D. Tex. 2008) (collecting cases, including *Vine Street, LLC v. Keeling*, 460 F. Supp. 2d 728, 758-59 (E.D. Tex. 2006) ("CERCLA requires that a private plaintiff's response costs be consistent with the NCP to the greatest extent possible. This is not an element of CERCLA liability, but a factual issue affecting which response costs [Plaintiff] may recover")); *see also State of N.Y. v. N. Storonske Cooperage Co.*, 174 B.R. 366, 370 (N.D.N.Y. 1994) (citing *Amoco Oil* with approval). In another case, the "Court earlier bifurcated th[e] action into liability and damage phases . . . [so] the parties ha[d] not proffered evidence regarding the precise amount and types of costs incurred, and [had] not yet fully briefed the issues of cost necessity and NCP consistency." *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1059 n.3 (C.D. Cal. 2003). That court concluded that "Although necessity and consistency with the NCP are elements of a CERCLA plaintiff's *prima facie* case, the Court believes it appropriate to leave these issues for resolution at a later date based on a complete record. Thus, the order issued today is limited to a determination of liability for those response costs, if any, that will later be held necessary and NCP consistent." *Id.*[1] TPDs' unsupported statement that "the law is clear that NCP

---

[1] *See also Licciardi v. Murphy Oil USA, Inc.*, No. Civ. A. No. 93-0490, 1994 WL 424375, at *1 (E.D. La. Aug. 11, 1994) (ordering "that the damages phase of the trial of this matter will be…restricted to whether the costs incurred by plaintiffs were consistent with the national contingency plan"); *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 841 n.2 (4th Cir. 1992) (observing that trial court's decision to "resolve the issues of necessity of the costs and consistency with the national contingency plan at the damages phase" was "well within the court's discretion"); *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1225 (3d Cir. 1993) (noting that "the district court bifurcated the trial into liability and damages phases and ordered all evidence that the Authority's expenses were necessary and consistent with the NCP to be reserved for the damages phase").

**Arent Fox**

October 29, 2013
Page 3
Honorable Robert M. Levy

consistency is relevant to the issue of liability, and not merely a consideration regarding the quantum of the TPPs' recovery" (p. 3) is the opposite of what the law provides.

The cases TPDs cite prove *TPPs*' point that NCP is a Phase 2 issue. For example, in *Alcan-Toyo* (TPD Ltr. p. 2), there was *no* CMO bifurcating the case (as there is here), but even so, the NCP inquiry came only in the damages phase *after* the parties stipulated to liability. *Alcan-Toyo Am., Inc. v. N. Ill. Gas Co.*, 904 F. Supp. 833, 837 (N.D. Ill. 1995). TPDs have not stipulated to liability here, so *Alcan-Toyo* offers no reason to depart from the bifurcation established in the CMO and expedite the damages inquiry, of which NCP is a part.[2] In short, the TPDs' cases stand for the unremarkable proposition that TPPs will ultimately have to prove NCP compliance, but none stands for the proposition that NCP should be advanced to the liability phase in a bifurcated case,[3] and the authority confirming the opposite is wholly ignored by the TPDs. No special circumstance here warrants a CMO modification or explains why this case is different from the many that preceded it.

Practically speaking, even in Phase 1, TPPs already produced thousands of pages showing the response costs incurred over many years and relating to their ongoing remediation activities. TPDs fail to note that the RI/FS and related materials (showing, *e.g.*, that the NYSDEC held a public hearing, served notices, posted signs, etc.) were produced to TPDs many years ago. This is unlike the situation in December 2008, when the parties were actively contemplating settlement and TPDs refused to provide *any* information regarding their NCP defense.[4] The materials TPDs seek, beyond what TPPs already provided, relate to the amount of costs and issues that will implicate experts – in TPDs' words, whether the work was of "CERCLA-quality" (n.3) and "responses relating to the cleanup work performed and costs incurred" (p. 3) – which are properly left for Phase 2 pursuant to the CMO. TPDs' own characterization of what more they want from the TPPs is telling: they speak of the purported benefits of "eliminating *portions* of the TPPs' claims for *damages*" (p. 3, emphasis added), effectively conceding that this is a Phase 2 issue and no efficiency is gained by accelerating it.[5]

There is no reason to depart from this Court's long-standing determination that bifurcating the case into liability and damages phases is more efficient than addressing both subjects simultaneously, or to treat this case any differently from the myriad cases that have deemed NCP a Phase 2 damages issue. In the interests of judicial economy, further NCP discovery should await Phase 2.

---

[2] TPDs also cite *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351 (2d Cir. 1997), but neglect to point out the case's subsequent history at 32 F. Supp. 2d 38 (D. Conn. 1998). Much like *Alcan-Toyo*, defendant there already conceded elements of liability before the NCP discussion arose. And, there was *no* bifurcated structure in place in *ABB* as there is here. *ABB* involved only one defendant; in denying the motion to bifurcate, the court noted: "reserving a second phase solely for allocation of damages…would seem to unnecessarily prolong the litigation *where one is not faced with a multitude of responsible defendants*." *Id.* at 44 (emphasis added). Here, there are a multitude of defendants, the case has already been bifurcated, and the TPDs have not stipulated to liability.

[3] TPDs attempt to use CMO ¶ 10 to blur the lines between Phases 1 & 2, but there is in fact a dividing line, the purpose of which is to "limit…costs" and "optimize…efficiency" (CMO ¶ 1).

[4] Ultimately, Rexam and others in the "Joint Defense Group" simply replied that they "no longer raise[] [NCP] as an affirmative defense, but rather reserve[d] [their] rights to hold the TPPs to their proofs …." By contrast, TPPs have already given a massive amount of NCP-related facts to TPDs and the remainder is properly reserved for Phase 2.

[5] TPDs concede that NCP is "irrelevant to the existing motions" and say it may be "relevant to a future motion" (10/2/13 Tr. p. 99) but since remediation is pursuant to consent order with and monitored by NYSDEC, the *TPPs* could obtain summary judgment on this issue. *See, e.g., Niagara Mohawk*, 596 F.3d at 137; *Benderson Dev. Co. v. Neumade Prods. Corp.*, No. 98-CV-0241SR, 2005 WL 1397013, at *14 (W.D.N.Y. Jun. 13, 2005); *Pfohl Bros. Landfill Site Steering Comm. v. Browning-Ferris Indus. of New York, Inc.*, No. 95-CV-956A(F), 2004 WL 941816, at *21-22 (W.D.N.Y. Jan. 30, 2004); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000). But there is no reason to advance the NCP issue and the TPPs' motion until after, as the *Castaic Lake* Court said, "a determination of liability for those response costs, if any."

# Arent Fox

October 29, 2013
Page 4
Honorable Robert M. Levy

Respectfully submitted,

*/s/ Allen G. Reiter*

Allen G. Reiter

cc: All Counsel (via ECF)