DMJ ASSOCIATES, L.L.C.,

            Plaintiff,

vs.

CARL A. CAPASSO, et al.,

            Defendants.

EXXON MOBIL CORPORATION and
QUANTA RESOURCES CORPORATION,

            Defendants/
            Third-Party Plaintiffs,

vs.

ACE WASTE OIL, INC., et al.,

            Third-Party Defendants.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 97 7285 (DLI) (RML)

ORAL ARGUMENT REQUESTED

---

**BRIEF OF THIRD-PARTY DEFENDANTS AVCO CORPORATION, CONOCO PHILLIPS COMPANY, CROWN CORK & SEAL COMPANY, INC., KRAFT FOODS GLOBAL, INC., NOVELIS CORPORATION (f/k/a ALCAN ALUMINUM CORPORATION), REXAM BEVERAGE CAN COMPANY, RIVER TERMINAL DEVELOPMENT, SUNOCO, INC. (alleged to be a/k/a SUN OIL REFINERY, f/k/a SUN OIL CO.), AND WYMAN-GORDON COMPANY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CERCLA SECTION 107(a) CLAIM ASSERTED IN COUNT I OF THE THIRD AMENDED THIRD-PARTY COMPLAINT**

---

*Of Counsel:*
William S. Hatfield
Camille V. Otero

*On the Brief:*
Paul M. Hauge

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
Attorneys for Third-Party Defendant
Rexam Beverage Can Company

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

LEGAL ARGUMENT ......................................................................................... 4

POINT I   MOVANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ........................................................................................ 4

POINT II   EXXON MOBIL AND QUANTA CANNOT SUE UNDER SECTION 107(a) BECAUSE THEY HAVE ASSERTED CLAIMS UNDER SECTION 113(f) ................................................. 5

    A.   Section 107 and Section 113 Provide Distinct Remedies ........................ 5

    B.   In the Second Circuit, a Party With a Claim Under Section 113(f) Cannot Also Assert a Claim Under Section 107(a) ................................... 9

    C.   The Court Should Dismiss Exxon Mobil and Quanta's Claims Under Section 107(a) Because Their Potential Claims Are Limited to Contribution Under Section 113(f) ........................................ 14

        1.   Exxon Mobil and Quanta State a Claim for Contribution Under CERCLA Section 113(f)(l) .............................................. 14

        2.   Exxon Mobil and Quanta May Also Assert a Claim for Contribution Under CERCLA Section 113(f)(3)(B) ................... 16

CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Agere Sys., Inc. v. Cytec Indus., Inc.,*
  602 F.3d 204 (3d Cir. 204)..................................................................... 14

*Akzo Coatings, Inc. v. Aigner Corp.,*
  30 F.3d 761 (7th Cir. 1994) .................................................................... 6

*American Airlines, Inc. v. Remis Indus., Inc.,*
  494 F.2d 196 (2d Cir. 1974)................................................................... 13

*Appleton Papers Inc. v. George A. Whiting Paper Co.,*
  572 F. Supp. 2d 1034 (E.D. Wise 2008)................................................ 16, 17

*Bedford Affiliates v. Sills,*
  156 F.3d 416 (2d Cir. 1998).................................................................... 8

*Burlington Northern & Santa Fe Ry. Co.,*
  556 U.S. 599 (2009).................................................................................. 5

*Chitayat v. Vanderbilt Associates,*
  702 F. Supp. 2d 69 (E.D.N.Y. 2010) ..................................................... 17

*Consolidated Edison Co. of New York v. UGI Utils., Inc.*
  423 F.3d 90 (2d Cir. 2005)....................................................................... 9

*Cooper Indus., Inc. v. Aviall Svcs., Inc.,*
  543 U.S. 157 (2004)................................................................. 8, 9, 10, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986).................................................................................. 5

*Morrison Enterprises, LLC v. Dravo Corp.,*
  638 F.3d 594 (8th Cir.), cert. denied, 132 S. Ct. 244 (2011) ............... 13

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,*
  596 F.3d 112 (2d Cir. 2010)........................................................ 6, 8, 11, 12

*Raytheon Aircraft Co. v. United States,*
  435 F. Supp. 2d 1136 (D. Kan. 2006) ..................................................... 6

*Seneca Meadows, Inc. v. ECI Liquidating, Inc.,*
  427 F. Supp. 2d 279 (W.D.N.Y. 2006) ................................................... 18

*Solutia, Inc. v. McWane, Inc.,*
  672 F.3d 1230 (11th Cir. 2012) .............................................................. 14

*Stone v. INS,*
  514 U.S. 386 (1995)................................................................................. 13

*United States v. Atlantic Research, Inc.,*
  551 U.S. 128 (2007)......................................................................... passim

United States v. Chem-Dyne Corp.,
572 F. Supp. 802 (Ohio 1983 .................................................................. 5

United States v. New Castle County,
642 F. Supp. 1258 (D. Del. 1986) ........................................................... 7

United States v. USX Corp.,
68 F.3d 811 (3d Cir. 1995) ..................................................................... 5

Varity Corp. v. Howe,
516 U.S. 489 (1996) .............................................................................. 13

Vine Street LLC v. Keeling,
362 F. Supp. 2d 754 (E.D. Tex. 2005) ................................................... 6

Wehner v. Syntex Agribusiness, Inc.,
616 F. Supp. 27 (E.D. Mo. 1985).......................................................... 7

Wickland Oil Terminals v. Asarco, Inc.,
792 F.2d 887 (9th Cir. 1986) ................................................................. 7

## STATUTES

42 U.S.C. § 9601(25) ........................................................................................ 6

42 U.S.C. § 9607(a) .............................................................................. 1, 6, 19

42 U.S.C. § 9607(a)(4)(B) ............................................................................. 10

42 U.S.C. § 9613 (g)(3)(C) ............................................................................ 13

42 U.S.C. § 9613(f) ........................................................................................... 1

42 U.S.C. § 9613(f)(1) ............................................................................... 7, 10

42 U.S.C. § 9613(f)(2) ............................................................................. 10, 15

42 U.S.C. § 9613(f)(3)(B) .......................................................................... 7, 10

42 U.S.C. § 9613(f)(l) .................................................................................... 15

42 U.S.C. § 9613(g)(3) ..................................................................................... 8

42 U.S.C. § 9613(g)(3)(B) ............................................................................... 8

## RULES

Fed. R. Civ. P. 56(a) ........................................................................................ 5

## OTHER AUTHORITIES

Dobbs,
The Law of Torts § 386 (West 2000)..................................................... 16

## PRELIMINARY STATEMENT

Third-Party Defendants Avco Corporation, Conoco Phillips Company, Crown Cork & Seal Company, Inc., Kraft Foods Global, Inc., Novelis Corporation (f/k/a Alcan Aluminum Corporation), Rexam Beverage Can Company, River Terminal Development, Sunoco, Inc. (alleged to be a/k/a Sun Oil Refinery, f/k/a Sun Oil Co.), and Wyman-Gordon Company (collectively "Movants")[1] move for partial summary judgment as to Count I of the Third Amended Third-Party Complaint of Exxon Mobil Corporation ("Exxon Mobil") and Quanta Resources Corporation ("Quanta").   Count I asserts a claim for cost recovery under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a).

Movants are entitled to judgment as a matter of law on the Section 107(a) claim because Exxon Mobil and Quanta can bring -- indeed, have brought -- a potential claim for contribution under CERCLA Section 113(f), 42 U.S.C. § 9613(f).   Under controlling Second Circuit authority, as potentially responsible parties ("PRPs") (*i.e.*, parties that could face CERCLA liability if sued) with an available contribution claim under Section 113(f), Exxon Mobil and Quanta cannot also assert a cost recovery claim under Section 107(a).  This rule, which has also been adopted by the Third, Eighth, and Eleventh Circuits, advances important CERCLA policies by preventing PRPs from undermining the structure of distinct remedies that Congress has

---

[1] Exxon Mobil did not assert any claims against Rexam Beverage Can Company.  Quanta did not assert any claims against Avco Corporation, Conoco Phillips Company, Sunoco, Inc., or Kraft Foods Global, Inc.  Third Amended Third-Party Complaint ¶¶ 14, 15.

[2] By way of a separate motion, those Movants against whom Quanta asserted claims are moving for partial summary judgment on Quanta's claim for contribution under CERCLA Section 113(f) in Count II of the Third Amended Third-Party Complaint.  As set forth in the brief in support of that motion, while Quanta may meet the statutory requirements for asserting a Section 113(f) contribution claim, it cannot recover under that claim because of its intentional, reckless, and wanton conduct.

carefully established.  Count I of the Third Amended Third-Party Complaint should therefore be dismissed.

## STATEMENT OF FACTS

Movants rely on and incorporate their Statement of Undisputed Material Facts.  Those facts are reproduced below for the Court's convenience.

1.  Exxon Mobil and Quanta were defendants in a civil action under CERCLA Section 107(a).  See Complaint (December 10, 1997) ¶¶ 152-161; Fourth Amended Complaint (June 16, 2005) ¶¶ 244-257.

2.  In that action, Plaintiff, DMJ Associates, L.L.C. ("DMJ"), sought both CERCLA response costs and the cleanup of its property.  Complaint (December 10, 1997), at 29-34; Fourth Amended Complaint (June 16, 2005) at 46-51.

3.  During the pendency of that action, the New York State Department of Environmental Conservation ("DEC") notified a group of companies, including Exxon Mobil and Quanta, of their potential obligation to conduct a cleanup of DMJ's property and other parcels that were the source of contamination at DMJ's property.  As a result of those discussions, in 2002 the DEC issued an Order on Consent (the "2002 Consent Order") that required the named respondents, which included Exxon Mobil and Quanta, to pay the DEC for its past costs and to prepare and implement a work plan for a Remedial Investigation/Feasibility Study.  Order on Consent, Exhibit A to Certification of Camille V. Otero ("Otero Certif.").

4.  The DEC issued the 2002 Consent Order pursuant to its authority under state law and under CERCLA.  Id. at 1.

5.  The 2002 Consent Order provided the signatory respondents, including Exxon Mobil and Quanta, a contingent release for all claims the DEC had or may have had under certain portions of New York's Environmental Conservation Law as well as "any other provision of statutory or common law" relating to investigation or remediation of hazardous substances at the site covered by the Order.  Id. ¶ II.G, at 6.

6.  The 2002 Consent Order set forth the parties' understanding that to the extent authorized by CERCLA Section 113, the signatory respondents, including Exxon Mobil and Quanta, "shall be deemed to have resolved [their] liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2) for 'matters addressed' pursuant to and in accordance with this Order."  Id. ¶ XIV.J.

7.  The matters addressed in the 2002 Consent Order include response actions taken by the respondents to implement the 2002 Consent Order, response costs incurred and to be incurred in connection with that work, and required reimbursement of the State's costs.  Id.

8.  The 2002 Consent Order required the respondents to pay the DEC $209,797.67 in past costs, and to submit a work plan for, and implement, a Remedial Investigation/Feasibility Study ("RI/FS").  Id. ¶¶ II.B, VI.A.

- 3 -

9.   Exxon Mobil and Quanta are parties to a settlement agreement with DMJ dated June 27, 2005 (the "2005 Settlement Agreement").

████████████████████████████████████████████████

████████████████████████████████████████████████ Settlement Agreement (June 27, 2005), Exhibit A to Supplemental Certification of Camille V. Otero, at 10-11.

10.   In light of the 2005 Settlement Agreement, this Court dismissed DMJ's action against Exxon Mobil and Quanta by way of an Order and Judgment of Dismissal filed on June 27, 2005 ("2005 Dismissal Order").   Order and Judgment of Dismissal (June 27, 2005).

11.   The 2005 Dismissal Order referred to agreements between DMJ and various Defendants (including Exxon Mobil and Quanta) which provide DMJ with a monetary remedy as well as an equitable remedy in the form of a cleanup that would satisfy all DEC requirements.  Id. at 4-5.   Further, pursuant to the 2005 Dismissal Order, the Court retained continuing jurisdiction for the purpose of enforcing the terms of the settlement agreements between DMJ and the settling defendants (including Exxon Mobil and Quanta), "including the specific enforcement by injunctive relief of the non-monetary performance obligations of the Settling Parties . . . ." Id. at 7.

12.   The 2005 Dismissal Order granted the Settling Defendants "full and complete protection" from any claim for contribution with respect to matters addressed in the 2005 Settlement Agreement, in accordance with the provisions of CERCLA and applicable federal, state and common law regarding contribution protection. Id. at 7.

13.   Since 2005, the remediation activities required by the 2005 Settlement Agreement have been conducted under the DEC's Brownfield Cleanup Program.   Brownfield Cleanup Program Application, Exhibit B to Otero Certif.; Brownfield Site Cleanup Agreement, Exhibit C to Otero Certif.; Record of Decision, Exhibit D to Otero Certif., at 4.

14.   The DEC is overseeing all aspects of the remediation activities at the Site, including the selection of the specific remedial program.   Record of Decision, Exhibit D to Otero Certif.

15.   Exxon Mobil and Quanta brought their third-party action on November 24, 2004.

16.   In their third-party action, Exxon Mobil and Quanta have asserted claims under both CERCLA Section 107(a) and CERCLA Section 113(f).   Third Amended Third-Party Complaint ¶¶ 18-32.

- 4 -

## LEGAL ARGUMENT

## POINT I

## MOVANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

Summary judgment is appropriate if the evidence demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All material facts relevant to the instant motion are undisputed. Exxon Mobil and Quanta were sued by DMJ under CERCLA Section 107(a), and therefore may assert a claim for contribution under Section 113(f)(1). All of the costs they seek to recover were incurred as a result of that lawsuit. While defending the lawsuit brought by DMJ, they also entered into the 2002 Consent Order, which conditionally resolves their liability to the State, and thus may ground a claim for contribution under Section 113(f)(3)(B).

The law of this Circuit is that a party with a Section 113(f) claim cannot also bring a claim under Section 107. Exxon Mobil and Quanta have -- and, indeed, have asserted -- a potential claim under Section 113(f) for all of their claimed costs. Movants are therefore entitled to judgment as a matter of law on the Section 107(a) claim asserted by Exxon Mobil and Quanta, and the Section 107(a) claim should be dismissed with prejudice.[3]

---

[3] If this Court decides that Exxon Mobil and Quanta may seek some or all of their response costs under Section 107(a), that claim would not impose joint and several liability on the third-party defendants. While joint and several liability may be imposed in a Section 107(a) action brought by the government (subject to a showing of divisibility of harm), see Burlington Northern & Santa Fe Ry. Co., 556 U.S. 599, 613 (2009), liability is of a different character when one PRP sues another. This is because "Congress intended the scope of liability to 'be determined from traditional and evolving principles of common law.'" Id. (quoting United States v. Chem-Dyne Corp., 572 F. Supp. 802, 808 (Ohio 1983)); see also United States v. USX Corp., 68 F.3d 811, 824 (3d Cir. 1995) ("Congress anticipated that issues of liability not resolved by [CERCLA] shall be governed by traditional and evolving principles of common law.") (citation and internal quotation marks omitted). Those common law principles do not permit one

## POINT II

## EXXON MOBIL AND QUANTA CANNOT SUE UNDER SECTION 107(a) BECAUSE THEY HAVE ASSERTED CLAIMS UNDER SECTION 113(f)

### A.   Section 107 and Section 113 Provide Distinct Remedies

CERCLA was enacted in 1980, 94 Stat. 2767, to spur the cleanup of contaminated sites and to ensure that those responsible for the contamination would bear the cost of cleanup. See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010). Its core liability provision is Section 107(a), which makes four categories of persons liable for response costs, the statutory term for cleanup costs. 42 U.S.C. § 9607(a); see also 42 U.S.C. § 9601(25) (defining "response" to include removal and remediation of contamination).[4] Section 113(f), which was added to CERCLA as part of the Superfund Amendments and Reauthorization

---

PRP (a tortfeasor with respect to the contamination at a site) to assert a claim for joint and several liability against another PRP (a joint tortfeasor with respect to the contamination). Rather, such a claim is in the nature of contribution. Cf. Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994) (describing claim of PRP subject to EPA order against another PRP as "a quintessential claim for contribution"); Raytheon Aircraft Co. v. United States, 435 F. Supp. 2d 1136, 1146-51 (D. Kan. 2006) (finding implied right of contribution in Section 107 in "unique circumstances" where PRP had no cause of action under Section 113(f)); Vine Street LLC v. Keeling, 362 F. Supp. 2d 754, 761-64 (E.D. Tex. 2005) (PRP could seek contribution under Section 107 for voluntarily incurred costs in "unique situation" where PRP had no claim under Section 113(f)).

[4] Section 107(a) provides, in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-- (1) the owner and operator of a vessel or a facility,  (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,  (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and  (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;  (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and  (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a).

Act of 1986 ("SARA"), 100 Stat. 1613, creates an express right of contribution, available to parties in two situations. Under Section 113(f)(1), any person may seek contribution "during or following any civil action" under Section 106 or Section 107(a). 42 U.S.C. § 9613(f)(1).[5] Section 113(f)(3)(B) authorizes a contribution action by any person who "has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B).[6]

Courts struggled for many years to determine who could bring an action for cost recovery under Section 107(a) and who could seek contribution under Section 113(f). Prior to SARA, some courts held that PRPs could use Section 107(a), see, e.g., Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 890-92 (9th Cir. 1986), and other courts recognized CERCLA contribution rights as a matter of federal common law, see, e.g., United States v. New Castle County, 642 F. Supp. 1258, 1265-68 (D. Del. 1986), or found an "implied" right of contribution in Section 107(a). See, e.g., Wehner v. Syntex Agribusiness, Inc., 616 F. Supp. 27, 31 (E.D. Mo. 1985). After SARA created express rights of contribution, some courts held that PRPs could not

---

[5] Section 113(f)(1) provides:

> Contribution. Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or under section 9607(a) of this title.

42 U.S.C. § 9613(f)(1).

[6] Section 113(f)(3)(B) provides:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement [that resolves its CERCLA liability to the United States or a State].

42 U.S.C. § 9613(f)(3)(B).

sue other PRPs under Section 107(a) but were instead limited to seeking contribution under Section 113(f).  See, e.g., Bedford Affiliates v. Sills, 156 F.3d 416, 423-24 (2d Cir. 1998), abrogated as stated in Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010).

The Supreme Court clarified the relationship between Section 107(a) and Section 113(f) in a pair of cases brought by private parties who, like Exxon Mobil and Quanta, sought to recover a portion of their cleanup costs from other PRPs.  In Cooper Indus., Inc. v. Aviall Svcs., Inc., 543 U.S. 157 (2004), the Court held that Section 113(f)(l) does not authorize a contribution action by a party that has not been the subject of a civil action under Section 106 or Section 107(a).  The "natural meaning" of Section 113(f)(l), which specifically authorizes contribution actions "during or following a civil action," compelled the Court's conclusion.  Id. at 166.  The Court also pointed to Section 113(g)(3), 42 U.S.C. § 9613(g)(3), which establishes three-year limitations periods for CERCLA contribution actions, one beginning at the date of judgment, 42 U.S.C. § 9613(g)(3)(A), and one beginning at the date of settlement, 42 U.S.C. § 9613(g)(3)(B).  As the Court stated, the absence of any provision for a triggering event when there is neither a judgment nor a settlement "supports the conclusion that, to assert a contribution claim under § 113(f), a party must satisfy the conditions of either § 113(f)(l) or § 113(f)(3)(B)." Cooper, 543 U.S. at 167.

Having held that a plaintiff who had not been sued could not seek contribution under Section 113(f)(l), the Supreme Court in Cooper declined to decide whether the plaintiff-PRP could recover costs under Section 107(a).  The Court took up that question three years later in United States v. Atlantic Research, Inc., 551 U.S. 128 (2007), where the plaintiff-PRP had

originally sued under both Section 113(f) and Section 107 but then saw its Section 113(f) claim foreclosed by Cooper.

Like the plaintiff in Cooper, the plaintiff in Atlantic Research had not been sued under Section 106 or Section 107(a).  See Atlantic Research, 551 U.S. at 133; Cooper, 543 U.S. at 164. Thus, as the case came to the Supreme Court, the only CERCLA claim asserted by the plaintiff was a claim under Section 107(a).  Again focusing on the plain language of the relevant provision, the Court held that the authorization of a cost recovery action by "any other person" in Section 107(a)(4)(B) extended to PRPs.  Id. at 135-36.  Thus, the Supreme Court held that under those circumstances, Section 107(a) did provide the plaintiff with a cause of action to recover costs from other PRPs.

The Court in Atlantic Research did not decide whether "compelled costs of response," such as those incurred pursuant to a consent decree following a suit under Section 106 or Section 107(a), are recoverable under Section 113(f), Section 107(a), or both.  Id. at 139 n.6. Nevertheless, quoting language from Cooper, the Court reiterated its recognition that the two sections "provide two clearly distinct remedies," with Section 107(a) providing a right to cost recovery "in certain circumstances" and Section 113(f) providing separate rights to contribution "in other circumstances."  Id. (citing Cooper, 543 U.S. at 163 & n.6).  The Court referred to "the complementary yet *distinct* nature of the rights established in §§ 107(a) and 113(f)."  Id. (emphasis added).  The "clearly distinct" remedies of Section 107(a) and Section 113(f) are "complementary" in that they provide different causes of action to "persons in different procedural circumstances."  Id. at 139 (quoting Consolidated Edison Co. of New York v. UGI Utils., Inc. 423 F.3d 90, 99 (2d Cir. 2005)).

In sum, after <u>Cooper</u> and <u>Atlantic Research</u> it is well established that CERCLA provides for two "clearly distinct" remedies for private parties seeking to recoup costs from other parties. See <u>Cooper</u>, 543 U.S. at 163 n.3. Section 107(a), which has been part of the statute since its enactment in 1980, permits non-governmental entities to recover "necessary response costs incurred." 42 U.S.C. § 9607(a)(4)(B). Section 113(f), which was added to CERCLA in 1986, authorizes contribution actions by parties in two specific situations: (1) when they have been sued under Section 106 or Section 107(a), 42 U.S.C. § 9613(f)(1), and (2) when they have resolved some or all of their CERCLA liability to the federal or state government in an administrative or judicially approved settlement.   42 U.S.C. § 9613(f)(3)(B).   "In short," CERCLA provides for "a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." <u>Cooper</u>, 543 U.S. at 163.

## B.     In the Second Circuit, a Party With a Claim Under Section 113(f) Cannot Also Assert a Claim Under Section 107(a)

While <u>Cooper</u> and <u>Atlantic Research</u> stressed the "clearly distinct" nature of the remedies provided by Section 107(a) and Section 113(f), and emphasized that they are designed to apply to parties in "different procedural circumstances," they did not address all of the various procedural circumstances in which a PRP might find itself, including the circumstances of parties that, like Exxon Mobil and Quanta, have incurred response costs after (and as a result of) being sued under Section 107(a).  See <u>Atlantic Research</u>, 551 U.S. at 139 n.6 ("[W]e recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a). . . . We do not decide whether these compelled costs of response are recoverable under § 113(f), §107(c), or both.").  Following the logic of <u>Cooper</u> and <u>Atlantic Research</u>, however, the Second Circuit has held, in <u>Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.</u>, 596 F.3d 112

- 10 -

(2d Cir. 2010), that the availability of a Section 113(f) contribution claim bars the PRP from asserting a cost recovery claim under Section 107(a). That holding bars the cost recovery claim asserted here by Exxon Mobil and Quanta under Section 107(a).

In Niagara Mohawk, the plaintiff ("NiMo") had incurred response costs pursuant to a consent order with the DEC. NiMo filed suit to recover its costs, asserting claims under both Section 113(f)(3)(B) and Section 107(a). After holding that NiMo could seek contribution under Section 113(f)(3)(B) because it had resolved its CERCLA liability to the State in the consent order, id. at 124-27, the Second Circuit held that *only* Section 113(f)(3)(B), and not Section 107(a), "provide[d] the proper procedural mechanism for NiMo's claims." Id. at 124; see also id. at 118 ("[B]ecause NiMo incurred response costs as a result of a resolution of its CERCLA liability with the DEC, NiMo cannot seek recovery costs under § 107(a)(4)(B).")

Echoing the language of Cooper and Atlantic Research, the Second Circuit referred to the "differing restrictions and different purposes" of the two provisions. Niagara Mohawk, 596 F.3d at 127. The court also noted that Section 113(f) had been enacted as part of SARA specifically to clarify and confirm a right of contribution for PRPs that believed they had borne more than their equitable share of a cleanup. Id. "NiMo's claim," said the Second Circuit, "fits squarely within the more specific requirements of Section 113(f)(3)(B)." Id. at 127. NiMo had acknowledged responsibility and resolved its liability by agreeing to identify and remediate hazardous substances at its site. Thus, NiMo properly asserted a claim under Section 113(f)(3)(B). Id. at 127-28.

For the Second Circuit, NiMo's ability to seek contribution under Section 113(f) was dispositive of its claim under Section 107(a):

> The EPA in its amicus brief strongly argues that § 113(f)(3)(B) is the proper vessel for NiMo's contribution claims in light of its

- 11 -

> more specific requirements, the nature of NiMo's claims, and the amendment of the statute to provide the right of contribution. We agree. Congress recognized the need to add a contribution remedy for PRPs similarly situated to NiMo. To allow NiMo to proceed under § 107(a) would in effect nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113.

Id. at 128. Even though NiMo had incurred costs directly, as opposed to making payments to a third party, so that its claims "[did] not seem to fit the common law definition of contribution," the Second Circuit noted that the Supreme Court in Atlantic Research had "recognized that there could be an overlap of the *concepts* of cost recovery and contribution." Id. at 127 n.18 (emphasis in original). But regardless of whether NiMo's costs fell within the overlap of the two concepts, "'concepts' do not alter the plain language of the statute in play here. NiMo's claims clearly meet the more specific parameters of the terms of § 113(f)(3)(B)." Id.

The logic of Niagara Mohawk applies equally to the claims of PRPs that can seek contribution under Section 113(f)(1). Indeed, the Second Circuit framed the question left open by Atlantic Research in very broad terms that encompass both Section 113(f)(1) and Section 113(f)(3)(B): whether Section 107(a) is available to a PRP that directly incurs cleanup costs "under some judicial or administrative compulsion." Id. at 127 n.17. The same considerations that led the Second Circuit to bar NiMo's Section 107(a) claim -- the ability to satisfy the more specific requirements of Section 113(f), the true nature of the claim, and the need to give effect to Congress' decision to amend CERCLA to add express contribution rights -- require dismissal of the Section 107(a) claim asserted here by Exxon Mobil and Quanta.

Dismissal of Exxon Mobil's and Quanta's Section 107(a) claim in accordance with Niagara Mohawk is also appropriate in this case because the same established principles of statutory construction that apply to the relationship between Section 113(f)(3)(B) and Section 107 also apply to the relationship between Section 113(f)(1) and Section 107. As part of an

amendment to CERCLA that was enacted after Section 107, all of Section 113(f) must be presumed to have "real and substantial effect." Stone v. INS, 514 U.S. 386, 397 (1995); see also American Airlines, Inc. v. Remis Indus., Inc., 494 F.2d 196, 200 (2d Cir. 1974) (in case of conflict, amendment will prevail over original enactment as "the later declaration of legislative will") (citation omitted).  In addition, both relevant subsections of Section 113(f) address suits by PRPs in particular procedural circumstances, and thus should control over the more general language of Section 107.  See Varity Corp. v. Howe, 516 U.S. 489, 516 (1996) (inclusive but general statutory language will not be held to apply to matters specifically addressed in another part of the statute).

In addition, dismissing Exxon Mobil and Quanta's Section 107(a) claim here would advance the same important CERCLA policies that the Second Circuit sought to effectuate in Niagara Mohawk.  Allowing PRPs with claims under either portion of Section 113(f) to proceed under Section 107(a) would permit them to circumvent the tighter time limits set forth in Section 113(g)(3) for bringing contribution actions, see 42 U.S.C. § 9613(g)(3), and permit them to thwart the contribution protection afforded parties that have settled with the government, see 42 U.S.C. § 9613(f)(2), and thus eliminate that critical settlement incentive.  It would also undermine the priority that Section 113(g)(3)(C) gives to claims of the government.  See 42 U.S.C. § 9613 (g)(3)(C) ("In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State.").

Three other circuits have cited Niagara Mohawk in holding that PRPs who can sue under Section 113(f) cannot assert a claim under Section 107(a).  In Morrison Enterprises, LLC v. Dravo Corp., 638 F.3d 594 (8th Cir.), cert. denied, 132 S. Ct. 244 (2011), several PRPs had

entered into administrative settlements with EPA, and were also the subject of suits brought by EPA under Sections 106 and 107 that resulted in consent decrees. Answering the question left open by Atlantic Research, the court held that "§ 113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107." Id. at 603.

The Eleventh Circuit reached a similar result in Solutia, Inc. v. McWane, Inc., 672 F.3d 1230 (11th Cir. 2012). The plaintiffs in Solutia had been sued by EPA and later entered into a partial consent decree that required them to finance and perform certain cleanup activities. EPA subsequently entered into a separate CERCLA settlement with a group of parties that included all but two of the defendants in the Solutia action. Under these circumstances, the court held, the plaintiffs could sue only under Section 113(f), and not under Section 107(a). "If a party subject to a consent decree could simply repackage its § 113(f) claim for contribution as one for recovery under § 107(a), then the structure of CERCLA remedies would be completely undermined." Id. at 1236. Such parties could circumvent the limitations periods applicable to CERCLA contribution claims; thwart the contributions protection afforded parties that, like most of the defendants in Solutia, had settled with EPA, and thus eliminate that critical settlement incentive; and impose joint and several liability on other parties while being shielded from counterclaims for contribution. Id. at 1236-37.

Finally, in Agere Sys., Inc. v. Cytec Indus., Inc., 602 F.3d 204 (3d Cir. 204), the Third Circuit considered the claims of parties that had performed work under a consent decree following a CERCLA suit that resolved their CERCLA liability to the United States. If permitted to bring a claim under Section 107(a), these parties would be shielded from Section 113(f) counterclaims by the contribution protection provisions of Section 113(f)(2). See

42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States or a state in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."). The Third Circuit concluded that "[t]his is a perverse result, since a primary goal of CERCLA is to make polluters pay." <u>Agere</u>, 602 F.3d at 228. Such parties, the court therefore held, do not have any claim under Section 107(a) for costs incurred pursuant to the consent decree. <u>Id.</u> at 229.

After <u>Niagara Mohawk</u>, the law of the Second Circuit is clear. If a PRP has a claim under Section 113(f) because it has been sued and or has resolved its CERCLA liability, and has thus acted under some judicial or administrative compulsion, it cannot also assert a claim under Section 107(a). That rule bars the Section 107(a) claim asserted here by Exxon Mobil and Quanta.

**C.   The Court Should Dismiss Exxon Mobil and Quanta's Claims Under Section 107(a) Because Their Potential Claims Are Limited to Contribution Under Section 113(f)**

   **1.   Exxon Mobil and Quanta State a Claim for Contribution Under CERCLA Section 113(f)(l)**

As noted above, Section 113(f)(l) authorizes any person to seek contribution "during or following a civil action" under Section 106 or Section 107(a). 42 U.S.C. § 9613(f)(l). Exxon and Quanta have been sued by DMJ under Section 107(a). Fourth Amended Complaint ¶¶ 244-257.

After the parties entered into a series of agreements, the Court dismissed DMJ's complaint because, through those agreements, DMJ had obtained the full relief it sought in its complaint, including a cleanup of the site that is acceptable to the State and a monetary remedy that makes DMJ whole. <u>See</u> 2005 Dismissal Order at 4-6. Although the Court dismissed the complaint, it explicitly retained jurisdiction for the purpose of enforcing those agreements,

"including the specific enforcement by injunctive relief of the non-monetary performance obligations of the Settling Parties ...." Id. at 7.

Indeed, Exxon Mobil and Quanta explicitly seek contribution under CERCLA Section 113, Third Amended Third-Party Complaint ¶¶ 30-32, referring to DMJ's complaint in their allegations. Id. ¶¶ 1, 2, 31. That claim covers all of the alleged response costs sought by Exxon Mobil and Quanta in their third-party action.

Once a party qualifies as a contribution claimant under Section 113(f)(1) and/or Section 113(f)(3)(B), any and all response costs that *can* be recovered in contribution -- because they were paid or incurred to discharge a common liability -- *must* be recovered in contribution. Appleton Papers Inc. v. George A. Whiting Paper Co., 572 F. Supp. 2d 1034, 1043-44 (E.D. Wis. 2008).[7] The contribution right codified in Section 113(f) has the same parameters as the traditional right of contribution, *i.e.*, a tortfeasor's right to collect from joint tortfeasors after paying more than its proportionate share, id. at 1044, id. (citing Atlantic Research, 551 U.S. at 138), and the costs recoverable in such a traditional contribution action, the court continued, are not limited to "the amount that can be recovered in contribution to payments expressly mandated by a previous action. *Any* payments made to discharge a common liability in excess of the plaintiff's own fair share are recoverable." Appleton, 572 F. Supp. 2d at 1044 (citing Dobbs, The Law of Torts § 386, at 1079 (West 2000)) (emphasis added). Because all of the plaintiff's costs, whether payments to others or directly incurred, and whether explicitly required by the consent decree or not, were spent to discharge their common liability, they "[had] no need to resort to § 107(a). Whatever amounts they are entitled to recover must be recovered under § 113(f)." Id.

---

[7] The plaintiffs in Appleton were similar to Exxon Mobil and Quanta in that they "were first sued by the EPA in August of 2001, and so they have been free to assert [a Section 113(f)(1) claim] since at least that time." Appleton, 572 F. Supp. 2d at 1044.

The rationale of <u>Appleton</u> suffices to resolve the instant case as well. Exxon Mobil and Quanta were sued under Section 107(a) in 1997, and have had a cause of action for contribution under Section 113(f)(1) since that time. They may assert a claim in contribution for those amounts (if any) they spent in excess of their equitable share to discharge the common liability they claim to share with the third-party defendants. It is irrelevant whether any particular item was explicitly required by the 2005 Dismissal Order, or by the 2005 Settlement Agreement. *All* of the response costs claimed by Exxon Mobil and Quanta were incurred to discharge a common liability, and so are recoverable (if at all) under Section 113(f)(1). Under <u>Niagara Mohawk</u>, therefore, none of those costs are recoverable under Section 107(a).

### 2. Exxon Mobil and Quanta May Also Assert a Claim for Contribution Under CERCLA Section 113(f)(3)(B)

Exxon Mobil and Quanta may also assert a claim for contribution under Section 113(f)(3)(B) based upon a resolution of their CERCLA liability to the State of New York in an administrative settlement.

The DEC issued the 2002 Consent Order pursuant to its authority under state law and CERCLA. Statement of Undisputed Material Facts ¶ 4. The Order on Consent offers Exxon Mobil, Quanta, and nineteen other parties, upon the DEC's approval of a final report showing no further remedial action is necessary, a complete release of any claims that the DEC has or may have pursuant to Article 27, Title 13 of the New York Environmental Conservation Law "or pursuant to any other provision of statutory or common law involving or relating to investigative or remedial activities relative to or arising from hazardous wastes (or other contaminants addressed by Respondent pursuant to the ROD) at the Site."[8] <u>Id.</u> ¶ 5. The intention of the parties

---

[8] The absence of an explicit reference to CERCLA in the release does not prevent the 2002 Consent Order from constituting a settlement that resolves CERCLA liability. In addition to specific releases from CERCLA liability, <u>see, e.g.</u>, <u>Chitayat v. Vanderbilt Associates</u>, 702 F. Supp. 2d 69, 75, 81 (E.D.N.Y. 2010) (consent order that

to resolve CERCLA liability is made clear by a separate provision setting forth the parties' understanding that to the extent authorized by CERCLA Section 113, Exxon Mobil and Quanta "shall be deemed to have resolved [their] liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2) for 'matters addressed' pursuant to and in accordance with this Order." Id. ¶ 6. The "matters addressed" in the 2002 Consent Order include response actions taken by the respondents to implement the 2002 Consent Order, response costs incurred and to be incurred in connection with that work, and required reimbursement of the State's costs. Id. ¶ 7.

The broad language of the release in the 2002 Consent Order conditionally resolves the CERCLA liability of Exxon Mobil and Quanta to the State. Thus, in addition to a claim for contribution under Section 113(f)(1), Exxon Mobil and Quanta may assert a claim for contribution to recover response costs (if any) in excess of their equitable share under Section 113(f)(3)(B). Niagara Mohawk, therefore, bars their Section 107(a) claim.

---

"specifically refer[red] to CERCLA liability" triggered right to contribution under Section 113(f)(3)(B)), broader releases that encompass CERCLA liability also give rise to contribution rights under Section 113(f)(3)(B). Indeed, a DEC order that used the very same language as that in the 2002 Consent Order -- a release of all DEC claims under Article 27, Title 13 of the ECL "or pursuant to *any other provision of statutory or common law*" -- has been held to resolve CERCLA liability. Seneca Meadows, Inc. v. ECI Liquidating, Inc., 427 F. Supp. 2d 279, 286 (W.D.N.Y. 2006) (emphasis in original) (concluding that the phrase "any other provision of statutory . . . law . . . obviously includes CERCLA"); see also Niagara Mohawk, supra, 596 F.3d at 125-26 (DEC consent order qualified as an administrative settlement of CERCLA liability for purposes of Section 113(f)(3)(B) where it granted a release of all claims the DEC had or may have had "pursuant to State or Federal statutory or common law" relating to investigation or remediation of hazardous substances; id. at 120 (reference to "Federal statutory . . . law" relating to investigation or remediation of hazardous substances meant that consent order "specifically released [the plaintiff] from CERCLA liability").

## **CONCLUSION**

For all of the foregoing reasons, Third-Party Defendants Avco Corporation, Conoco Phillips Company, Crown Cork & Seal Company, Inc., Kraft Foods Global, Inc., Novelis Corporation (f/k/a ALCAN Aluminum Corporation), Rexam Beverage Can Company, River Terminal Development, Sunoco, Inc. (alleged to be a/k/a Sun Oil Refinery, f/k/a Sun Oil Co.), and Wyman-Gordon Company respectfully submit that Count I of the Third Amended Third-Party Complaint, under 42 U.S.C. § 9607(a), should be dismissed with prejudice.

Respectfully submitted,

**GIBBONS P.C.**
Attorneys for Third-Party Defendant
Rexam Beverage Can Company and
Liaison Counsel for Movants

By:  _____
William S. Hatfield

_____
Camille V. Otero

Dated: June 14, 2013