# GIBBONS

CAMILLE V. OTERO
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4509 Fax: (973) 639-8321
cotero@gibbonslaw.com

November 1, 2013

**VIA ECF**

Hon. Robert M. Levy, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  **DMJ Associates, L.L.C. v. Carl A. Capasso, et al.
           Civil Action No. 97-CV-7285 (DLI) (RML)
           <u>Oral Argument Requested</u>**

Dear Judge Levy:

        On behalf of Third-Party Defendant Rexam Beverage Can Company ("Rexam"), and also as liaison counsel to those Third-Party Defendants ("TPDs") in our Joint Defense Group (collectively the "G-9")[1] in the above-captioned matter, we respectfully request that you consider this reply to the October 29, 2013 letter [Docket Entry 1473] submitted by counsel for the Third-Party Plaintiffs ("TPPs") opposing the G-9's position that Phase I fact discovery on liability includes discovery on whether TPPs' alleged CERCLA response costs are consistent with the National Contingency Plan ("NCP"), 40 C.F.R. pt. 300. While the directives given at the October 2, 2013 case management conference did not expressly provide for a reply letter, we feel constrained to submit this letter to alert the Court to blatant inconsistencies between the position taken by TPPs in their October 29, 2013 opposition letter and the position taken in 2008 by counsel for TPPs on the record in open court.

        The entirety of TPPs' October 29, 2013 letter is devoted to presenting support for a single, unequivocally asserted proposition: that in this matter, "NCP compliance is *not* a liability issue." TPPs' Letter at 1 (emphasis in original). Whatever the merits of that position -- and, as pointed out in our letter dated October 15, 2013 [Docket Entry 1462], we contend that NCP compliance is indeed a liability issue --the position taken in TPPs' October 29, 2013 letter is diametrically opposed to the position taken by counsel for TPPs at the case management and discovery hearing before Your Honor on December 16, 2008 [transcript at Docket Entry 1408-1].

---

[1] The TPDs in our Joint Defense Group are: Avco Corporation, Conoco Phillips Company, Crown Cork & Seal Company, Inc., Kraft Foods Global, Inc., New York City Transit Authority (a/k/a MTA-New York City Transit), Novelis Corporation (f/k/a Alcan Aluminum Corporation), Rexam Beverage Can Company, River Terminal Development, and Sunoco, Inc.

The December 16, 2008 hearing concerned, among other issues, certain contention interrogatories served by TPPs on TPDs. One of those interrogatories (No. 28) requested all facts that supported an asserted affirmative defense based upon TPPs' failure to comply with the NCP. In arguing that discovery on that affirmative defense should be provided, counsel for TPPs told the Court that the topic of the interrogatory "is not a damages issue, it's a liability issue. If we haven't complied, then conceivably, our response costs could be limited but it's still a liability issue." (Transcript at 24:7-10) (copies of relevant pages attached). Counsel for TPPs then described a contention interrogatory on a different affirmative defense as "similar to the earlier one addressing the national contingency plan [No. 28]. . . . Those are all liability issues." (Transcript at 24:22-24). Counsel even noted how easy it would be to provide documents related to the issue of NCP compliance. (Transcript at 36:3-7). Your Honor later adopted the position advanced by counsel for TPPs that NCP is a liability issue for Phase 1 discovery. (Transcript at 37:9-13).[2]

Thus, when it was in TPPs' interest to do so, they characterized NCP compliance as a liability issue. Now, when seeking to avoid discovery on the same issue, they have adopted the opposite position, arguing that "NCP compliance is *not* a liability issue." TPPs' October 29, 2013 Letter at 1 (emphasis in original). We submit that Your Honor should not countenance such slippery behavior. *See New Hampshire v. Maine*, 532 U.S. 742 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (citation and internal quotation marks omitted). Regardless of the case law cited by TPPs, which we believe is a minority position on the issue, the law of this case, conclusively decided in 2008 in accordance with the position advanced by TPPs, is that NCP compliance is a liability issue to be addressed in Phase I. Indeed, under the case management orders that have governed this case since 2006, *see* Case Management Order (November 10, 2006) [Docket Entry 1061] ¶ 10, and specifically under this Court's August 15, 2013 Case Management Order (which was entered with the consent of TPPs),

> It shall not be grounds for a party to object and/or refuse to respond to a discovery request on the basis that the requested information or document pertains in part to "allocation" or "damages" issues, as long as the request and/or responsive information or document reasonably relates to Phase I information.

Case Management Order (August 15, 2013) [Docket Entry 1443] ¶ 16.

Finally, TPDs respectfully request oral argument before Your Honor on this matter to allow the parties to address these issues in further detail with the Court before a decision is

---

[2] The October 29, 2013 letter was submitted on behalf of both Third-Party Plaintiff Exxon Mobil Corporation ("Exxon") and Third-Party Plaintiff Quanta Resources Corporation ("Quanta"). At the 2008 hearing, Exxon and Quanta were represented by separate counsel, but only counsel for Quanta addressed the Court on this issue on behalf of TPPs, and the interrogatories in question were served jointly by Exxon and Quanta.

Hon. Robert M. Levy, U.S.M.J.
November 1, 2013
Page 3

rendered on this important discovery issue. We believe discovery on the NCP issue will assist the Court and the parties in narrowing the issues and claims in the case.

For the reasons set forth in our October 15, 2013 letter, the G-9 respectfully submits that the TPPs must provide detailed factual discovery under Phase I to show substantial compliance with the NCP.

Respectfully submitted,

*Camille V Otero /ACA*

Camille V. Otero
Director

cc: All Counsel of Record (via ECF)

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

--------------------------------X
                                :
DMJ ASSOCIATES, L.L.C.,         :
                                :      CV-97-7285 (DLI)(RML)
            Plaintiff,          :
                                :      December 16, 2008
     v.                         :
                                :      Brooklyn, New York
CAPASSO, et al.,                :
                                :
            Defendants.         :
                                :
--------------------------------X

         TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
             BEFORE THE HONORABLE ROBERT M. LEVY
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          ALLEN REITER, ESQ.




For the Defendant:          JAMES RYAN, ESQ.
                            SANDRA LEVY, ESQ.
                            CAMILLE OTERO, ESQ.




Court Transcriber:          ARIA TRANSCRIPTIONS
                            328 President Street, #3
                            Brooklyn, New York 11231
                            (718) 522-2335
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service

Case 1:97-cv-07285-DLI-RML   Document 1479   Filed 11/01/13   Page 5 of 7 PageID #: 12027
Case 1:97-cv-07285-DLI-RML   Document 1408-1   Filed 05/01/13   Page 25 of 100 PageID #: 8052

24

```
 1  I heard him correctly, it was 28, 30, 37 and 38.  Is that
 2  correct?
 3          MR. RYAN:  I gave those numbers by way of example.
 4  I don't have the contention interrogatories before me, so
 5  there may be additional interrogatories, your Honor.
 6          MR. REITER:  Well, at least dealing with those
 7  four, 28, that is interrogatory number 28 is not a damages
 8  issue, it's a liability issue.  If we haven't complied, then
 9  conceivably, our response costs could be limited but it's
10  still a liability issue.  If we haven't complied at all,
11  then we have no claim at all.
12          Number 30, our action is barred by the terms of
13  the settlement of the claims brought by the plaintiff.  That
14  clearly is not a damages issue.  That relates directly and
15  only to liability.
16          37:  We haven't suffered any injury, either
17  directly or indirectly.  If that affirmative defense were to
18  prevail, the case would be over.  Therefore, it's liability
19  and not damages.
20          38:  We haven't incurred any response costs,
21  similar to the earlier one addressing the national
22  contingency plan.  If we don't have response costs, we don't
23  have a 107 claim.  Those are all liability issues.
24          With respect to the argument made by Ms. Levy, she
25  pointed, among this set of interrogatories, to interrogatory
```

Case 1:97-cv-07285-DLI-RML   Document 1479   Filed 11/01/13   Page 6 of 7 PageID #: 12028
Case 1:97-cv-07285-DLI-RML   Document 1408-1   Filed 05/01/13   Page 37 of 100 PageID #: 8064

36

```
 1    were served, signs were put up, all done by DEC.
 2              THE COURT:  Right.
 3              MR. REITER:  And if any of the third party
 4    defendants have difficulty located that information, we'd be
 5    happy to provide it to give them specific Bates stamp
 6    numbers that would reflect that.  That's nothing that's hard
 7    to find.
 8              THE COURT:  Okay.
 9              MS. LEVY:  But then doesn't that answer the
10    question, your Honor?  They're saying they already know what
11    they did and then they're asking us to answer them as to
12    what they did.  This sort of comes back to the same point,
13    your Honor, that they're sort of suggesting that we have
14    certain knowledge that in fact is their knowledge, and that
15    our sort of telling them back what might -- if they're
16    saying -- and I must admit, I don't know those documents.
17    But assuming that those documents are in the production, the
18    exercise doesn't seem like a useful exercise, your Honor, in
19    that regard.
20              MR. REITER:  It does, your Honor, because it
21    eliminates that affirmative defense, because they can't come
22    in and say, we don't know.  And it's not our documents, it's
23    the DEC's documents.
24              THE COURT:  I understand.  So this is more like a
25    request for admission in that sense, isn't it?
```

Case 1:97-cv-07285-DLI-RML Document 1479 Filed 11/01/13 Page 7 of 7 PageID #: 12029
Case 1:97-cv-07285-DLI-RML Document 1408-1 Filed 05/01/13 Page 38 of 100 PageID #: 8065

37

1    MR. REITER: Well, contention interrogatories and
2  requests for admission are like VIN (ph) diagrams.
3    THE COURT: Right.
4    MR. REITER: Some places they intersect and some
5  places they don't, but that doesn't mean it's not a valid
6  contention interrogatory. And it is a threshold requirement
7  we have to establish in order to impose liability for our
8  107 claims against these defendants.
9    THE COURT: So just analyzing this, if we're using
10 the same framework for the analysis, I don't think the
11 burden is unreasonable here and I don't think that it's --
12 that it would be premature to do this at this time. I think
13 we'll include it in liability.
14   MR. RYAN: Just to be sure, your Honor, for those
15 parties who have not focused, as Sandra Levy has indicated,
16 on the NCP portion of this case and the documents that have
17 been produced with respect to that, we don't know. And
18 that's going to be the response for those parties in that
19 position. And I don't want to be here again in two or three
20 months, at plaintiff's motion to compel, to go through this
21 material, when we're still focusing on the liability phase
22 of the case.
23   THE COURT: That's why I mentioned the RFA's,
24 because I think then Mr. Reiter is going to say, well, what
25 about Bates stamp X, Y, Z, Q? Then it will be in effect in