# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

November 8, 2013

**Allen G. Reiter**
Partner
212.484.3915 DIRECT
212.484.3990 FAX
allen.reiter@arentfox.com

VIA ECF

Honorable Robert M. Levy
United States Magistrate Judge
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *DMJ v. Capasso*, CV 97 7285 (DLI) (RML)

Dear Judge Levy:

As the TPDs[1] concede, they were not permitted to submit their November 1, 2013 letter (Docket Entry 1479) under the schedule established at the October 2, 2013 Case Management Conference (the "CMC").  Moreover, if the TPDs wanted to make the argument that this discovery issue had been decided in 2008, they should have raised this argument in their October 15, 2013 letter (Docket Entry 1462), so that TPPs had the opportunity to oppose it.  Therefore, if Your Honor chooses to consider the arguments improperly made in TPDs' November 1 letter, TPPs respectfully request that Your Honor also consider this submission in response.

In their October letter, TPDs charge that "At the recent CMC, TPPs *wrongfully claimed* that they need only show some 'nominal' amount of NCP compliant costs to satisfy their burden to establish liability under Phase I fact discovery" (emphasis added).  As we demonstrated in our October 29, 2013 letter (Docket Entry 1473), the caselaw decisively refutes their contention.  Rather than acknowledge that they lacked any supporting authority for their position and that the authorities we cited foreclosed the matter, in their November 1 letter, the TPDs claim, without citing a single authority, that the caselaw we cited is a "minority position."  Their position is meritless.

Undeterred, the TPDs do not stop there.  Claiming to have been victimized by "slippery behavior," they now argue that the TPPs' position on discovery into NCP compliance is contradicted by the position we took at the December 8, 2008 conference, suggesting that we were misleading the Court. In doing so, the TPDs fail to point out that during the CMC, we stated that:  "It is correct that the NCP is a liability issue.  Once we spend one penny that is NCP-compliant, we have satisfied the liability issue.  After that, it's just a question of the extent of the liability."  (10/2/13 Tr. p. 89, *see* excerpts annexed as Ex. 1 hereto).  Seizing on the 2008 transcript and the Court's subsequent ruling, the TPDs argue that they are entitled to full-blown NCP discovery, notwithstanding that doing so would obliterate the demarcation in the CMO between liability and damages.  Nothing in the 2008 transcript or the recent CMC supports their position.

The TPDs do not dispute that they have received an enormous amount of material from the TPPs that shows – as a matter of law – that we have complied with the NCP.  NCP compliance is established as a matter of law if a party performs a remedial investigation or incurs *any* response costs in accordance

---

[1] Capitalized terms have the same meaning ascribed to them in TPPs' 10/29/13 letter (Docket Entry 1473).

555 West Fifth Street, 48th Floor    1675 Broadway    55 Second Street, 21st Floor    1717 K Street, NW
Los Angeles, CA 90013-1065    New York, NY 10019-5820    San Francisco, CA 94105-3470    Washington, DC 20036-5342
T 213.629.7400  F 213.629.7401    T 212.484.3900  F 212.484.3990    T 415.757.5500  F 415.757.5501    T 202.857.6000  F 202.857.6395

# Arent Fox

November 8, 2013
Page 2
Honorable Robert M. Levy

with a consent order from a state environmental agency, as is the case here (*see* TPP 10/29 Ltr. n.5). Thus, the only way the issues could be narrowed would be if *TPPs* moved for summary judgment, which we do not intend to do until Phase 2 (consistent with the law providing that NCP compliance is best reserved for *after* it has been determined that TPDs are liable for any response costs, *see, e.g., Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1059 (C.D. Cal. 2003)), unless Your Honor advances these matters from the damages phase to the liability phase.

TPDs do not dispute that myriad federal courts have consistently confirmed that NCP issues belong in the damages phase when a case, as here, has been bifurcated.  The TPDs' only point of disagreement with the TPPs is that TPDs urge this Court to deem this case different from the many that have come before and to effectively modify the CMO's bifurcated structure at this late stage in the game because they had to provide certain limited NCP-related responses many years ago in the lead-up to mediation.  This argument is completely misleading, ignores the reality of what has actually transpired between the parties, and should be rejected.

TPPs have already provided far more factual information regarding their NCP compliance than was ever requested from or provided by the TPDs up to this point in the case.  After TPDs were ordered, in December 2008, to provide factual information supporting their NCP-related affirmative defense, they provided *no* factual information to TPPs, but instead, members of the "Joint Defense Group" simply replied that they "no longer raise[] [NCP] as an affirmative defense, but rather reserve[d] [their] rights to hold the TPPs to their proofs …."  In effect, this is the same result obtained in *Buffalo Color Corp. v. AlliedSignal, Inc.*, 139 F. Supp. 2d 409, 426 (W.D.N.Y. 2001), in which the court dismissed the NCP-related affirmative defense "in the liability phase," and noted that it "may be considered in apportionment phase."

In addition to failing to disclose that they never provided any factual information to the TPPs in connection with the NCP issue, TPDs omit several other key facts in their quest to force TPPs to produce larger volumes of information now: (1) that TPPs have already produced to TPDs vast amounts of NCP-related information showing the response costs incurred over many years and relating to their ongoing remediation activities, and had done so even prior to December 2008; (2) that the Court examined the burden imposed upon the TPDs in requiring it to provide NCP-related responses, but the burden is not the same for TPPs for a variety of reasons; (3) that since December 2008, the mediation has come and gone;[2] (4) that TPDs previously argued that NCP is a damages issue; and (5) that TPDs concede now that the information they seek relates to the quantity of their damages and the amount of costs, and fail to note that the RI/FS and related materials (showing, *e.g.*, that the NYSDEC held a public hearing, served notices, posted signs, etc.) were produced to TPDs many years ago.

For example, in the transcript excerpt provided by TPDs, at p. 37, in requiring TPDs to support their NCP-related affirmative defense in 2008, Your Honor concluded that "I don't think the burden [upon TPDs] is unreasonable here …."  However, this determination followed a discussion in which it was made clear that the *TPPs* had already produced information to the TPDs that would contain the type of information sought – like "whether [TPPs] complied with the various parts of the NCP.  For example, the public participation part of the NCP" and that "[t]here was a public hearing that was held, there were documents that were placed in a library depository, notices were served, signs were put up, all

---

[2]  Your Honor may recall that, prior to the commencement of mediation in 2009, the parties advocated for the production of certain information that would not ordinarily be included in Phase 1 but which was deemed potentially useful in connection with attempts to settle the case.  In 2008 and 2009, NCP issues could have had an impact on the mediation, but as the mediation has concluded and there is no mediation presently ongoing or contemplated, there is no special circumstance that warrants the advancement of NCP discovery from Phase 2 into Phase 1.

# Arent Fox

November 8, 2013
Page 3
Honorable Robert M. Levy

done by DEC." TPPs even offered at that time that "if any of the third party defendants have difficulty locat[ing] that information [in the TPPs' production to the TPDs], we'd be happy to provide it …." (12/16/08 Tr. pp. 34-36, *see* excerpt annexed as Ex. 2 hereto).[3]

TPDs now argue that "discovery on the NCP issue will assist the Court and the parties in narrowing the issues and claims in the case" (11/1/13 Ltr. p. 3), but do not explain how or why this would be the case. And their statement is contradicted by the statements made in their October letter – for example, their expressed goal of "eliminating *portions* of the TPPs' claims for *damages*" (p. 3, emphasis added), effectively conceding that this is a Phase 2 issue and no efficiency is gained by accelerating it, and their earlier concession that the NCP is "irrelevant to the existing motions" (10/2/13 Tr. p. 99, *see* excerpts annexed as Ex. 1 hereto). Moreover, the materials TPDs seek, beyond what TPPs have already provided, relate to the amount of costs and issues that will implicate experts – in TPDs' words, whether the work was of "CERCLA-quality" (10/15 Ltr. n.3) and "responses relating to the cleanup work performed and costs incurred" (*id.*, p. 3) – which are clearly Phase 2 issues pursuant to the CMO.

In short, TPPs have already given a massive amount of NCP-related facts to TPDs and the remainder is properly reserved for Phase 2, as provided by applicable law and the CMO in this case. Nothing in the previous CMC's changes that conclusion. For these reasons and those contained in TPPs' October 29 letter, further NCP discovery should await Phase 2.

Respectfully submitted,

*/s/ Allen G. Reiter*

Allen G. Reiter

cc:    All Counsel (via ECF)

---

[3]  On behalf of the Federal TPDs, Ms. Levy observed (p. 36) that "assuming that those documents are in the production, the exercise [of TPDs providing further information] doesn't seem like a useful exercise ..." to which TPPs responded that it would eliminate the affirmative defense – which it did.

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


-----------------------------X
                             :
DMJ ASSOCIATES, LLC,         :
                             :      97-CV-7285 (DLI)(RML)
            Plaintiff,       :
                             :      October 2, 2013
                             :
            V.               :      Brooklyn, New York
                             :
CAPASSO, et al.,             :
                             :
            Defendant.       :
-----------------------------X


TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        ALLEN REITER, ESQ.
                          JENNIFER BOUGHER, ESQ.


For the Defendant:        WILLIAM HATFIELD, ESQ.
                          CAMILLE OTERO, ESQ.
                          SANDRA LEVY, ESQ.

Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1    respond to all of them by saying, see interrogatory

 2    number 28.  They cite to actually the same exact

 3    documents for each, and we're asking for damages with

 4    respect to -- one is Review Avenue, one is Capasso

 5    North, one is Capasso South, and they're references to

 6    the same exact documents.

 7               Again, there's no narrative.  To this day,

 8    your Honor, we're not 100% certain what they're

 9    claiming as the category of damages, and that's

10    something that they were obligated to provide us with

11    under Rule 26.  So if they're seeking something as a

12    recoverable response cost under CERCLA, we're trying to

13    find out, is it a cost that they claim to have

14    incurred, is it a cost that DMJ allegedly incurred and

15    sought from third party plaintiffs, and did third party

16    plaintiffs pay DMJ for some CERCLA recoverable response

17    costs and they're now seeking compensation from the

18    third party defendants?  We don't have an understanding

19    as to what the category of costs are that they're

20    seeking to recover.

21               (Attorney who is speaking here is not near a

22    microphone.

23               UNIDENTIFIED SPEAKER:  (Ui) determine if

24    those costs are out of the case.

25               MR. REITER:  Your Honor, the CMO draws a
```

1    clear demarcation between liability and damages.  It is
2    correct that the NCP is a liability issue.  Once we
3    spend one penny that is NCP-compliant, we have
4    satisfied the liability issue.  After that, it's just a
5    question of the extent of the liability.
6              In our Rule 26 production, notwithstanding
7    that demarcation between liability and damages that is
8    in the first paragraph of the CMO, we have been giving
9    them and we will be giving them all the material that
10   relates to the costs of the cleanup, because that's an
11   obligation under Rule 26.  But it's not an obligation
12   outside of Rule 26 because, as I said, once we spend
13   one penny, that takes care of the NCP-compliant issue
14   and everything else is damages.  If that demarcation is
15   ignored, then it renders the division of the discovery
16   in this case between liability and damages a nullity.
17             THE COURT:  What about the Keytronics (ph)?
18             MR. REITER:  The Keytronics information --
19   well, first --
20             THE COURT:  Would that go to standing?
21             MR. REITER:  DMJ's CERCLA costs would
22   consist of their Keytronic expenses and their NCP-
23   compliant expenses.  We subpoenaed that material from
24   DMJ and we gave it to the third party defendants.  They
25   also subpoena it.  This was years ago.  They failed to

```
 1    something to do with the claims that are remaining in
 2    the case.
 3             MR. REITER:  The theory of their 107 claim
 4    is that a Second Circuit case bars the continuation of
 5    this case under 107.  That's the only thing; it is a
 6    purely legal issue.  With respect to 113, their
 7    argument has nothing to do with NCP-compliant costs.
 8    It is that Quanta was a rogue operation, that it was in
 9    fact the continuation of Mahler --
10             MR. HATFIELD:  Your Honor --
11             MR. REITER:  -- which is false.  Please
12    don't interrupt.
13             And, therefore, Quanta's recklessness
14    precludes it from pursuing a 113 claim.  That has
15    nothing to do with whether the extent of our NCP-
16    compliant damages claims are two million, ten cents or
17    five billion dollars.  It's totally relevant.
18             MS. OTERO:  We said it was irrelevant to the
19    existing motions, that the motions were already
20    briefed.  But the judge asked -- my understanding of
21    what he asked was, would it be relevant to a future
22    motion, to the extent that there are remaining claims
23    in the case?  And my response was yes, it is, because
24    it's still an element of establishing your recovery
25    under CERCLA.
```

# Exhibit 2

Case 1:97-cv-07285-DLI-RML   Document 1486   Filed 11/08/13   Page 10 of 13 PageID #:
12049
Case 1:97-cv-07285-DLI-RML   Document 1486-1   Filed 05/01/13   Page 2 of 100 PageID #:
8029

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
DMJ ASSOCIATES, L.L.C.,     :
                            :     CV-97-7285 (DLI)(RML)
          Plaintiff,        :
                            :     December 16, 2008
     v.                     :
                            :     Brooklyn, New York
CAPASSO, et al.,            :
                            :
          Defendants.       :
                            :
----------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        ALLEN REITER, ESQ.



For the Defendant:        JAMES RYAN, ESQ.
                          SANDRA LEVY, ESQ.
                          CAMILLE OTERO, ESQ.



Court Transcriber:        ARIA TRANSCRIPTIONS
                          328 President Street, #3
                          Brooklyn, New York 11231
                          (718) 522-2335



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

Case 1:97-cv-07285-DLI-RML   Document 1486   Filed 11/08/13   Page 11 of 13 PageID #:
12050
Case 1:97-cv-07285-DLI-RML   Document 1486   Filed 05/01/13   Page 35 of 100 PageID #:
8062
34

```
1    deal with damages.

2          MS. LEVY:  It's just in the phasing, your Honor.

3    In the cases that actually look at the bifurcated -- in the

4    CIRCLA cases that look at bifurcated CIRCLA cases --

5          THE COURT:  Right.

6          MS. LEVY:  Obviously, there's not a lot of those

7    but the few that there are out there put NCP in the other

8    category, in the post-liability category.  It can be

9    determined either way.  I'm just saying that the

10   decisions --

11         THE COURT:  Right.

12         MS. LEVY:  And I'm not even saying those are

13   Circuit decision because this is usually at the district

14   court level.

15         THE COURT:  Right.

16         MS. LEVY:  But the cases that I've seen in that

17   regard are cases that put the NCP in the latter category.

18         THE COURT:  Right.  And what I would suggest is I

19   don't think that the NCP partakes of the problems that the

20   damages interrogatories have.  You're not really going to

21   need experts so much for that.  It doesn't really focus you

22   on a different, more burdensome aspect of discovery, unless

23   I'm missing something.

24         MS. LEVY:  We haven't focused on things like

25   whether they complied with the various parts of the NCP.
```

1   For example, the public participation part of the NCP.  It

2   hasn't been part of the focus of discovery to date, given

3   the perspective that we were looking at liability to date.

4            THE COURT:  Right.

5            MS. LEVY:  So I don't know whether we would be in

6   a position now to be able to do that at this point.

7            THE COURT:  Doesn't that mean that your answer

8   would be primarily, we don't know at this point, it's

9   premature?  I mean, that you could respond but you

10  wouldn't --

11           MS. LEVY:  I guess we could say that but then that

12  -- with all due respect, then that begs the question, your

13  Honor, if it is premature, then if we can determine that

14  here with your Honor, that that's premature, then we don't

15  even have to submit such a response.

16           THE COURT:  But wouldn't the question be, what do

17  you know and what don't you know at this time?  That's what

18  I understood Mr. Reiter to say.  So if you could simply say

19  what we know now and what we don't know -- for example, if

20  you don't know about public comment, then the answer is, we

21  haven't had an opportunity to get full information on that.

22           MR. REITER:  Your Honor, with respect to that

23  issue, that issue is completely answered in documents.

24  There was a public hearing that was held, there were

25  documents that were placed in a library depository, notices

Case 1:97-cv-07285-DLI-RML  Document 1486  Filed 11/08/13  Page 13 of 13 PageID #: 12052
Case 1:97-cv-07285-DLI-RML  Document 1485-2  Filed 05/01/13  Page 37 of 100 PageID #: 8064

36

```
1    were served, signs were put up, all done by DEC.

2           THE COURT:  Right.

3           MR. REITER:  And if any of the third party

4    defendants have difficulty located that information, we'd be

5    happy to provide it to give them specific Bates stamp

6    numbers that would reflect that.  That's nothing that's hard

7    to find.

8           THE COURT:  Okay.

9           MS. LEVY:  But then doesn't that answer the

10   question, your Honor?  They're saying they already know what

11   they did and then they're asking us to answer them as to

12   what they did.  This sort of comes back to the same point,

13   your Honor, that they're sort of suggesting that we have

14   certain knowledge that in fact is their knowledge, and that

15   our sort of telling them back what might -- if they're

16   saying -- and I must admit, I don't know those documents.

17   But assuming that those documents are in the production, the

18   exercise doesn't seem like a useful exercise, your Honor, in

19   that regard.

20          MR. REITER:  It does, your Honor, because it

21   eliminates that affirmative defense, because they can't come

22   in and say, we don't know.  And it's not our documents, it's

23   the DEC's documents.

24          THE COURT:  I understand.  So this is more like a

25   request for admission in that sense, isn't it?
```