

CAMILLE V. OTERO
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4509 Fax: (973) 639-8321
cotero@gibbonslaw.com

January 3, 2014

**VIA ECF**

Hon. Robert M. Levy, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

>  Re:  DMJ Associates, L.L.C., v. Carl A. Capasso, et al., v. Exxon Mobil Corp., et al. v. Ace Waste Oil, Inc., et al.
>  Civil Action No. 97-CV-7285 (DLI) (RML)

Dear Judge Levy:

      We represent Third-Party Defendant Rexam Beverage Can Company ("Rexam") in the above-captioned matter and write on behalf of Rexam and as liaison counsel to those Third-Party Defendants in our Joint Defense Group (collectively the "G-9")[1] to advise the Court of unresolved discovery disputes with Third-Party Plaintiffs Exxon Mobil Corporation ("Exxon") and Quanta Resources Corporation ("Quanta") (collectively "TPPs") as required by Rule 37.3 of the Federal Rules of Civil Procedure.  On Monday, December 23, 2013, we conducted a meet and confer with counsel for TPPs to try to resolve a number of discovery disputes that TPDs had with Exxon and Quanta.  Unfortunately, we were unable to resolve any of the ongoing discovery disputes and request the Court's assistance in resolving these matters at the upcoming case management conference ("CMC") on January 10, 2014.

      We attach copies of TPPs' November 20, 2013 correspondence that responds to the G-9's prior discovery deficiency letter dated July 1, 2013[2].  Those responses either contain no narratives or insufficient narratives, which fail to adequately address the points made by TPDs on the record, at length, on October 2, 2013 before Your Honor.

      The G-9 respectfully request that the Court address the following discovery disputes at the January 10th CMC:

---

[1] The Third-Party Defendants in our Joint Defense Group are: AVCO Corporation, Conoco Phillips Company, Crown Cork & Seal Company, Inc., Kraft Foods Global, Inc., New York City Transit Authority (a/k/a MTA-New York City Transit), Novelis Corporation (f/k/a ALCAN Aluminum Corporation), Rexam Beverage Can Company, River Terminal Development, and Sunoco, Inc.

[2] When we submitted the July 1, 2013 letter there were 10 parties in our Joint Defense Group and, thus, we were referred to as the G-10.  One party has since dropped out of the group.

Hon. Robert M. Levy, U.S.M.J.
January 3, 2014
Page 2

1. TPPs' were directed at the October 2, 2013 CMC to provide narrative responses to the G-9's written discovery demands and to supplement their respective document productions (including electronically stored information ("ESI")). TPPs' failed to provide the narrative responses as directed by the Court. (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 67; 72; 79-80; 86). The narrative responses that TPPs did provide to a limited number of Interrogatories were not responsive and failed to provide each of the TPDs with the specific information they sought to obtain, for example: how TPPs believe each TPD is connected to the "Quanta Site related contamination" at issue in the case. (*See* October 2, 2013 Transcript [Docket No. 1461 at p. 81-86). Moreover, to date, neither TPP has adequately supplemented its document production or provided any ESI, even though TPPs expressly agreed to do so on the record. (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 25-26). TPPs have incorrectly and inappropriately taken the position that the majority of the TPDs' Interrogatories and Document Demands relate solely to damages/allocation, as opposed to liability, and have refused to answer at this time.

2. Notwithstanding the positions taken by TPDs at the October 2, 2013 CMC, regarding the very clear requirements of Rule 33(d), TPPs continue to cite to thousands of pages of documents in response to Interrogatories without providing sufficient (and in most cases any) narrative responses. Rule 33(d) permits a party to cite to documents in lieu of providing narrative responses to discovery demands if those documents are the party's own business records. Here, the documents cited are not Exxon's business records, so Exxon remains in violation of Rule 33(d). It remains unclear what Quanta's position is in this regard. The majority of the documents cited to by Quanta appear to be Mahler business records. If Quanta intends to continue to rely on those documents in lieu of providing adequate narrative responses then it must admit on the record that the Mahler business documents are Quanta's business documents and that it is the successor to Mahler's business. If not, then Quanta also remains in violation of Rule 33(d) and TPPs' Interrogatory responses collectively remain deficient. (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 32-33; 44-50).

3. TPPs failed to identify and explain the role of Crestwood Environmental Consultants ("Crestwood") and produce documents from that entity. Indeed, at a recent Status Conference in the Phoenix Beverage litigation, Judge Orenstein questioned counsel for Quanta about their position with respect to Crestwood on the record. (*See* December 13, 2013 Phoenix Beverage Transcript [Docket No. 340] at p. 21-23). That information has not been disclosed to TPDs in any of TPPs prior discovery responses in this matter.

4. TPPs failed to provide factual information obtained from Mansfield or other interviews of persons with knowledge in the case. (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 26-32).

5. TPPs produced some additional documents on November 22, 2013, that they claim are supplements to their Rule 26 disclosures but continue to refuse to advise what the documents are responsive to. Rather, TPPs simply made another "document dump" without any

Hon. Robert M. Levy, U.S.M.J.
January 3, 2014
Page 3

explanation.  The documents were produced in single page .TIFF files and many were partial reports.  Further, at the last CMC, TPPs claimed that there is material that goes beyond their Rule 26 obligations that relates to cost issues but they have failed to identify what that information is or the subject matters that it entails.  (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 95).

6. TPPs still have not produced a privilege log that reflects documents that they have withheld as "privileged" in this matter, despite agreeing to do so on multiple occasions.  Notably, at the meet and confer in late December, counsel for Quanta took the position that to the extent it makes any supplemental "productions" under Rule 26, it is not required to identify what documents it withholds as privileged.  TPPs also stated that it has not prepared any privilege logs for materials that were withheld from its prior Rule 26 productions, which have been rolling in this case since at least 2006.  We are unclear as to the legal basis and/or support for this position.  Also, counsel for Quanta has taken the position that any privileged documents that may relate to both liability and damages need not be logged during Phase II discovery, which TPDs do not agree with.  TPDs are entitled to a log to review and determine if the document is related to liability in Phase I discovery.  Finally, as we previously advised Your Honor, after more than 8 years of litigation, TPPs have yet to produce a log that lists a single document prepared after the 1980's that TPPs assert is being withheld as privileged.  (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 75; 101-105).

7. At the October 2, 2013 CMC, the Court directed the parties to submit letter briefs addressing their respective positions on National Contingency Plan ("NCP") compliance and whether such discovery should be produced and included as part of liability in Phase I or as part of damages in Phase II.  It is the G-9's position that NCP compliance issues should be addressed as part of the liability phase for the various reasons set forth in the G-9's letter briefs.  TPPs, however, have taken the position that discovery as to NCP compliance should not be addressed until the damages phase of the case.  This issue needs to be resolved by the Court.  (*See* October 2, 2013 Transcript [Docket No. 1461] at p. 86-101).

We look forward to discussing these and other matters with the Court including, but not limited to, scheduling hearings for each of the pending motions at the January 10, 2014 CMC.

Respectfully submitted,


/s/ Camille V. Otero
Director


cc: All Counsel of Record