# Arent Fox

Arent Fox LLP / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

January 7, 2014

**Allen G. Reiter**
Partner
212.484.3915 DIRECT
212.484.3990 FAX
allen.reiter@arentfox.com

VIA ECF

Honorable Robert M. Levy
United States Magistrate Judge
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *DMJ v. Capasso*, CV 97 7285 (DLI) (RML)

Dear Judge Levy:

We write on behalf of Quanta Resources Corp. ("Quanta")[1] in response to the January 3, 2014 letter filed on behalf of certain of the Third-Party Defendants, in which the "G-9" alerted Your Honor to various items that they intend to raise at the January 10, 2014 CMC.[2] In the interest of facilitating that discussion at the CMC and for the Court's information, this letter contains Quanta's position with respect to the raised items, particularly where the G-9's letter either omits relevant information or misstates Quanta's position. Of course, we are prepared to address each of the identified items in greater detail at the CMC, along with any additional items that may be added to the agenda.

Quanta has provided complete narrative responses to each Phase I-related interrogatory in full compliance with Your Honor's directive. Although it claims that each of Quanta's responses is deficient, the G-9 does not detail how or why it believes this is the case.[3] Quanta stands by the sufficiency of its responses, and is prepared to discuss each in detail if and as requested at the CMC.

The only specific complaint made by the G-9 about Quanta's supplemental narrative responses concerns the G-9's demand for information regarding "how TPPs believe each TPD is connected to the 'Quanta Site related contamination' at issue in the case." (Letter at 2, ¶ 1). But a review of Quanta's supplemental, narrative response to Interrogatory 43, annexed to the G-9's letter, makes clear that Quanta has fully complied with the Court's directive. In that response, Quanta explained the basis for its belief that each TPD's waste contributed to the contamination, including Quanta's transshipment theory of the case, and also including that each TPD arranged for the disposal or treatment of its waste

---

[1] Exxon Mobil Corporation joins in Quanta's responses and objections, except for Quanta's response to paragraph 2 of the G-9's correspondence, which was directed solely at Quanta.

[2] Unless otherwise defined herein, capitalized terms have the same meaning ascribed to them in the January 3, 2014 letter filed by counsel for Third-Party Defendant Rexam.

[3] The G-9 generally asserts, without any mention of specific interrogatories/responses, that certain of the interrogatories pertain to liability rather than damages and therefore require a response in Phase I. Quanta's Phase II objections are made in good faith, and the G-9 has not cited to even a single example of why, in their view, this is not the case. Nothing in Your Honor's order at the October CMC modified the phased structure of this litigation or required TPPs to respond to Phase II interrogatories now.

**Arent Fox**

January 7, 2014
Page 2
Honorable Robert M. Levy

with one of the Mahler Companies, and that the waste that contributed to the contamination included constituents found in each of the TPDs' waste – with specific reference to the RI/FS, which explains what constituents contributed to the contamination and which was produced to the TPDs. This response is entirely consistent with the discussion and order at the last CMC, as reflected in the transcript pages cited by the G-9.

Moreover, the G-9 neglects to point out that, in its previous response to this interrogatory, Quanta identified documents evidencing each individual TPD's nexus to the Quanta Facility. These documents were produced in a highly organized fashion, making it simple for the TPDs to locate which documents pertain to each individual TPD. Attached hereto as Exhibit 1 is a chart breaking down the Bates ranges referenced in the TPPs' original response to Interrogatory 43 to show which specific ranges relate to each individual TPD. Attached hereto as Exhibits 2 and 3 are portions of the disc directories[4] for the two large Rule 26 productions which were referenced in the TPPs' original response to Interrogatory 43 demonstrating that, as a result of the high level of organization of the materials produced by the TPPs to the TPDs, the TPDs have long had this information.[5] There is simply no basis for the TPDs to claim that Quanta's responses are in any way inadequate, given that Quanta has provided: (1) detailed narratives that explain Quanta's theory of the case and how each TPD is connected to the Site, and (2) documents, organized and labeled alphabetically by individual TPD, that support Quanta's theory and connect each individual TPD to the Site.

The G-9's argument regarding Rule 33(d) is moot, since, as the G-9 acknowledges in its letter (at 2, ¶ 2), "Rule 33(d) permits a party to cite to documents *in lieu of providing narrative responses* to discovery demands..." (emphasis added) and Quanta has now provided a narrative response to each and every Phase I interrogatory. In providing its supplemental, narrative responses, Quanta did not delete its earlier references to documents upon which it relies, although the TPDs are free to ignore that information if they prefer; it remains as a supplement to the narrative responses, and is wholly compliant with Rule 33(d).

Quanta explained the role of Cresswood Environmental Consultants ("Cresswood")[6] long ago to the Third-Party Defendants in responding to the TPDs' interrogatory number 11. Specifically, the TPPs explained that "Cresswood reviews the terms of every contract for the various tasks required to comply with the ROD, and enters into those contracts only after its review. Cresswood has not provided invoices to the Third-Party Plaintiffs reflecting its services." There is no further information to provide.

Quanta is not in possession of "factual information obtained from Mansfield or other interviews of persons with knowledge in the case" (Letter at 2, ¶ 4) that has not already been produced in this case, so the issue is moot. In any event, even if Quanta had such information, it would have been privileged.

The G-9's assertion that "TPPs still have not produced a privilege log that reflects documents that they have withheld as 'privileged' in this matter" is simply false. The TPPs produced a privilege log, as has

---

[4] Only portions are annexed as the complete disc directories encompass over 2000 pages because of the number of documents produced.

[5] The TPPs have never made any "document dump" as argued in the G-9's letter, para. 5. Instead, each production has been in full compliance with Rule 26.

[6] The G-9's letter refers to "Crestwood", which we assume is meant to refer to "Cresswood." Quanta is not aware of any entity known as "Crestwood" that is relevant to this case.

# Arent Fox

January 7, 2014
Page 3
Honorable Robert M. Levy

been repeatedly acknowledged and is again implicitly acknowledged in paragraph 6 of the G-9's letter (complaining that the log does not include any documents dated after the 1980s). Quanta has repeatedly told Rexam's counsel that it intends to comply with the mandate in the CMO that privilege logs are to be produced within 60 days of document productions; that deadline has not yet passed. Quanta intends to log any Phase I documents that it withholds on the basis of privilege, and has never stated otherwise to the TPDs. Of course, there is a universe of Phase II documents, which will be produced and/or logged as appropriate in Phase II. Much of the newly-created material, and especially electronically-stored information, pertains only to the damages/allocation phase (primarily, the costs of clean-up) and not liability, and therefore is not ripe for production or logging in Phase I. In short, Quanta intends to timely log and produce its responsive Phase I materials in Phase I, and its responsive Phase II materials in Phase II.

Thank you for your consideration.

Respectfully submitted,

 /s/ Allen G. Reiter

Allen G. Reiter

cc: All Counsel (via ECF)