# EXHIBIT A

OFFICE COPY

Exhibit "G"

330

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                     :
         In re                       :
                                     :
REVERE COPPER AND BRASS              :
   INCORPORATED,
BEDFORD ASSETS CORPORATION,          :
   f/k/a JOHN I. PAULDING, INC.,
REVERE COPPER PRODUCTS, INC.,        :   Case Nos.
REVERE EXTRUDERS, INC.,                   82 B 12073 (PA)
REVERE FOIL CONTAINERS, INC.,        :   to 82 B 12086 (PA)
REVERE RESEARCH, INC.,                    inclusive, and
REVERE SOLAR AND ARCHITECTURAL       :   Case Nos.
   PRODUCTS, INC.,                        83 B 10791 (PA) and
REVERE TECHNOLOGY AND                :   83 B 11703 (PA)
   CONSULTING COMPANY, INC.,
REVERE WARE COURTESY STORES, INC.,   :
WELLS ALUMINUM CORPORATION,
WELLS ALUMINUM, INC.,                :
WELLS ALUMINUM SOUTHEAST, INC.,
WELLS ALUMINUM MOULTRIE, INC.,       :
NORTH AMERICAN ALUMINUM
   CORPORATION,                      :
REVERE ALUMINUM BUILDING
   PRODUCTS, INC., and               :
WELLS CARMEL ALUMINUM, INC.,
                                     :
                 Debtors.            :
------------------------------------x

[RECEIVED JUL 30 1985 U.S. BANKRUPTCY COURT SOUTHERN DISTRICT OF N.Y. stamp]

ORDER CONFIRMING PLAN

Revere Copper and Brass Incorporated, Bedford Assets Corporation, f/k/a John I. Paulding, Inc., Revere Copper Products, Inc., Revere Extruders, Inc., Revere Foil Containers, Inc., Revere Research, Inc., Revere Solar and Architectural Products, Inc., Revere Technology and Consulting Company, Inc., Revere Ware Courtesy Stores, Inc., Wells

Aluminum Corporation, Wells Aluminum, Inc., Wells Aluminum Southeast, Inc., Wells Aluminum Moultrie, Inc., North American Aluminum Corporation, Revere Aluminum Building Products, Inc., and Wells Carmel Aluminum, Inc. (singularly, a "Debtor" and, collectively, the "Debtors"), having proposed and filed the Debtors' Amended Joint Plan of Reorganization (the "Plan")[1] under chapter 11, title 11, United States Code (the "Bankruptcy Code") on June 6, 1985, and copies of the Plan and of the Disclosure Statement with respect to the Plan approved by the Court on June 6, 1985, having been transmitted to the holders of claims against and interests in the Debtors; and the Plan having been technically amended by the Technical Amendments of Debtors' Amended Joint Plan of Reorganization, dated July 29, 1985, approved by Order of the Court, dated July 29, 1985, (the Plan, as so amended, being hereinafter referred to as the "Amended Plan"); and the objections to confirmation of the Amended Plan filed with the Court (the "Objections") having been considered by the Court; and

It having been determined after notice and a hearing that:

---

1. Defined terms not otherwise defined in this Order shall have the same meanings as set forth in the Amended Plan.

2

A. The Amended Plan complies with the applicable provisions of chapter 11 of the Bankruptcy Code;

B. The proponents of the Amended Plan comply with the applicable provisions of the Bankruptcy Code;

C. The Amended Plan has been proposed in good faith and not by any means forbidden by law;

D. (i) Any payment made or promised by the proponents or by any person issuing securities or acquiring property under the Amended Plan, for services or for costs and expenses in, or in connection with, these chapter 11 cases or in connection with the Amended Plan and incident to these chapter 11 cases, has been disclosed to the Court; and

(ii) Any such payment made before confirmation of the Amended Plan is reasonable; or if such payment is to be fixed after confirmation of the Amended Plan, such payment is subject to the approval of the Court as reasonable;

E. (i) The proponents of the Amended Plan have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Amended Plan, as a director, officer or voting trustee of any of the Debtors; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(ii) The proponents of the Amended Plan have disclosed the identity of any insider that will be employed or retained by each of the reorganized Debtors, and the nature of any compensation for such insider;

F. With respect to each class, each holder of a claim or interest of such class has accepted the Amended Plan, or will receive or retain under the Amended Plan on account of such claim or interest property of a value, as of the Consummation Date of the Amended Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date;

G. With respect to each class of claims, such class has accepted the Amended Plan, or such class is not impaired under the Amended Plan;

H. With respect to each class of interests, such class has accepted the Amended Plan or, such class is not impaired under the Amended Plan.

I. Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Amended Plan provides that:

(i) with respect to a claim of a kind specified in sections 507(a)(1) or 507(a)(2) of the Bankruptcy Code, as of the Consummation Date of the Amended Plan, the

holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4) or 507(a)(5) of the Bankruptcy Code, each holder of a claim in such class will receive -

(a) if such class has accepted the Amended Plan, deferred cash payments of a value, as of the Consummation Date of the Amended Plan, equal to the allowed amount of such claim; or

(b) if such class has not accepted the Amended Plan, cash on the Consummation Date of the Amended Plan equal to the allowed amount of such claim; and

(iii) with respect to a claim of a kind specified in section 507(a)(6) of the Bankruptcy Code, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such claim, of a value, as of the Consummation Date of the Amended Plan, equal to the allowed amount of such claim;

J. At least one class of claims has accepted the Amended Plan, determined without including any acceptance of the Amended Plan by an insider holding a claim of such class; and

5

K. Confirmation of the Amended Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors; it is

ORDERED that

1. The Objections be, and they hereby are, overruled and denied in all respects.

2. The Amended Plan, a copy of which is annexed hereto as Exhibit "A," be, and the same hereby is, confirmed.

3. Each of the Debtors be, and hereby is, discharged from all debts that arose against any or all of them before the date of this Order, including, without limitation, any debts based upon guarantees of collection, payment, or performance of any obligation of any of the Debtors, and any clause or provision of subordination in any agreement of any of the Debtors, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, other than:

> (A) Administration Expenses representing liabilities incurred in the ordinary course of business by any of the debtors-in-possession, or liabilities arising under loans or advances to any of the debtors-in-possession, whether or not incurred in the ordinary course of business, which Administration Expenses shall be assumed and paid by the Debtors in accordance with the terms and conditions of any agreements relating thereto;
>
> (B) Administration Expenses representing allowances of compensation or reimbursement of expenses allowable pursuant to sections 330 and 503(b)(3)(D) of the Bankruptcy Code;

(C) Any obligations of Revere Copper and Brass Incorporated ("Revere") in respect of that certain Guaranty, dated as of March 15, 1979, made by Revere in favor of Manufacturers Hanover Leasing Corporation, United California Bank, Centerre Bank, National Association, Mellon National Leasing and Management Corporation and Norlease, Inc. and First Trust Company of Ohio, as Trustee, relating to the Mikropul dry scrubber system of Ormet Corporation; and

(D) Any clause or provision of subordination contained in the Subordination Agreement, dated as of 12:01 a.m., March 15, 1979, among Ormet Corporation, Consolidated Aluminum Corporation and Revere or in any of the Subordinated Notes of Ormet Corporation referred to therein which are payable to Revere;

whether or not (i) a proof of claim based on such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) such claim is allowed under section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Amended Plan.

4. Any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of any of the Debtors with respect to any debt discharged hereunder, be, and it hereby is, rendered null and void.

5. The commencement or continuation of any action, the employment of process, or any act to collect, recover or offset any debt discharged hereunder as a personal liability

7

of any of the Debtors, or from property of any of the Debtors be, and it hereby is, forever enjoined.

6. All distributions of cash, New Debentures, Subordinated Notes, and Revere Common Stock or other consideration required to be made by Revere or any other of the Debtors pursuant to the Amended Plan shall be made within such time as provided by the Amended Plan and all such distributions shall be timely and proper if mailed by first class mail on or before the distribution dates set forth in the Amended Plan to the last known address of the Persons entitled thereto.

7. Contested Claims against any and all of the Debtors shall be resolved as provided in Article 26 of the Amended Plan.

8. Within ninety (90) days after entry of this Order, or within such further time as the Court may allow, the Debtors shall file with the Court a report which shall set forth the actions taken and the progress made towards the consummation of the Amended Plan.

9. The Court shall retain jurisdiction over these chapter 11 cases for the purposes of determining all disputes relating to Claims, Equity Interests and other issues presented by or arising under the Amended Plan, including, without limitation, any disputes among Creditors with respect to

8

their Claims, and to issue such orders as may be necessary for the execution of the Amended Plan and to determine all other matters which may be pending on the Confirmation Date, and further including all applications for allowance of compensation or reimbursement of expenses as costs and expenses of administration of these chapter 11 cases or as otherwise provided for in the Amended Plan.

10. The Industrial Development Board of the City of Scottsboro, Alabama (the "Development Board") be, and it hereby is, ordered, any provision of the Reduction Plant Lease Agreement to the contrary notwithstanding, to execute and deliver on the Consummation Date a Second Supplemental Lease Agreement, substantially in the form of Exhibit "C" to the Amended Plan, and, the Bank of New England, N.A. and James D. Renger, as Reduction Plant Indenture Trustees, be, and each of them hereby is, ordered, any provision of the Reduction Plant Indenture to the contrary notwithstanding, to give its written consent to the execution of such Second Supplemental Lease Agreement.

11. The Development Board, and the Bank of New England, N.A. and James D. Renger, as Reduction Plant Indenture Trustees, be, and each of them hereby is, ordered, any provision of the Reduction Plant Indenture to the contrary notwithstanding, to execute and deliver on the Consummation

9

Date a Second Supplemental Mortgage and Indenture of Trust, substantially in the form of Exhibit "D" to the Amended Plan.

12. The Bank of New England, N.A., as the Reduction Plant Indenture Trustee, be and it hereby is, ordered, any provision in the Reduction Plant Indenture to the contrary notwithstanding, to record the Second Supplemental Lease Agreement and the Second Supplemental Mortgage and Indenture of Trust in the office of the Judge of Probate of Jackson County, Alabama.

13. The Bank of New England, N.A. and James D. Renger, as Reduction Plant Indenture Trustees, be and each of them hereby is, ordered, any provision of the Reduction Plant Indenture to the contrary notwithstanding, (i) to waive, as of the Consummation Date, all defaults or events of defaults under Section 1001 of the Reduction Plant Indenture which shall exist or be continuing as of the Consummation Date and (ii) to rescind, as of the Consummation Date, any and all declarations of acceleration of principal of, and interest on, the Reduction Plant Bonds made on such date or prior thereto pursuant to Section 1002 of the Reduction Plant Indenture.

14. The New Jersey Economic Development Authority, Marine Midland Bank, N.A., and Centerre Bank, N.A., be, and each of them hereby is, ordered to execute and deliver on the

Consummation Date a First Supplemental Bond Agreement and a First Supplemental Indenture of Trust, substantially in the forms of Exhibits "G" and "H" to the Amended Plan, respectively.

15. All applications for final allowances of compensation and reimbursement of disbursements pursuant to sections 330 and 502(b) of the Bankruptcy Code shall be filed with the Court and served upon the Debtors within thirty (30) days from and after the Consummation Date.

16. Within eleven (11) days after entry of this Order, or within such further time as the Court may allow, the Debtors shall (i) mail to all creditors and other parties in interest notice of the entry of this Order and (ii) shall publish on one occasion in the New York Times and Wall Street Journal a notice of the entry of this Order.

Dated: New York, New York
July 29, 1985
At 6:00 P.M.

/s/ Prudence B. Abram
United States Bankruptcy Judge