# EXHIBIT B

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK

x- - - - - - - - - - - - - - - x
IN THE MATTER OF:                . Case No. 82-12073-SCC
                                 .
                                 . One Bowling Green
REVERE COPPER AND BRASS, INC., . New York, New York 10004
                                 .
          Debtor                 . April 17, 2014
- - - - - - - - - - - - - - - -.
```

                 TRANSCRIPT OF EX PARTE MOTION TO REOPEN CHAPTER 11
                    BEFORE THE HONORABLE SHELLEY C. CHAPMAN,
                        UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                 BOND SCHOENECK & KING
                            By:  THOMAS R. SMITH, ESQ.
                                 JOSEPH ZAGRANICZNY, ESQ.
                            One Lincoln Center
                            Syracuse, NY  13202

For Quanta:                 ARENT FOX
                            By:  GEORGE P. ANGELICH, ESQ.
                                 ALLEN G. REITER, ESQ.
                                 JENNIFER BOUGHER, ESQ.
                                 GEORGE V. UTLIK, ESQ.
                            1875 Broadway
                            New York, NY  10019

For ExxonMobil:             McCUSKER ANSELMI ROSEN & CARVELLI
                            By:  ANDREW ANSELMI, ESQ.
                            210 Park Avenue, Suite 301
                            Florham Park,  NJ  07932

ECRO:                                     F. Ferguson
Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**800 603-6212**
**(732) 263-0044     Fax No. 732-865-7179**
www.tgribbentranscription.com

2

1                          I N D E X

2

3

4    ORAL ARGUMENT                              PAGE

5

6         BY MR. SMITH                          4

7         BY MR. REITER                         9

8

9    DECISION                                   17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                           3

1           THE COURT:  All right, let's do Revere Copper,

2     please.  All right, why don't we take some appearances.

3           MR. SMITH:  For Revere Copper products, my name is

4     Thomas Smith.

5           MR. ZAGRANICZNY:  And Your Honor, Joe Zagraniczny

6     from Bond Schoeneck and King.

7           MR. ANGELICH:  Good afternoon, Your Honor, George

8     Angelich, Arent Fox, counsel for Quanta.  With me is Alan

9     Reiter, Jennifer Bougher and George Utlik.

10          THE COURT:  Okay.

11          MR. ANSELMI:  Good morning, Your Honor, Andrew

12    Anselmi from the law firm of McCusker Anselmi Rosen and

13    Carvelli on Exxon Mobil.

14          THE COURT:  Okay.  All right, have a seat.  So this

15    is in the category of an oldie but goodie.  The reason it came

16    to me is because when I took the bench four years ago, all of

17    Judge Beatty's, or even Judge Abrams' cases came to me.  It's

18    that old that it's got both sets of initials in some of the

19    papers.  So I have read the papers.  And I guess Mr. Smith,

20    maybe I'll start with you.  And focus in on the key thing that

21    is of concern to me.  And that I don't understand.

22          The litigations has been pending in the Eastern

23    District for quite a long time.  And it's not just kind of

24    fresh out of the box.  I mean, there's been arguments made,

25    there have been counterclaims, there's been affirmative

Smith/Argument                            4

1    defenses.  And it's now, you know, 2014.  So I don't understand

2    at all what it is that prompted you to, at this, what I view

3    frankly as a pretty late date, coming across the river and

4    saying, you know, enforce this piece of paper.  I just don't

5    understand it. So maybe you could enlighten me on that.

6           MR. SMITH:  Sure, Your Honor, and obviously a good

7    question.  The litigation, as we tried to explain in the

8    papers, even though it has been going on for a period of time,

9    it has been moving very slowly.  And there was, a literally

10   about a four year period of time when all of the parties were

11   trying to negotiate a settlement with the intervention of a

12   mediator.

13          Our hope was that we would never have to bring this

14   motion, either in the Eastern District or here, because we

15   thought that the parties were proceeding a path that would lead

16   to a negotiated settlement.  We were hopeful of that.  It

17   became clear at the conclusion of this long period of

18   mediation, that it wasn't going to work.  Actually at the time

19   that the mediation concluded, while the third party plaintiffs,

20   I'll refer to them as the Exxon and Quanta, had been

21   negotiating with 14 parties in one group and four parties in

22   another group of which Revere was one.  They initially said

23   that, we've reached an impasse with the 14, but we're willing

24   to continue talking to the four, which included Revere.

25          Well, very quickly it became clear after that that we

Smith/Argument                                    5

1    weren't going anywhere with those negotiations.  And at that

2    point the litigation resumed.  So the litigation really has

3    been active only during the last year.

4           Now prior to the mediation period, it's true, there

5    was a period of time where pleadings were exchanged, there was

6    some paper discovery.  A lot of that went on with relatively

7    little active involvement on Revere's part.  We did what we had

8    to do.  We answered questions --

9           THE COURT:  But the part that I don't understand is

10   that I would have thought, maybe there were other strategic of

11   tactical reasons for not doing it, but that if Revere believed

12   that this was a no brainer in the sense of it having been

13   discharged by the Bankruptcy, then I would have thought the

14   first move would be to go to the District Court and say, we

15   don't want to participate in mediation, we don't want to

16   participate in discovery.  We're out of here.  Here's a three

17   page motion. These claims are barred, attach, see the order,

18   motion to dismiss.  And that didn't occur.

19          MR. SMITH:  That did not occur.

20          THE COURT:  So --

21          MR. SMITH:  And perhaps that was not a good strategic

22   decision on our part.  But, having said that, the first thing I

23   would say is, well, we firmly believe that we are correct, our

24   bankruptcy defense, it's probably not a "no brainer", okay that

25   there are issues to be brought before the Court.  Whether it's

Smith/Argument                                          6

1    in the Eastern District of here.  And that plus the fact that

2    we were able to, in effect, ride the coattails of some other

3    parties in the litigation while we were hoping for this

4    negotiation, was a reason we didn't bring it to either Court

5    sooner.

6                THE COURT:  But that --

7                MR. SMITH:  So here we are.

8                THE COURT:  Right, so that makes sense, but so, you

9    know, I'm comparing it in my mind to, you know, litigation

10   comes to an end in a particular court, and then not

11   infrequently, there's litigation in a subsequent case, over the

12   scope of the preclusive effect that the prior court orders had.

13   And in most instances, you will ask the subsequent court to

14   determine the scope of collateral estoppel, like that you don't

15   often, in the sense of maybe a confirmation order is a little

16   unusual, but usually the first Court doesn't say, and oh I

17   believe by the way, here's the extent of the preclusive effect.

18   You kind of, you say what you say, and then you go to the next

19   court. And if a party wants to assert that a party is estopped

20   or an issue is precluded, it's then the second court that would

21   decide that.

22               So, I suppose it's one thing to talk about going back

23   to literally the same Judge and saying, we're fighting over

24   what your order meant.  Please tell us what you meant.  But

25   here you have an order that is 20 plus years old, and don't you

1    think it's the case that the Judge in the Eastern District

2    could read it as well as I could?

3              MR. SMITH:  Well, that's --

4              THE COURT:  I realize that's not, that's a loaded

5    question to ask you.

6              MR. SMITH:  Obviously I'm not going to impute a

7    competency of any the Judges in any of the courts.

8              THE COURT:  Right.

9              MR. SMITH:  But one of the reasons that we came here

10   is that the issues that are to be decided here are uniquely

11   bankruptcy issues.  And, for example, the issue of whether the

12   prepetition contamination here gives rise to a claim under the

13   Bankruptcy Code, is one that's uniquely bankruptcy issue.  The

14   Second Circuit in Shadoqay (phonetic) said that in a similar

15   circumstance, that the issue is a bankruptcy issue not one of

16   circosubstantive (phonetic) law.  A reason to come to Your

17   Honor, because we think that's a bankruptcy issue.

18             In addition there's the issue of whether the debtor

19   or the creditors involves here got proper notice.  An issue

20   that is often addressed by a Bankruptcy Court, not saying that

21   it couldn't be addressed in the other court.  But we think it's

22   more appropriate here.

23             THE COURT:  Right.  Okay.

24             MR. SMITH:  Now, in addition we think it was more

25   appropriate to come here because, first of all, we have two

Reiter/Argument                                           8

1    litigations that are pending in the Eastern District, assigned

2    to two different District Court Judges, and two different

3    Magistrate Judges.  And they arise out of the same underlying

4    events, the same contamination that we're talking about, the

5    same prepetition conduct that's at issue.  So rather than raise

6    the issue in multiple places, we thought there was another

7    reason to come here.

8           In addition, we think that it's probably more

9    efficient to bring that issue here because, as you know, there

10   are many parties in each of those cases that are not directly

11   involved in these issues.  To the great extent the bankruptcy

12   issue that we want to litigate is sort of collateral to all of

13   the other stuff that's going on in those two cases.

14          So again, as a matter of efficiency, we thought it

15   would be better to have this Court address those issues which

16   if we're correct, would apply to both cases.  If we're wrong,

17   then we go on and litigate the cases as they're already being

18   litigated.  In the meantime, while we address these bankruptcy

19   issues here, the other cases can continue to go on.

20          And frankly, it's technically three cases right now,

21   because we have two different third party actions in the

22   Phoenix case, as well as the third party action in the DMJ

23   case.  And there's a possibility that a third case could arise

24   out of the same contamination.  So, we thought it would be more

25   efficient to have this Court address the issue.  If we're

1    correct, presumably it will resolve the issue in multiple

2    claims that are out there, rather than having to bring the same

3    issue to multiple Judges in the underlying litigation.

4           So I mean, we do think that there's a reason to be

5    here.  You know, plus it is this Court's order that we're

6    asking to have enforced.

7           THE COURT:  Okay.  Thank you.

8           MR. REITER:  Your Honor, Allen Reiter on behalf of

9    Quanta.  In response to the, I'd like to first address myself

10   to the responses that Mr. Smith gave to Your Honor's questions.

11          THE COURT:  Sure.

12          MR. REITER:  Revere really has no excuse for not

13   having brought a motion based its bankruptcy discharge in 2006.

14   There's no explanation that Mr. Smith can offer that explains

15   that.  His argument that we did what we had to do, is what any

16   party does in a litigation.  Of course you do what you have to

17   do.  It's also inaccurate because Revere alone has made a

18   motion for summary judgment based upon the validity of

19   assignments that as a result of that motion, is now an issue

20   pending before the DMJ litigation Judge, Judge Levy.  They're

21   the only party that brought that motion on.   No one else has

22   joined it.

23          In order to bring that motion on they had to write a

24   premotion conference letter, we then had a telephonic premotion

25   conference.  And then that motion was fully briefed months ago,

Reiter/Argument                                      10

1    before Judge Levy.  And we're simply awaiting a date for oral

2    argument.

3              The filing of that --

4              THE COURT:  What will be the net effect if they

5    prevail in that motion?  What's the relief that's requested?

6              MR. REITER:  They are contending that the, -- I need

7    to backup and explain a little bit of factual background to

8    answer that.  There was a case that was begun by a party in

9    1997 called DMJ.  That case settled in 2005.  And there was a

10   core group of settling defendants in that case.  And those

11   settling defendants included Quanta and Exxon and perhaps a

12   dozen other parties.

13             Those other parties, the non Exxon, non Quanta

14   parties, then assigned to Quanta and Exxon, their rights.  So

15   that Quanta and Exxon pursued not only our own individual

16   rights, but the contribution rights of all those other parties,

17   and as it later turned out the response cost of all those other

18   parties, against all of the PRPs, potentially responsible

19   parties, who had refused to participate in the cleanup.  They

20   are contending that those assignments are invalid, and that

21   Quanta and Exxon are therefore not real parties in interest

22   under Federal Rule 17.  That's a motion that they made

23   themselves, no one else has joined in.

24             So for Mr. Smith to say, we did what we had to do by

25   way of explanation which I think is in any case no explanation

Reiter/Argument                                11

1   at all, doesn't cover the filing, the unique filing of that

2   motion.  So I believe that his argument that what they've done

3   is minimal is undone by that role.

4        With respect to the issues that would be presented

5   before this Court, Mr. Smith maintains that they are merely

6   bankruptcy issues.  But they aren't.  They really are CERCLA

7   issues.  Mr. Smith both in his papers and in his oral

8   presentation cited to the Shadoqay decision.  And argued,

9   argued in is papers and argues here today, that the Shadoqay

10  stands for the proposition that if the conduct at issue that

11  gave rise to liability arose prepetition, those any such claims

12  based upon that conduct would be barred by an order of

13  consummation, which is what occurred here.

14       Puzzlingly, Mr. Smith neither in his presentation

15  today nor in his papers talked about the Duplan case a 2000

16  Second Circuit case, that post dates Shadoqay.  And in Duplan

17  the Court specifically found that merely because the conduct

18  giving rise to liability took place before the plan, does not

19  mean that the plan is barred, I'm sorry, that the claims are

20  barred.  And that's precisely what we have here.

21       What happened here was, yes, there's no dispute that

22  the conduct gave rise prior to the 1985 confirmation of

23  Revere's bankruptcy plan, but the statute was not enacted until

24  1986.  That's when Section 113 of CERCLA was enacted.  More so

25  and more importantly, under Section 113, as interpreted by a

Reiter/Argument                        12

1    Supreme Court case called <u>Cooper versus Avion</u> (phonetic), which

2    we cited in our papers, a party cannot willy-nilly just bring a

3    claim under 113.  There's a necessary predicate for that party

4    to be able to bring the 113.  That is, that party must be the

5    subject of a CERCLA 106 or 107 claim, or else it is unable to

6    maintain the 113 claim.

7          We were not subject to the CERCLA 107 claim until

8    1997.  So there is no possible way we could have brought that

9    claim before then. It would have been dismissible.  Secondly,

10   at the time we commenced our third party action in 2006 against

11   Revere and the other PRPs who hadn't participated in the

12   cleanup, we were not able to bring a claim under 107 because

13   the general ruling from courts was that if you yourself were a

14   PRP, even if you expended response costs you were not entitled

15   to seek those response costs under CERCLA 107.

16         In 2007, in a case called <u>Atlantic Research</u>, the

17   Supreme Court said, actually you can bring a 107 claim.  So it

18   was only then in 2007 that we could assert the 107 claim.  And

19   if you go back to the language of <u>Duplan</u>, that language is

20   really, really clear in saying that the existence of a valid

21   bankruptcy claim, and I'm quoting from page 151, that's 212 F.

22   3d, the case starts are 144, but the language I'm quoting is on

23   the bottom of page 151.  The existence of a valid bankruptcy

24   claim depends upon 1) whether the claimant possessed a right to

25   payment and 2) whether that right arose before the filing of

1    the petition.  Our right did not arise prior to the filing of

2    the petition.

3            So therefore, his argument that we have bankruptcy

4    issues here, it is really not accurate, because it does go back

5    and the Court would have to reconsider CERCLA in order to move

6    forward.

7            Mr. Smith also argues that one reason to come here

8    now is that there are multiple cases in the Eastern District.

9    I think he said there could be three, but right now there are

10   only two, --

11           THE COURT:  I think he said there are two, and then

12   there's one in Arizona.

13           MR. REITER:  No, not --

14           THE COURT:  No.

15           MR. SMITH:  No.

16           MR. REITER:  There are only two.

17           THE COURT:  There are two, okay.

18           MR. REITER:  Two pending.  And they are before

19   different Judges, but those Judges are coordinating their

20   effort.  And there's a specific example of that, which is in

21   the case before Judge Levy, the third party defendants moved to

22   dismiss the claim that Quanta and Exxon asserted under CERCLA

23   at 107.

24           Those third parties who were also third parties in

25   the new case, the Phoenix litigation, then asked Judge Chen to

Reiter/Argument                                    14

1    be able to make a similar motion and Judge Chen said, you're

2    not going to make that motion here, we're going to wait and see

3    what Judge Levy, and Judge Irizarry is necessary, do with the

4    pending 107 motion before them.  So even though those cases

5    have not been consolidated, there isn't a risk of contradictory

6    rulings and the same issues are not being litigated in both.

7              THE COURT:  So pause on that for one moment.  So

8    let's focus on the issue of contradictory rulings with respect

9    to the interpretation of the confirmation order.  How would we

10   not be at risk?  If I were to call it abstain or call it deny

11   the motion to reopen, however we get there, how would it be set

12   up to insure that it doesn't get raised in one place and then

13   when the other District Court Judge were ever to take a look at

14   the issue, would come to a contrary decision on the scope and

15   the breadth of the order.

16             MR. REITER:  If Revere moved under, say before Judge

17   Levy and Judge Irizarry, claiming basically, putting the claim

18   there that they'd like to put before Your Honor, and that Court

19   ruled --

20             THE COURT:  Yes.

21             MR. REITER:  We would all be bound by that ruling.

22   We couldn't relitigate the matter before the Phoenix Judges

23   because we'd be bound by it. Our only alternative would be to

24   seek certification --

25             THE COURT:  Okay, so let's continue to go down this

Reiter/Argument                          15

1   route.  So do you, would they pick out of a hat?  I mean, I

2   mean, they would be able to read the tea leaves.  If what

3   you're saying, which makes sense and is a very straightforward

4   and commendable position, right, to say whichever District

5   Court Judge were to decide the issue first, that would go,

6   right?  But then they would, if I say I'm not going to reopen

7   the case, go back to the Eastern District, I have nothing to

8   say about, you know, which Court should go first.  I mean, I

9   don't have anything to say about that.

10       MR. REITER:  One would think they'd be happy in that

11  situation because they could, as you say, read the tea leaves,

12  and decide whether they had a better a chance of success --

13       THE COURT:  Well, and you have no problem with their

14  reading the tea leaves.

15       MR. REITER:  No.

16       THE COURT:  I mean, --

17       MR. REITER:  Then they could bring the motion --

18       THE COURT:  I don't even know if there would be some

19  way to file it in each of the cases, with a notation that those

20  two Judges coordinate.  I mean, I have enough trouble running

21  my own life here, so, I wouldn't presume to speak about how all

22  that would play out .

23       MR. REITER:  I doubt that the Judges in the Eastern

24  District would want to be duplicating independently each

25  other's efforts.

Decision                                    16

1          THE COURT:  I agree with that.  Right.

2          MR. REITER:  And so I don't think that's a likely

3    scenario. And again I think that gives them an advantage.  They

4    can decide whether they've going to have more success in one

5    court or in the other court.  So that's a reason one would

6    think that would encourage them to proceed in that other court.

7          Another point here is that there are multiple parties

8    in the Phoenix litigation, including something like --

9          THE COURT:  Can you, can I interrupt you for one

10   second.

11                    (Court and Clerk confer)

12         THE COURT:  I'm sorry, just wanted to try to see how

13   those other folks were doing.

14         MR. REITER:  And just to emphasize the point about

15   the unlikelihood occurrence of two Judges, each independently

16   coming to their own conclusion, that's why Judge Chen denied

17   the ability of the third party defendants in the Phoenix

18   litigation to bring a 107 summary judgment dismissal claim,

19   because that claim is being litigated now before Judge Levy.

20   And it's very rare that I've seen a District Court Judge deny a

21   party's request for the ability to bring on a motion, but that

22   is what Judge Chen did, precisely because she wanted to avoid

23   that kind of problem.  Which is why I think we wouldn't have

24   inconsistent verdicts here.

25         And it would be a curious issue indeed, in fact if

Decision                                          17

1    this Court then started looking at this issue and say we

2    decided to raise the issue before Judge Levy or Judge --

3           THE COURT:  Well, I'm very concerned with, and Mr.

4    Smith, maybe I could go back to you.  I'm very concerned with

5    procedural orderliness.  And you know, every day we issue

6    decisions that then go off into the world and have potential

7    collateral consequences.  I think everybody's reading in the

8    papers today about General Motors.  So I'm very sensitive to

9    the precedent, if you will, of continuing to entertain revisits

10   to a bankruptcy case, particularly after the case is closed.

11   And I'm not sure the same view, I wouldn't have the same view

12   even if the case were opened under certain circumstances.

13          But this case is 32 years old.  It's been opened a

14   number of times.  It was opened for a very, very long time,

15   which I don't really have visibility into since I wasn't here.

16   But I also think that given that this is not five minutes into

17   the case, but you know, seven, eight years into the case, I

18   feel that the District Court has first dibs if you will.  And

19   if the District Court Judge, whichever one you would choose to

20   raise this, would prefer to refer it to this Court then of

21   course I would decide the question.  But I think that in the

22   first instance, particularly since you know, it's an order

23   that's been sitting on the books if you will, for a long time.

24   And I do think it is, it is a bankruptcy issue, but it also a

25   CERCLA issue.  And it is one that I've looked at in you know,

Decision                                    18

1    any number of other cases.  So I'm very familiar with the

2    issue.

3           But I would think that the District Court Judge who's

4    been presiding over this for quite some time would rather like

5    to control you know, the disposition of this kind of a gating

6    issue, and if a referral back is what that Court decides it

7    wants to do, I would obviously take it in and be happy to act

8    on it.  But to reopen and reopening, just to focus on that for

9    a moment, and you know, when this first came to our attention

10   it was ex parte.  Which I understand is not inconsistent with

11   some of the rules, but I don't believe it would ever be in this

12   kind of a situation, that an ex parte opening of case would be

13   appropriate because that type of an ex parte reopening is to do

14   a merely ministerial act.

15          Here, it was a complete gatekeeping function to

16   commencing another proceeding.  And I guess I've begun to rule.

17   I believe that this is best addressed in the first instance, or

18   at least given a right of first refusal to the District Court,

19   one of the District Court Judges, who's presiding over these

20   cases.  And in the event that that Court determines that it

21   would prefer that the Bankruptcy Court decide the issue, then

22   we will do so forthwith.

23          But in light of the long history here, and the

24   multiple fronts of the litigation, I'm very disinclined and I'm

25   not going to open another one at this point.  I think, I have a

Decision                                     19

1   feeling I rather cut you off.  But frankly I was pretty much

2   decided on the papers.  I didn't really believe that, other

3   than hearing an answer to the question of you know, why did you

4   wait as long as you did, I didn't have my much question in my

5   mind.

6           But having already ruled, and without trying to

7   convince me otherwise, is there anything else you'd like to

8   say?

9           MR. SMITH:  No, we will see if we can read the tea

10  leaves better next time.  We thought the tea leaves sent us

11  here.

12          THE COURT:  Well, I know we Bankruptcy Judges have a

13  reputation for you know, hoarding issues and being very

14  jealous. And a lot of the cases that you cited had to do with

15  the issue of concurrent jurisdiction.  There's no question that

16  if I reopen the case, I would have jurisdiction.  But I think

17  there's no question that the Eastern District has jurisdiction.

18  So sorry, I didn't even give you a chance.

19          MR. ANGELICH:  Thank you, Your Honor, George

20  Angelich, Arent Fox.  I didn't mean to cut Your Honor off or

21  you off Tom, but if you'd like, we will submit an order --

22          THE COURT:  Sure.  Why don't you submit an order and

23  again, you know, if the District Court doesn't want to take up

24  the gauntlet, I'd be most happy to dust off the old order and

25  take a look at it.

20

1          ATTORNEY:  Be happy to see you again, Your Honor.

2          THE COURT:  All right, thank you all for coming down.

3                    *              *              *

4                C E R T I F I C A T I O N

5          I, Tracy Gribben, court approved transcriber, certify

6     that the foregoing is a correct transcript from the official

7     digital audio recording of the proceedings in the above-

8     entitled matter.

9

10     *Tracy Gribben*

11     _____

12     /S/TRACY GRIBBEN

13

14     TRACY GRIBBEN TRANSCRIPTION, LLC     April 19, 2014

15                                     DATE

16

17

18

19

20

21

22

23

24

25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re:                                        :    Case Nos. 82 B 12073 (PA)
                                              :    To 82 B 12086 (PA)
REVERE COPPER AND BRASS                       :    Inclusive, and Case Nos.
INCORPORATED, *et al.*,                       :    83 B 10791 (PA) and 83 B 11703 (PA)
                                              :
                          Debtors.            :    Closed Case

-------------------------------------------------------x

### ORDER DENYING REVERE'S MOTION TO REOPEN THE BANKRUPTCY CASES

Upon the motion to reopen these Chapter 11 Cases filed by Revere Copper Products, Inc.
under 11 U.S.C. § 350(b) [ECF No. 668] (the "Motion to Reopen"); and the Court having
jurisdiction to consider the Motion to Reopen under 28 U.S.C. §§ 157 and 1334; and upon
consideration of the Motion to Reopen, the opposition to the Motion to Reopen filed by Quanta
Resources Corporation and Exxon Mobil Corporation [ECF No. 673], and the documents filed in
support of, and in opposition to, the Motion to Reopen; and upon the record of the hearing held
by this Court on April 17, 2014 (the "Hearing"); and after due deliberation and sufficient cause
appearing therefor; and for the reasons set forth on the record of the Hearing, it is

ORDERED that the Motion to Reopen is DENIED without prejudice.


Dated: May 6, 2014
New York, New York

                                    */s/ Shelley C. Chapman*
                                    HONORABLE SHELLEY C. CHAPMAN
                                    UNITED STATES BANKRUPTCY JUDGE