

One Lincoln Center | Syracuse, NY 13202-1355 | bsk.com

**THOMAS R. SMITH, ESQ.**
smithtr@bsk.com
P: 315.218.8325
F: 315.218.8425

August 21, 2014

**VIA ELECTRONIC FILING**

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York  11201

Re:    *DMJ Associates, LLC v. Capasso, et al.*
        *Action No. 1:97-cv-7285 (DLI-RML)*

Dear Judge Irizarry:

We represent Third-Party Defendant Revere Copper Products, Inc. ("Revere") in this case.  We write to seek reconsideration or clarification of the Court's Summary Order (Dkt. No. 1543), which denied Revere's request for a pre-motion conference or, in the alternative, a referral to the United States Bankruptcy Court for the Southern District of New York.

By way of background, on May 19, 2014, we filed a letter on behalf of Revere requesting a pre-motion conference, pursuant to Your Honor's individual motion practice rule IV.A, for the purpose of seeking leave to file a motion for summary judgment as to the claims asserted by Third-Party Plaintiffs Quanta Resources Corporation and Exxon Mobil Corporation (collectively, the "TPPs"), based upon Revere's prior discharge in bankruptcy. Dkt. No. 1532. Alternatively, we requested that the Court refer the matter to the bankruptcy court that originally presided over Revere's bankruptcy proceedings, for enforcement of that court's July 30, 1985 Order Confirming Plan (the "Confirmation Order") and the discharge injunction provided for in section 524(a) of the Bankruptcy Code.  The TPPs filed a letter in opposition to Revere's requests on May 27, 2014.  Dkt. No. 1533.  This Court issued its Summary Order denying both of Revere's requests on August 11, 2014 (Dkt. No. 1543), and we now seek reconsideration or clarification of that Summary Order.

Although the direct effect of the Summary Order is simply to deny Revere's request for a pre-motion conference and its alternative request to refer this matter to the bankruptcy court, the body of the Summary Order purports to resolve Revere's proposed motion on the merits, as well.

August 21, 2014
Honorable Dora L. Irizarry
Page 2

Summary Order, Dkt. No. 1543, at 3 ("Consequently, the TPPs' CERCLA claims did not constitute valid bankruptcy claims, and, thus, the bankruptcy court did not discharge these claims in its Confirmation Order"). The Summary Order therefore appears to have the indirect effect of affirmatively deciding the merits of Revere's First, Second, and Third Affirmative Defenses, without the benefit of a full and complete record, thereby precluding Revere from ever presenting its argument that the TPPs' claims were discharged in bankruptcy to this Court, either in a motion for summary judgment or at the trial of this action.

In addition, because Revere's bankruptcy defense applied not only to the TPPs' claims against Revere in this action, but also to the third-party claims asserted against Revere in the more recently filed action entitled *Phoenix Beverages, Inc. v. ExxonMobil Corp., et al. v. Ace Waste Oil, Inc., et al.*, Case No. 12-cv-03771 (PKC)(JO), the Court's Summary Order could potentially have the effect of precluding Revere in two separate cases from having an opportunity to fully present its arguments and evidence in support of that dispositive defense.

For the reasons explained below, we believe the Court misapprehended the law regarding the availability of CERCLA claims to the TPPs and the dischargeability of those claims in bankruptcy, and consequently request the Court to vacate the Summary Order and allow the motion to proceed, or refer the matter back to the bankruptcy court. At a minimum, we request that the Court clarify that the Court's comments on the merits did not constitute a definitive ruling, that Revere's bankruptcy defense has not been stricken, and that Revere may continue to assert that defense, inasmuch as no motion was actually before the Court and the Court's ruling was made without the benefit of a full record or complete briefing. More importantly, we respectfully request the Court's reconsideration because we believe the law is clear that Revere, like any litigant, has a fundamental right to make a motion permitted by the Federal Rules of Civil Procedure.

The Second Circuit has consistently held that "[a]bsent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, or a failure to comply with sanctions imposed for such conduct, a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." *Richardson Greenshields Securities, Inc. v. Mui-Hin Lau*, 825 F.2d 647, 652 (2d Cir. 1987) (*internal citations omitted*); *accord Curto v. Roth*, 296 Fed. Appx. 129, 130 (2d Cir. Oct. 9, 2008) (summary order); *Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000); *MacDraw, Inc. v. The CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1256 n.2 (2d Cir. 1996); *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55

August 21, 2014
Honorable Dora L. Irizarry
Page 3

F.3d 34, 39 (2d Cir. 1995); *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 935-36 (2d Cir. 1992), *overruled in part, on other grounds, by Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349, 355 (2d Cir. 2000); *see also Best Payphones, Inc. v. Manhattan Telecomms. Corp.*, 450 Fed. Appx. 8, 14 (2d Cir. Nov. 23, 2011) (summary order).

In fact, this Court (Brian M. Cogan, U.S.D.J.) has recognized that the Court lacks power to preclude a litigant from filing a motion that it has a legal right to make. *Papandon v. United States of Am.*, No. 99 Civ. 7860 (BMC), 2008 U.S. Dist. LEXIS 76591, *3-*4 n.1 (E.D.N.Y. Jul. 8, 2008) ("At no time did the Court decline leave to Aracri to move to vacate the stipulation. The purpose of a premotion conference is to explore the theories upon which a party intends to move and reach a determination with them as to whether the motion is sufficiently viable to warrant the parties' expenditure of resources. This Court did not, and does not, preclude parties from making any motion they wish to make, as parties have a right to make any motion they deem appropriate"), *aff'd* 350 Fed. Appx. 491 (2d Cir. Oct. 23, 2009) (summary order).

"Although [the Second Circuit has] recognized that 'it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion,' [the Court has] made it clear that 'the judge may not require that the court's permission be secured at such a conference before a party may file the motion.'" *Eisemann*, 204 F.3d at 397 (*internal citations and footnote omitted*) (quoting *Milltex Indus. Corp.,* 55 F.3d at 39); *see also MacDraw*, 73 F.3d at 1256 n.2; *Schoenberg*, 971 F.2d at 935-36 ("[W]e are deeply troubled by the district court's requirement that defendants comply with plaintiff's discovery request before being permitted to submit their motion to dismiss the complaint for lack of subject matter jurisdiction. As we explained in *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir. 1987), 'absent extraordinary circumstances . . . a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure'").

In *Richardson Greenshields Securities*, the seminal case on this issue in the Second Circuit, the Court held that:

> The actions of the district court effectively prevented the [defendants] from filing a motion for leave to amend. The refusal to permit a motion to be filed without a prior conference, followed by a failure to hold such a conference until nearly five months after one was first requested, and then by a denial of the motion for having been filed too late, are actions so 'at odds with the purpose and intent of

August 21, 2014
Honorable Dora L. Irizarry
Page 4

> [the Federal Rules],' *Padovani v. Bruchhausen*, 293 F.2d 546, 548 (2d Cir. 1961), as to warrant mandamus relief.
>
> We do not suggest that district judges cannot require a conference prior to the filing of motions as a means of managing litigation assigned to them. This practice may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers. Litigants and the courts profit when this occurs. However, a district judge must conduct such conferences promptly upon the request of the moving party.

825 F.2d at 652 (*internal footnote omitted*). The Court found the district court's actions in preventing the defendants from filing their motion unjustified, and conditionally granted the defendants leave to file a petition for a writ of mandamus in the event that the district court continued to refuse to allow them to file an amended answer. *Id.* at 653.

The Second Circuit came to a similar conclusion in *Curto*, where the Court considered the plaintiff's appeal from an order of the district court that directed her not to file a motion under Fed. R. Civ. P. 60(b), on the basis that the motion was time-barred, and required the plaintiff to seek permission before submitting any further documents for filing. *Curto*, 296 Fed. Appx. at 130. The *Curto* Court held that, although the district court's determination that the proposed motion was time-barred might prove to be correct, the court did not have the power to prevent the plaintiff from filing it. *Id.* Accordingly, the Court vacated the district court's decision on appeal and remanded so that the plaintiff could file her motion, and the district court could address the motion on its merits.

In so holding, the *Curto* Court noted that "[r]equiring that the district courts allow filing of even those motions that, on their face, may appear to lack merit is necessary to enable appellate review." *Curto*, 296 Fed. Appx. at 130 (citing *IBM v. Edelstein*, 526 F.2d 37, 45 [2d Cir. 1975]; *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 192 [2d Cir. 2008]); *accord Best Payphones*, 450 Fed. Appx. at 14 (emphasizing importance of making a record for appellate review).

Further, decisions of the Second Circuit make clear that, when a court prohibits a litigant from filing a pleading, motion, or appeal that the litigant is otherwise entitled to file, that action constitutes a "filing injunction" or a "leave-to-file sanction" – a sanction that may only be handed down after providing the litigant with notice and an opportunity to be heard. *Malcolm v. Bd. of Educ. of the Honeoye Falls-Lima Cent. Sch. Dist.*, 506 Fed. Appx. 65, 69 (2d Cir. 2012) (summary order); *Curto*, 296 Fed. Appx. at 130 ("[W]hile the district court had the authority to

August 21, 2014
Honorable Dora L. Irizarry
Page 5

enjoin [the plaintiff] from future vexatious filing, the unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without first providing the litigant with notice and an opportunity to be heard"). Indeed, "'[d]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions.'" *Lapidus v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (*emphasis in the original*) (quoting *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 70 [2d Cir. 1996], *overruled in part, on other grounds, by Lamie v. United States Tr.*, 540 U.S. 526 [2004]); *see also Schoenberg*, 971 F.2d at 936.

Here, there was no finding – or even so much as a *suggestion* – that Revere engaged in conduct warranting the imposition of a leave-to-file sanction, and Revere was not afforded prior notice that such a sanction might be imposed. Nor was Revere afforded an opportunity to be heard on that issue. To the contrary, the Court's Summary Order explicitly denied Revere that opportunity. As such, denial of Revere's request for a pre-motion conference effectively imposed on Revere a leave-to-file sanction enjoining it from filing its motion for summary judgment, and thereby denied it due process. Consequently, the denial should be vacated or clarified.

Revere is authorized by Rule 56 of the Federal Rules of Civil Procedure to make a motion for summary judgment. Revere did not make such a motion, and was merely complying with Your Honor's individual motion practice rule IV.A in seeking a pre-motion conference. In denying Revere's request for a pre-motion conference, the Court's Summary Order not only prevented Revere from filing its summary judgment motion, but also prevented Revere from even making a full application to the Court for leave to file that motion. Even if the Court has doubts about the success of the motion, Revere should be entitled to make a full argument and establish a record for appellate review.

Indeed, Revere had no opportunity to reply to the arguments that the TPPs raised in opposition to Revere's request for a pre-motion conference, which the Court ultimately adopted as its basis for denying Revere's request. Had the Court permitted Revere to file its proposed motion, or at least participate in a pre-motion conference to discuss the motion, Revere would have informed the Court of its arguments in reply to the TPPs opposition, and thereby demonstrated that the TPPs' representations to the Court were inaccurate and Revere's motion is sufficiently meritorious to warrant the Court's consideration on a full and complete record, at the very least.

August 21, 2014
Honorable Dora L. Irizarry
Page 6

Initially, the TPPs' description of their CERCLA claims, which the Court apparently accepted in concluding that TPPs did not have a CERCLA claim pre-bankruptcy, is incomplete and misleading. The TPPs argued that their CERCLA contribution claim did not exist until the enactment of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), which added a contribution provision in CERCLA § 113. TPPs omitted the fact that CERCLA became effective in December 1980, well before the filing of the Revere bankruptcy petition in 1982, and nearly five years before the date of the Confirmation Order.

In an even more glaring omission, TPPs failed to tell the Court that numerous district courts had held that a private party could pursue a claim for contribution under CERCLA § 107 before the passage of SARA. *E.g. U.S. v. A&F Materials Co.*, 578 F. Supp. 1249 (S.D.Ill. 1984); *U.S. v. Conservation Chem. Co.*, 619 F. Supp. 162 (W.D.Mo. 1985), *reaffirmed in subsequent opinion at* 1987 U.S. Dist. LEXIS 15829, *24-*25 (W.D.Mo. May 27, 1987); *Colorado v. Asarco, Inc.*, 608 F. Supp. 1484 (D. Colo. 1985); *U.S. v. New Castle Co.*, 642 F. Supp. 1258 (D. Del. 1986); *U.S. v. Medley*, No. 7:86-252-3, 1986 U.S. Dist. LEXIS 23365 (D.S.C. July 3, 1986); *Sand Springs Home v. Interplastic Corp.*, 670 F. Supp. 913 (N.D. Okla. 1987); *see also Bedford Affiliates v. Sills*, 156 F.3d 416, 423 (2d Cir. 1998) (stating that numerous district courts interpreted CERCLA § 107(a) to imply a cause of action for contribution).

Indeed, the legislative history of CERCLA § 113(f) indicates that the statute was amended "to clarify and confirm" that parties sued under CERCLA would have a right of contribution against other PRPs, not to create a right of action that did not exist prior to that time. Joint Explanatory Statement of the Committee of the Conference, H.R. Conf. Rep. No. 962, 99th Cong., 2d Session, 221; *see Am. Cyanamid Co. v. King Indus.,* 814 F. Supp. 209, 212 (D.R.I. 1993) ("Section 113(f) . . . codified a right to contribution which had already been implied by numerous courts under federal common law"). Therefore, TPPs' contention that they did not have a right to seek contribution under CERCLA until after the 1986 amendments is demonstrably false.

Similarly, TPPs' claim that they "had no legal right to assert their CERCLA § 107 claim against Revere ... because, prior to 2007, there was no statutory right under CERCLA for parties like the TPPs to assert CERCLA § 107 claims against a party like Revere" is equally false. Section 107 of CERCLA did not appear suddenly on the scene in 2007; the liability provisions of § 107 existed in 1980 with exactly the same language as existed in 2007 (and today). The clarification by the Supreme Court in *U.S. v. Atlantic Research Corp.*, 551 U.S. 128 (2007), that a private

August 21, 2014
Honorable Dora L. Irizarry
Page 7

party who is itself liable under CERCLA may pursue a claim under CERCLA § 107, merely restored the understanding that courts and litigants had in the period from 1980 to at least 1986,[1] the period relevant to Revere's bankruptcy defense. *See City of Philadelphia v. Stepan Chemical Co.*, 544 F. Supp. 1135 (E.D.Pa. 1982). Thus, the conclusion that TPPs could not have had a CERCLA claim prior to the date of Revere's Confirmation Order (July 30, 1985) simply is not correct, and the Court's conclusion that the TPPs' CERCLA claims could not have been dischargeable claims was based on an erroneous premise.

The Court's reliance on *In re Duplan Corp.*, 212 F.3d 144, 151-52 (2d Cir. 2000), cited by the TPPs, for the conclusion that Revere did not have valid bankruptcy claims, is also misplaced. *Duplan* held that certain parties' CERCLA claims were not discharged in bankruptcy, but it was decided on facts wholly distinguishable from the Revere case. In that case, the bankruptcy petition was filed in 1976, more than four years *before* the effective date of CERCLA. In this case, Revere's bankruptcy petition was filed two years *after* CERCLA became effective, and the Confirmation Order was not issued until nearly five years *after* CERCLA became effective. The contaminating activities, and the discovery of the contamination, both occurred pre-bankruptcy. The environmental conditions forming the basis of the claim, and the statute upon which the bankruptcy claims are founded, both existed before the dates of the Revere bankruptcy and the ensuing Confirmation Order.

The determination of when a "claim" arises is governed by bankruptcy law. *In re Texaco (King Realty Co., Inc.)*, No. 10-cv-8151(CS), 2011 U.S. Dist. LEXIS 111533, *11 (S.D.N.Y. Sept. 28, 2011), *aff'd* 505 Fed. Appx. 77 (2d Cir. Dec. 19, 2012) (summary order). Whether a claim exists is determined by reference to non-bankruptcy law, but it is applied to the broad definition of a claim found in the Bankruptcy Code, which includes any "right to payment, whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, *contingent*, matured, *unmatured*, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (*emphasis added*). With respect to environmental claims under CERCLA, the Second Circuit has held that so long as the response costs at issue arose out of pre-petition releases or threatened releases of hazardous substances, a dischargeable claim exists, notwithstanding that the response costs were incurred post-bankruptcy. *In re Chateaugay Corp.*, 944 F.2d 997, 1002 (2d Cir. 1991). This rule

---

[1] In fact, it was not until 1998 that the Second Circuit held that a potentially responsible party did not have a claim under § 107(a) and was limited to a contribution action under § 113(f). *Bedford Affiliates*, 156 F.3d at 423. Following the Supreme Court's decision in *Atlantic Research*, the Second Circuit overruled this holding of *Bedford Affiliates* in *W.R. Grace & Co.-Conn. v. Zotos Int'l. Inc.*, 559 F.3d 85, 90 (2d Cir. 2009).

August 21, 2014
Honorable Dora L. Irizarry
Page 8

was summarized by the bankruptcy court in *In re Oldco M Corp.*, 438 B.R. 775, 781 (Bankr. S.D.N.Y. 2010):

> The Chateaugay court concluded that most remediation costs based on prepetition conduct meet the [Bankruptcy] Code definition of claims, even though the result may mean the claims are dischargeable. … The significance of this holding is that clean up costs for contamination arising from prepetition conduct – even if those costs have not yet been incurred – meet the definition of claims under Section 101(5) and could be discharged as part of a bankruptcy case.

That is precisely the situation that exists here – post-petition response costs arising from pre-petition contaminating conduct.

Accordingly, far from being frivolous, Revere's proposed motion for summary judgment is grounded solidly in case law, the legislative history of CERCLA, relevant bankruptcy law, and the facts pertinent to the TPPs' claims. However, even assuming, *arguendo*, that Revere's proposed motion was demonstrably frivolous, the Court still lacked authority to prevent Revere from filing it and making a full record of its arguments and supporting evidence, to enable effective appellate review.

With respect to the timeliness of Revere's assertion of its bankruptcy defense, it is undisputable that Revere timely raised the defense in its Answer. The timing of Revere's request for a pre-motion conference to seek leave to file a motion based on this defense is the product of a confluence of events – difficulty in obtaining certain documents from the bankruptcy filing, the nearly four-year mediation period when litigation was stayed, the prospect for a settlement that recognized Revere's bankruptcy defense, and a desire to minimize legal expense while settlement seemed a possibility – and the delay is not relevant to the merits of this defense. Following the resumption of active litigation in mid-2013, Revere filed its motion to reopen the bankruptcy case in the bankruptcy court in early October 2013, and the application to this Court for a pre-motion conference was made shortly after the bankruptcy court directed Revere to provide a "right of first refusal" to this Court. In any event, Revere's right to assert its discharge in bankruptcy and enforce the discharge injunction was not waived and cannot be waived. *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 170 (B.A.P. 9th Cir. 2005); *In re Moreno*, 479 B.R. 553, 562 (Bankr. E.D. Ca. 2012); *In re Eastlick*, 349 B.R. 216, 229 (Bankr. D. Idaho 2004).

August 21, 2014
Honorable Dora L. Irizarry
Page 9

For the reasons stated above, Revere respectfully requests reconsideration of the Court's Summary Order denying Revere's request that the Court conduct a pre-motion conference so that Revere could seek leave to file its motion for summary judgment, and its alternative request to refer this matter back to the United States Bankruptcy Court for the Southern District of New York, to allow that court to determine the scope and effect of its own order in the first instance.

Upon reconsideration, Revere respectfully submits that the appropriate result is for the Court to refer this issue to the bankruptcy court – which has already agreed to consider and determine the question, should this Court decline to do so (*see* Dkt. No. 1532, at 2-3) – for adjudication of Revere's bankruptcy defense. In the alternative, Revere respectfully requests that, upon reconsideration, the Court grant Revere leave to file its motion for summary judgment, schedule a pre-motion conference, or at a minimum, clarify the scope and effect of the Court's Summary Order.

Thank you for your consideration.

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

Thomas R. Smith

TRS/nlc

cc:     All Counsel of Record *(via ECF Filing)*

2364156.4