UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
DMJ ASSOCIATES, L.L.C.,                                  :
                                                         :
                  Plaintiff,                                 :
                                                         :
             -against-                                  :
                                                         :    **MEMORANDUM AND ORDER**
CARL A. CAPASSO, *et al*,                                :    **ADOPTING REPORT &**
                                                         :    **RECOMMENDATION**
                  Defendants,                                :    97-CV-7285 (DLI)(RML)
                                                         :
-------------------------------------------------------- X
                                                         :
EXXON MOBIL CORPORATION and                              :
QUANTA RESOURCES CORPORATION,                            :
                                                         :
    Defendants/Third-Party Plaintiffs,                   :
                                                         :
             -against-                                  :
                                                         :
ACE WASTE OIL, INC., *et al*,                            :
                                                         :
             Third-Party Defendants.                    :
-------------------------------------------------------- X

**DORA L. IRIZARRY, U.S. District Judge:**

       In the underlying first-party action, plaintiff DMJ Associates, L.L.C. ("DMJ") brought an environmental cleanup cost recovery claim against various defendants, including Exxon Mobil Corporation ("Exxon Mobil") and Quanta Resources Corporation ("Quanta"), under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, *inter alia*. In 2002, during the pendency of that action, defendants and third-party plaintiffs Exxon Mobil and Quanta (collectively, the "TPPs"), and nineteen other named respondents, entered into an Administrative Order on Consent ("AOC") with the New York State Department of Environmental Conservation ("DEC"). The AOC required the TPPs to clean up the sites at issue in the DMJ action, including the site of Quanta's

Long Island City refining facility (the "Quanta Site"). The AOC would further absolve the TPPs of their liability to DEC for purposes of contribution protection provided by CERCLA § 113(f)(2) if the remediation of the properties at issue was completed in a manner deemed satisfactory by DEC.

In June 2005, DMJ entered into a settlement agreement with the TPPs in which the TPPs agreed to pay certain monies to DMJ for its response costs and to remediate contamination at DMJ's property to the satisfaction of the DEC. A provision of the settlement agreement required DMJ to apply to place the sites at issue into New York's Brownfield Cleanup Program ("BCP").[1]

The AOC was terminated once DMJ's BCP application was approved in September 2005. Therefore, the TPPs contend that the AOC's termination suggests that no resolution of CERCLA liability has occurred or will occur because the TPPs and New York State are no longer bound by the provisions of the AOC.

In their Third Amended Third-Party ("TAPT") Complaint, the TPPs assert claims under CERCLA § 107(a), 42 U.S.C. § 9607(a), for recovery of their response costs; and CERCLA § 113(f)(1), 42 U.S.C. §9613(f), for contribution and indemnification for "common liability." (*See* TATP Compl., Dkt. Entry No. 1149.)

The Private third-party defendants ("Private TPDs") and the Federal third-party defendants ("Federal TPDs") (collectively, the "TPDs") moved for partial summary judgment on Count 1 of the TATP Complaint, which asserts a claim for cost recovery under CERCLA § 107(a). The TPDs argue that, because the TPPs were sued by DMJ for CERCLA liability under

---

[1] A brownfield site is "any real property, the redevelopment or reuse of which *may not be complicated* by the *presence* of *a* contaminant." *Lighthouse Pointe Property Associates LLC v. New York State Department of Environmental Conservation*, 14 N.Y.3d 161, 165 (2010) (internal quotation marks and citations omitted) [emphases included]. The goal of the BCP is to encourage private sector remediation of brownfields and to promote their redevelopment as a means to revitalize economically blighted communities. *East River Realty Co., LLC v. New York State Department of Environmental Conservation*, 68 A.D.3d 564 (1st Dep't 2009).

§ 107(a) and settled with a government agency, the TPPs are precluded from seeking response cost recovery under § 107(a).

The TPPs counter that they may seek reimbursement of response costs under both §§ 107(a) and 113(f) because their liabilities with New York State remain unresolved and the plain language of CERCLA and the case law interpreting it permit § 107(a) and § 113(f) claims to be asserted concurrently by parties in the TPPs' procedural position. The TPPs further contend that, because they voluntarily incurred response costs to clean up the Quanta Site that went beyond the scope of the underlying DMJ action, they are entitled to pursue claims against the TPDs under § 107(a). The TPDs refute the TPPs' measurement of the scope of the DMJ litigation by arguing that remediation of the Quanta Site was not voluntary, but rather compelled by the lawsuit because DMJ had alleged that contamination was migrating from the Quanta Site to the Capasso Properties. (Private TPDs' Objection ("Pvt. TPDs' Obj.") at 1, Dkt. Entry No. 1567.) By Order dated November 15, 2013, this Court referred the motions to Hon. Robert M. Levy, U.S.M.J., for a report and recommendation ("R & R").

On July 6, 2015, the magistrate judge issued the R & R, which recommended that this Court deny the TPDs' motions for partial summary judgment. (R & R at 2, Dkt. Entry No. 1564.) The Private TPDs and the Federal TPDs filed objections to the R & R. (*See generally* Pvt. TPDs' Obj.; Federal TPDs' Objection ("Fed. TPDs' Obj."), Dkt. Entry No. 1568.) For the reasons set forth below, upon due consideration of the R & R and the objections to it, the R & R is adopted in its entirety and the TPDs' motions for partial summary judgment on Count 1 of the TATP Complaint are denied.

3

# DISCUSSION

## I. Standard of Review

Where a party objects to an R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Portions of the R & R to which the parties have not objected are reviewed for clear error. *See Orellana v. World Courier, Inc.*, 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

The TPDs object to the magistrate judge's denial of their motions for partial summary judgment, contending that the magistrate judge erred in holding that the TPPs were permitted to pursue a cost recovery action under CERCLA § 107(a) because the underlying DMJ action against the TPPs precluded the pursuit of such an action. (Pvt. TPDs' Obj. at 2, n. 2.) The interplay between the cost recovery provision of CERCLA § 107(a) and the contribution remedy afforded under CERCLA § 113(f) forms the crux of the issue before the Court. Therefore, an overview of the statutory framework will provide necessary context for the Court's decision.

## II. CERCLA

CERCLA is a remedial statute designed to encourage prompt and effective cleanup of hazardous waste sites. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) ("*NiMo*"). The statute "empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups." *Id.* CERCLA also affords property owners a recourse to seek reimbursement of their remediation costs from others "in the chain of title or from certain polluters—the so-called

potentially responsible parties ("PRPs"). *Id*. This recourse is available to parties through three separate CERCLA provisions, §§ 107, 113(f)(1), and 113(f)(3)(B). *Id*.

**A. Section 107(a)**

Section 107(a) authorizes parties to recover money spent on cleanup and prevention costs. *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 94 (2d Cir. 2005). "Section 107(a) states that various persons, including the owner or operator of a facility, may be held liable for, among other things, 'all costs of removal or remedial action incurred by the United States Government or a State … not inconsistent with the national contingency plan.'" *Id*. (quoting 42 U.S.C. § 9607(a)(4)(A)).[2]

This provision permits private parties to pursue cost recovery actions against other PRPs who may have contributed to the environmental contamination of a particular property. *Id*. at 94-95. Section 107(a) identifies four classes of PRPs covered under the section: (1) the present owner and operator of a facility; (2) any person who owned or operated the facility at the time of the disposal of hazardous substance at the facility; (3) any person who arranges for the disposal of a hazardous substance at the facility of another; and (4) any person who transports a hazardous substance to a disposal facility. *Schaefer v. Town of Victor*, 457 F.3d 188, 195 (2d Cir. 2006).

In *United States v. Atlantic Research*, the Supreme Court held that § 107(a) allows for the recovery of remediation costs "without any establishment of liability to a third party" where the party seeking recovery has incurred the costs directly. 551 U.S. 128, 139 (2007). Furthermore, *Atlantic Research* held that "[a PRP's] costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B)." *Id*. at 139 n. 6. As is clearly set forth in the magistrate judge's exhaustive case

---

[2] The national contingency plan "'provide[s] the organizational structure and procedures for preparing for and responding to discharges of oil and releases of hazardous substances, pollutants, and contaminants," and is promulgated by the Environmental Protection Agency.'" *Price Trucking Corp. v. Norampac Industries, Inc.*, 748 F.3d 75, 80 n. 3 (2d Cir. 2014) (quoting 40 C.F.R. §§ 300.1-2).

law and statutory analysis in the R & R, the Supreme Court has not decided definitively whether a party may proceed under § 107(a) or § 113(f) if it has voluntarily and directly incurred costs.

### B. Section 113(f)(1)

"Section 113(f)(1) expressly creates a contribution right for parties liable or potentially liable under CERCLA." *Consolidated Edison*, 423 F.3d at 95. The statute holds that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], during or following any civil action under [§ 106] or under [§ 107]." 42 U.S.C. § 9613(f)(1). The magistrate judge correctly notes that *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), and *Atlantic Research* altered the landscape of CERCLA litigation by broadening the availability of § 107 claims to private claimants, while limiting the availability of § 113(f) claims. (R & R at 18.) In *Cooper Industries*, the Supreme Court concluded that a party may pursue a contribution claim under § 113(f)(1) only if that party has been subject to a civil action as specified in that section. *Cooper Industries*, 543 U.S. at 165.

### C. Section 113(f)(3)(B)

"Under § 113(f)(3)(B), a 'person who has resolved its liability to the United States or a state for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement.'" *NiMo*, 596 F.3d at 124 (quoting 42 U.S.C. § 9613(f)(3)(B)). *Consolidated Edison* made clear that "only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved" does § 113(f)(3)(B) create a right to contribution. *Consolidated Edison*, 423 F.3d at 95 (internal quotation marks and citations omitted); *see also W.R. Grace & Co.-Conn. v. Zotos International, Inc.*, 559 F.3d 85, 90 (2d Cir. 2009). Therefore, according to the Second Circuit in *W.R. Grace*, "'the operative question in deciding whether [the

TPPs] claims arise under section 113(f)(3)(B) ... is whether [the TPPs] resolved [their] CERCLA liability before bringing suit.'" *W.R. Grace*, 559 F.3d at 90-91 (quoting *Consolidated Edison*, 423 F.3d at 96). As explained in greater detail below, the magistrate judge correctly found that, due to the termination of the AOC, the TPPs had not resolved their CERCLA liability prior to bringing the § 107(a) action against the TPDs. (R & R at 33.)

### III. Interplay Between CERCLA §§ 107(a) and 113(f)

The TPDs argue that the TPPs are precluded from pursuing a cost recovery action under § 107(a) because the DMJ action against them triggered a contribution claim under § 113(f)(3)(B) to the exclusion of any § 107(a) cause of action. (Pvt. TPDs' Obj. at 2, n. 2.) TPDs further contend that the fact that the TPPs were sued under § 107(a) is dispositive and, thus, renders irrelevant the nature of the costs the TPPs incurred when deciding what remedies are available to them. (*Id.* at 2.) Therefore, the TPDs define the issue before this Court as whether a party that has been sued under § 107(a) can seek to recover the same response costs under that section. (*Id.* at 6.) According to the TPDs, the plain language of CERCLA and the case law interpreting the statute precludes recovery under § 107(a), and a recovery recourse exists only pursuant to a § 113(f) contribution action. (*Id.*)

The TPDs also argue that the determinative factor governing the availability of § 107(a) or § 113(f) relief is the procedural circumstances of the party seeking cost recovery. (*Id.* at 9.) The relevant procedural circumstance is whether or not a PRP has been subject to an enforcement action, such as a § 107(a) suit. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1042 (E.D. Wis. 2008), *aff'd sub nom. NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682 (7th Cir. 2014). The TPDs contend that the voluntary or

compelled nature of the response costs is an irrelevant consideration in determining whether those costs are recoverable under § 107(a) or § 113(f).

The TPDs rely on cases such as *Whittaker Corp. v. United States* from the Central District of California to support the proposition that the statutory language of § 113(f)(1) does not limit recovery to the scope of the eventual settlement between the parties. 2014 WL 631113, at *6 (C.D. Cal. Feb. 10, 2014), *appeal pending*, Docket No. 14-55385 (9th Cir. 2014) (court rejected plaintiff's argument that many of its remediation costs were voluntary and predated entry into a settlement agreement, thus entitling it to recovery costs under § 107(a) and held that, because plaintiff's procedural posture was as a § 107(a) defendant, all of the costs fell within the ambit of § 113(f)(1)).

The TPDs further contend that DMJ's § 107(a) action against the TPPs implicated the entire cleanup of the Quanta site; therefore, the TPPs are precluded from dividing their response costs between those eligible for § 107(a) relief and those eligible for § 113(f)(1) relief. (Pvt. TPD's Obj. at 13.)

However, as the magistrate judge correctly notes, the TPDs' arguments ignore the plain language of the statutes at issue. (R & R at 34.) The availability of contribution costs under § 113(f)(3)(B) requires a party's resolution of liability to the United States or a State pursuant to an administrative or judicially approved settlement. *See* 42 U.S.C. § 9613(f)(3)(B). The TPDs fail to demonstrate that the TPPs resolved their liability to New York State under the conditions of the AOC.

Indeed, the Seventh Circuit's decision in *Bernstein v. Bankert*, upon which the TPPs heavily rely, stands for the proposition that "[w]hether, and when, a given settlement resolves a party's liability to the EPA [or a state] within the meaning of [§ 113(f)(3)(B)] is ultimately a

case-specific question dependant [sic] on the terms of the settlement before the court." 733 F.3d 190, 196 (7th Cir. 2013) (internal quotation marks omitted). Similar to the settlement in *Bernstein*, the settlement between the TPPs, DMJ, DEC, and other the parties did not provide for resolution of CERCLA liability upon entering into the settlement agreement. *Id*. Here, the settling parties entered into the AOC in 2002, after DMJ's Brownfield Cleanup Program application was approved. In 2005, the AOC was terminated; however, this termination occurred before the parties could fulfill all of their obligations set forth in the AOC and before the issuance of a final report showing that no further remedial action was necessary. Indeed, the AOC stated that the DEC would issue a release from liability and a covenant not to sue "[u]pon the [DEC]'s approval" of a final report "evidencing that no further remedial action" was required. (Certification of Camille V. Otero, Esq.[3] ("Otero Cert.") at Exhibit A, ¶ G, Dkt. Entry No. 1474-6.) Since no final report was issued due to the AOC's termination prior to the completion of all remedial action, the TPPs had not been released from liability. Accordingly, the TPPs cannot assert a contribution claim under § 113(f)(3)(B), but may pursue a cost recovery action under § 107(a).

The Court concurs with the magistrate judge that resolution of the instant motion is a matter of statutory construction. The plain language of § 107(a)(4)(B) provides that certain parties "shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan." This provision does not preclude the pursuit of a cost recovery action under § 107(a) simply because a party has already been sued pursuant to that provision. Nor does § 113(f) become the only remedy available to a party who has been sued under § 107(a) and seeks to recover costs incurred. *Atlantic Research*, 551 U.S. at 138.

---

[3] Camille V. Otero, Esq. is a director at Gibbons P.C. and counsel for third-party defendant Rexam Beverage Can Company. (Otero Cert. at ¶ 1, Dkt. Entry No. 1474-5.)

The magistrate judge also correctly found that the TPPs could not proceed on all of their claims under both §§ 107 and 113, simultaneously. (R & R at 34.) The TPPs seek to recover four different categories of costs: (1) directly incurred response costs; (2) funds they paid to reimburse third parties pursuant to a settlement agreement; (3) some costs they incurred as a result of having been sued by DMJ; and (4) some costs they incurred having entered into the later-terminated AOC, but without resolving their liability. (*Id.* at 36.) *Atlantic Research* distinguished the rights afforded under §§ 107(a) and 113(f):

> Section 113(f) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy an agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

551 U.S. at 139. Accordingly, some of the TPPs' costs are recoverable only under § 107, while some are separately recoverable only under § 113. Consistent with the Supreme Court's holding in *Atlantic Research*, none of the listed costs are recoverable under both sections simultaneously. The magistrate judge correctly concluded that the TPPs should be permitted to maintain both § 107 and § 113 causes of action as the evidence supported the applicability of both statutes to their cost outlays.

## CONCLUSION

After *de novo* review of the portion of the R & R to which the TPDs object, the R & R is adopted in its entirety. Accordingly, the TPDs motion for partial summary judgment with respect to Count 1 of the TATP Complaint is denied.

SO ORDERED.

Dated: Brooklyn, New York
        March 31, 2016

/s/
DORA L. IRIZARRY
United States District Judge